SCHWARTZ, LICHTENBERG LLP                    Hearing Date:
420 Lexington Avenue, Suite 2400                 Time:
New York, New York 10170
(212) 389-7818
Barry E. Lichtenberg (BL 9750)
Attorneys for Gary Altman, Rhoda Brown,
The Estate of George Crethan, Saul Mildworm,
Jack Raskin, David Smith and Edward Yaker

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:                                               :    (Chapter 7
                                                     :    Case No. 05-12086 (PCB))
1ST ROCHDALE COOPERATIVE GROUP, LTD.                 :

                    Debtor.                           :
-------------------------------------------------------------------x
ROBERT L. GELTZER, as Chapter 7 Trustee for 1ST      :
ROCHDALE COOPERATIVE GROUP, LTD.,                    :
                                                     :
                    Plaintiff,                        :
                                                     :    **07 CV 7852 (DC)**
                                                     :
GARY ALTMAN, RHODA BROWN, "JOHN DOE 1"              :
AS EXECUTOR OR ADMINISTRATOR OF THE                 :
ESTATE OF GEORGE CRETHAN, SAUL                      :
MILDWORM, JACK RASKIN, DAVID SMITH, "JOHN :
THE ESTATE OF ALLEN THURGOOD, EDWARD                :
YAKER, GREGORY WORTHAM and DAVID L.                 :
JOHNSON,                                            :
                                                     :
                    Defendants.                      :
-------------------------------------------------------------------x

**AFFIRMATION OF BARRY E. LICHTENBERG, ESQ., IN SUPPORT
OF MOTION TO DISMISS THE COMPLAINT WITH
<u>PREJUDICE AND FOR RELATED RELIEF</u>**

         BARRY E. LICHTENBERG, Esq., affirms the following under penalty of perjury:

         1.       I am an attorney duly admitted and in good standing to practice before the United

States District Courts for the Southern District of New York and the Eastern District of New

York.  I am a member of Schwartz, Lichtenberg LLP, attorneys for defendants Gary Altman,

Rhoda Brown, Estate of George Crethan, Saul Mildworm, Jack Raskin, David Smith and Edward Yaker (collectively, the "Former Directors"). I submit this affirmation in support of the Former Directors' motion (the "Motion") to dismiss the complaint (the "Complaint") against them in the above-referenced adversary proceeding and for related relief and to place before this Court documents relevant to the motion.

2.        Attached as Exhibit "A" is a true and accurate copy of the Complaint.

3.        The Motion seeks dismissal with prejudice of Count One and Count Two of the Complaint as to the Former Directors upon the grounds that, *inter alia*, the allegations fail to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

4.        Upon information and belief, each of the Former Directors served at certain times on the Board of Directors of the underlying debtor, 1st Rochdale Cooperative Group, Ltd. (the "Debtor").

5.        None of the Former Directors have filed a proof of claim with the Bankruptcy Court against the Debtor.

6.        On September 5, 2007, the Former Directors filed with the Bankruptcy Court a Motion to Withdraw the Reference of this adversary proceeding from the United States Bankruptcy Court pursuant to 28 U.S.C. §157(d). A copy of this submission is annexed hereto as Exhibit "B."

7.        The Former Directors have timely filed a demand for jury trial, setting forth such demand in both Motion to Withdraw Reference and the instant Motion to Dismiss and Memorandum of Law in support thereof ("Motion"). Additionally, the Former Directors have filed a separate demand for a jury trial pursuant to Federal Rules of Civil Procedure 38 and 39. A copy of the Former Directors' jury demand is annexed hereto as Exhibit "C."

8.      Pursuant to the "so-ordered" Stipulation and Order Pursuant to 28 U.S.C. § 157(d) Granting Motion of the Former Directors and Withdrawing the Reference of this Adversary Proceeding from the United States Bankruptcy Court, the subject adversary proceeding has been withdrawn from the United States Bankruptcy Court for the Southern District of New York of New York to the United States District Court for the Southern District of New York.  (A copy of said stipulation and order is annexed hereto as Exhibit "D.")

9.      For these reasons, as well as the additional reasons set forth in the accompanying memorandum of law, the Former Directors respectfully request that the Complaint be dismissed in its entirety and with prejudice as against them and that the Court grant the related relief requested therein.

10.      No previous request for the relief contained herein has been made to this or any other Court, other then the initial filing of a dismissal motion on September 5, 2007, with the United States Bankruptcy Court for the Southern District of New York (Adv. Pro. No. 07-1652).

11.      I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Dated: New York, New York
          October 16, 2007


                                   /s/Barry E. Lichtenberg
                                  Barry E. Lichtenberg (BL 9750)

**EXHIBIT A**

BRYAN CAVE LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000
Robert A. Wolf (RW 3419)
Andrea K. Fisher (AF 0150)
Counsel to Robert L. Geltzer, the Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                              **Chapter 7**

1ST ROCHDALE COOPERATIVE GROUP,          **Case Nos. 05-12086 (PCB)**
LTD.

              Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT L. GELTZER, as Chapter 7 Trustee for
1ST ROCHDALE COOPERATIVE GROUP, LTD.,

              Plaintiff,

        v.
                                                    **Adversary**
GARY ALTMAN, RHODA BROWN, "JOHN DOE        **Proceeding No.**
1" AS EXECUTOR OR ADMINISTRATOR OF
THE ESTATE OF GEORGE CRETHAN, SAUL         **COMPLAINT**
MILDWORM, JACK RASKIN, DAVID SMITH,
"JOHN DOE 2" AS EXECUTOR OR
ADMINISTRATOR OF THE ESTATE OF ALLEN
THURGOOD, EDWARD YAKER, GREGORY
WORTHAM and DAVID L. JOHNSON,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Robert L. Geltzer, as Chapter 7 Trustee (the "Trustee"), of 1st Rochdale Cooperative

Group, Ltd. ("1st Rochdale" or the "Debtor"), by his counsel Bryan Cave LLP, as and for his

Complaint, alleges as follows against the above-captioned defendants (collectively,

"Defendants"), based upon information and belief (gained from, among other things, an

examination conducted pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and available internal corporate documents and records of the Debtor and

other publicly available documents):

**NATURE OF THE ACTION**

1.      By the instant adversary proceeding, the Trustee seeks:

    (a)      to recover damages suffered by the Debtor as a result of numerous breaches of fiduciary duties to the Debtor by the Debtor's former directors and senior officers;

    (b)      to recover certain fraudulent conveyances made to certain officers of the Debtor; and

    (c)      to obtain related relief.

**THE PARTIES**

2.      The Trustee is a resident of the State of New York and is a licensed attorney maintaining an office at 1556 Third Avenue, Suite 505, New York, New York 10128.

3.      Upon information and belief, at all relevant times, the Debtor, 1st Rochdale Cooperative Group, Ltd., was a New York corporation with a principal place of business located at 465 Grand Street, New York, New York 10002.

4.      Upon information and belief, at all relevant times, Defendant Gary Altman ("Altman") was and is an individual residing at 572 Grand Street, New York, New York 10002, and was a member of the Board of Directors of 1st Rochdale and served on 1st Rochdale's Legal Committee.

5.      Upon information and belief, at all relevant times, Defendant Rhoda Brown ("Brown") was and is an individual residing at 444 Neptune Avenue, Apt. 3B, Brooklyn, New York 11224, and was a member of the Board of Directors of 1st Rochdale and was a member of 1st Rochdale's Executive Committee.

6.      Upon information and belief, at all relevant times, George Crethan ("Crethan") was an individual residing at 21-25 34th Avenue #15D, Long Island City, New York 11106, and

(2)

was a member of the Board of Directors of 1st Rochdale and was a member of 1st Rochdale's Executive Committee.

7.      Upon information and belief, Crethan died in or about March 2006.

8.      Upon information and belief, Crethan's estate is administered by Defendant "John Doe 1" as Executor or Administrator of the Estate of George Crethan (the "Crethan Estate"). The identity of "John Doe 1" is not known at the present time.  The Trustee reserves the right to amend the caption of the adversary proceeding to substitute the name of "John Doe 1" upon ascertaining his/her identity.

9.      Upon information and belief, at all relevant times, Defendant Saul Mildworm ("Mildworm") was and is an individual residing at 473 FDR Drive, K1805, New York, New York 10002, and was a member of the Board of Directors and an officer of 1st Rochdale and served as President of 1st Rochdale and was a member of 1st Rochdale's Executive Committee and Legal Committee.

10.      Upon information and belief, at all relevant times, Defendant Jack Raskin ("Raskin") was and is an individual residing at 305 West 28th Street, Apt. 9H, New York, New York 10001, and was a member of the Board of Directors and an officer of 1st Rochdale and served as Secretary of 1st Rochdale and was a member of 1st Rochdale's Executive Committee and Nominating Committee.

11.      Upon information and belief, at all relevant times, Defendant David Smith ("Smith")  was and is an individual residing at 355 8th Avenue, Apt. 21F, New York, New York 10001, and was a member of the Board of Directors of 1st Rochdale.

12.      Upon information and belief, at all relevant times, Allen Thurgood ("Thurgood") was an individual residing at 114 West 70th, #3B, New York, New York 10023, and was a member of the Board of Directors and an officer of 1st Rochdale and served as Chairman, Vice

(3)

President and Chief Executive Officer of 1st Rochdale and was the Chairman of 1st Rochdale's Executive Committee.

13.    Upon information and belief, Thurgood died in or about October 2005.

14.    Upon information and belief, Thurgood's estate is administered by Defendant "John Doe 2" as Executor and Administrator of the Estate of Allen Thurgood (the "Thurgood Estate"). The identity of "John Doe 2" is not known at the present time.  The Trustee reserves the right to amend the caption of the adversary proceeding to substitute the name of "John Doe 2" upon ascertaining his/her identity.

15.    Upon information and belief, at all relevant times, Defendant Edward Yaker ("Yaker") was and is an individual residing at 3980 Orloff Avenue, Apt. 11-C, Bronx, New York 10463, and was a member of the Board of Directors and an officer of 1st Rochdale and served as Treasurer of 1st Rochdale was a member of 1st Rochdale's Executive Committee and Structure and Governance and Finance and Audit Committees.

16.    Upon information and belief, Defendant Gregory L. Wortham ("Wortham") is an individual residing at 311 E. Avenue C, Sweetwater, Texas 79556, and, at all relevant times, was an officer of 1st Rochdale and served as Vice President and Chief Operating Officer/Assistant Secretary of 1st Rochdale.

17.    Upon information and belief, at all relevant times, Defendant David L. Johnson ("Johnson") was and is an individual residing at 2 Highview Avenue Bernardsville, New Jersey 07924, was an officer of 1st Rochdale and served as Chief Financial Officer/Assistant Secretary of 1st Rochdale.

## JURISDICTION AND VENUE

18.    The United States District Court for the Southern District of New York has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334.  By virtue of 28 U.S.C.

(4)

§ 157(a), and the Order dated July 10, 1984 of District Court Judge Robert J. Ward of the United States District Court for the Southern District of New York, this adversary proceeding is automatically referred to the United States Bankruptcy Court for the Southern District of New York.

19.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (H).

20.     In the event that any part of the claims contained herein is found to be "non-core", the Trustee consents to the entry of final orders and judgments by the Bankruptcy Court pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

21.     The predicates for the relief sought herein are §§ 544 and 550 of the Bankruptcy Code and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law and the common law of the State of New York.

22.     Venue of the subject Chapter 7 case and of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

### Background

23.     Upon information and belief, at all relevant times, the Debtor's liabilities exceeded its assets.

24.     Upon information and belief, at all relevant times, the Debtor was unable to pay its obligations as they became due.

25.     Upon information and belief, at all relevant times, the Debtor was grossly undercapitalized for the business in which it was engaged.

26.     Upon information and belief, at all relevant times, the Defendants were fully aware of the Debtor's poor financial condition.

C046038/0189460/1376610.4

27.     On March 31, 2005 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 petition (the "Petition") under Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.

28.     On March 31, 2005, the Trustee was appointed Interim Trustee of the Debtor.  He subsequently became permanent Trustee by operation of law, and now is qualified and acting as Trustee.

**The Formation of the Debtor's Business**

29.     Upon information and belief, the Debtor was formed as a general cooperative corporation on or about August 27, 1997, under the laws of the State of New York, including the Cooperative Corporations Law of the State of New York.

30.     Upon information and belief, at the time of its incorporation, Mildworm, Raskin, Smith, Thurgood and Yaker were elected to 1st Rochdale's Board of Directors.

31.     Upon information and belief, Altman, Brown and Crethan were elected to 1st Rochdale's Board of Directors on or about June 6, 1998 (Mildworm, Raskin, Smith, Thurgood, Yaker, Altman, Brown and Crethan will collectively be referred to as the "BOD").

32.     Based upon its certificate of incorporation,  1st Rochdale was authorized to do the following:

        i.      Purchase or otherwise acquire or accumulate electrical power, heating oil, natural gas, propane or any other fuel or energy source and/or fuel or energy service (collectively "Energy Services") in order to meet the energy needs of cooperative housing companies and condominiums and/or other entities or persons (collectively "Consumers"), resell at the lowest feasible cost, or otherwise dispose of, any and all such Energy Services to Consumers, and/or arrange for the provision, transmissions, distribution or furnishing, of any and all such Energy

C046038/0189460/1376610.4

Services to consumers by third party providers or otherwise and/or provide any and all incidental services to Consumers to reduces Consumers' energy costs;

ii.     purchase or otherwise acquire for Consumers, and resell at the lowest feasible cost, or otherwise dispose of, to Consumers and/or arrange for the provisions, transmission, distribution or furnishing, directly or indirectly, to Consumers, phone, cable, satellite broadcast, internet, home security and/or medical alert services and/or any and all other similar communications services of any kind now known or hereafter devised; and

iii.     conduct any and all activities as shall from time be found appropriate to the foregoing, and which shall be lawful for Cooperative Corporations within the meaning of the Cooperative Corporation Law of the State of New York, including soliciting and receiving grants, bequests and contribution.

33.     Upon information and belief, at some point after its formation, 1st Rochdale formed seven (7) wholly owned subsidiaries, namely Twin Pines Fuels, LLC ("TPF LLC"), Twin Pines Fuels Corp. ("Twin Pines")[1], Gotham Power Development, LLC ("GPD"), Gotham Power Corporation, Gotham Power Company LLC, Gotham Power Zerega, LLC and Apple Juice Power, LLC.[2]

34.     Upon information and belief, Twin Pines and TPF LLC were formed in 1999.

35.      Upon information and belief, TPF LLC was formed primarily to participate in the fuel oil distribution business.

---

[1]     Twin Pines has itself been a debtor in bankruptcy since March 31, 2005, in a Chapter 7 case pending in the Bankruptcy Court of this District under the case caption, In re Twin Pines Fuel, Corp., Case No. 05-12088(PCB).  The Trustee is also the Trustee of Twin Pines.

[2]     Upon information and belief, other than Twin Pines, none of the other subsidiaries of 1st Rochdale have filed for bankruptcy.

36.     Upon information and belief, Twin Pines was formed primarily to own real property located at 1066 Zerega Avenue, Bronx, New York (the "Zerega Avenue Property").[3]

37.     Upon information and belief, GPD, Gotham Power Corporation, Gotham Power Company LLC, Gotham Power Zerega, LLC and Apple Juice Power, LLC were formed primarily to develop power plants.

38.     Upon Information and belief, Thurgood was the Chairman and Chief Executive Officer of 1st Rochdale from the day of its formation.

39.     Upon information and belief, in 1998, Wortham joined 1st Rochdale and became its Vice President and Chief Operating Officer.

**Financing from National Cooperative Service Corporation**

40.     Upon information and belief, prior to his joining 1st Rochdale, Wortham was instrumental in arranging a series of loans from the National Cooperative Service Corporation ("NCSC") to 1st Rochdale.

41.     Upon information and belief, NCSC was and still is a privately funded, member-owned cooperative that provides electric cooperatives with specialized financing services. In addition, NCSC provides a range of specialized flexible financing services for members seeking new opportunities to serve their customers and potential customers.

42.     Upon information and belief, from the beginning of 1999, NCSC had provided credit support to 1st Rochdale in several ways such as by direct loan or letters of credit to the New York Independent System Operator ("NYISO") for the benefit of 1st Rochdale.

43.     Upon information and belief, NCSC and TPF LLC entered into a certain Loan Agreement, dated as of December 28, 1999, under which TPF LLC executed and delivered to

---

[3]     A sale of the Zerega Avenue Property is scheduled in the Twin Pines bankruptcy for April 26, 2007.

C046038/0189460/1376610.4

NCSC certain Promissory Notes, each dated as of December 28, 1999, in the original principal amounts of $2,400,000 and $2,600,000, a Revolving Line of Credit Agreement, dated as of December 28, 1999, in a total amount not to exceed $5,000,000, and a Revolving Line of Credit Agreement, dated as of July 18, 2000, in an amount not to exceed $4,000,000 (the "TPF LLC Loans").

44.     Upon information and belief, NCSC and 1st Rochdale entered into a Revolving Line of Credit Agreement, dated as of April 14, 1999, in an amount not to exceed $5,000,000. (the 1st Rochdale Loan").

45.     Upon information and belief, NCSC and 1st Rochdale entered into a certain Letter of Credit Application and Agreement, dated as of April 27, 2000, in a total amount not to exceed $9,000,000 (the "1st Rochdale Letter of Credit") (the 1st Rochdale Loan and the 1st Rochdale Letter of Credit will collectively be referred to as the "1st Rochdale Indebtedness").

46.     Upon information and belief, the TPF LLC Loans and the 1st Rochdale Indebtedness were both cross-guaranteed and cross-collateralized in favor of NCSC by 1st Rochdale, TPF LLC and Twin Pines.

47.     Upon information and belief, at some point in 2000, NCSC stopped extending new credit to 1st Rochdale and its subsidiaries.

48.     Upon information and belief, during the period following the time that NCSC stopped extending credit, 1st Rochdale requested new lines of credit from NCSC on several occasions, under different formats and plans, but it appears that every request was denied.

49.     Upon information and belief, on or about October 1, 2001, NCSC withdrew its credit support to NYISO and on October 10, 2001, NYISO issued a notice of termination of service agreement to 1st Rochdale.

(9)

50. Upon information and belief, 1st Rochdale attempted to get its credit support renewed with NCSC, but NCSC declined to renew its credit support to 1st Rochdale. 1st Rochdale was therefore no longer allowed to purchase energy directly from NYISO.

**1st Rochdale's  Business Development**

51. Upon information and belief, in early 1998, 1st Rochdale obtained a certificate to operate as an Energy Service Company ("ESCO") and started the retail sale of power.

52. Upon information and belief, 1st Rochdale's initial customers were the cooperative societies that formed 1st Rochdale; however over the period of time 1st Rochdale managed to attract other individual and corporate customers including American Express.

53. Upon information and belief, along with its wholly-owned subsidiaries, 1st Rochdale developed the following four broad categories of business.

i.      **Fuel Oil Distribution Business**

54. Upon information and belief, in or about November 10, 1999, Twin Pines, with financing provided by NCSC to TPF LLC, purchased property at Zerega Avenue in Bronx, New York for $2.6 million, which property would be utilized for TPF LLC's fuel purchase, sale and storage operation.

55. Upon information and belief, although NCSC loaned in total approximately $14 million to TPF LLC, of which $5 million was to be utilized for the purchase and upgrade of the Zerega Avenue Property, very little money was actually spent on its upgrade.

56. Upon information and belief, approximately $9 million of the $14 million loaned to TPF LLC was to be utilized for the operation of the fuel oil business.

57. Upon information and belief, TPF LLC started purchasing and selling fuel oil in early 2000.

58.     Upon information and belief, TPF LLC continued this operation through the end of 2002, when, it was forced to close its fuel business by NCSC.

59.     Upon information and belief, during the period TPF LLC was in operation, its major clients included large cooperatives and government contracts where the margins were low.

60.     Upon information and belief, during the period of three years that TPF LLC was in operation, its aggregated losses amounted to over $7.7 million.

61.     Upon information and belief, one of the reasons that contributed to TPF LLC's low margin was a lack of sufficient funds to buy oil at a cheaper price.

62.     Upon information and belief, approximately $11.4 million of the original $14 million loaned to TPF LLC was available for the operation of TPF LLC fuel oil distribution business.

63.     Upon information and belief, approximately $3 million was diverted from TPF LLC to 1st Rochdale for the proposed power plant project as more fully set forth below.

64.     Upon information and belief, this diversion of funds from TPF LLC severely hurt the fuel oil business and left TPF LLC short of cash and unable to buy fuel oil at the cheapest price available. [4]

65.     Moreover, upon information and belief, notwithstanding the aforementioned diversion of funds from TPF LLC to 1st Rochdale, TPF LLC still had to pay interest on the full amount of the TPF LLC Loans to NCSC, further causing damage to the company.

---

[4]     Upon information and belief, a majority of the TPF LLC contracts consisted of government and semi government agencies, which had very low margins but had very high volume. In order to provide for these contracts TPF LLC had to invest significant amounts of money in inventory. TPF LLC also had to provide bonds to various institutions and invest in oil futures. Additionally, TPF LLC had to invest money in software development. The funds available to TPF LLC were insufficient for TPF LLC to penetrate the market and operate the business profitably.

C046038/0189460/1376610.4

66.     Upon information and belief, after NCSC allegedly forced TPF LLC to close down its business, NCSC apparently wanted Twin Pines and TPF LLC to sell the Zerega Avenue Property and repay the proceeds to NCSC.

67.     Upon information and belief, the management of Twin Pines and TPF LLC chose not to comply with NCSC's request to sell the Zerega Avenue Property, as management of 1st Rochdale wanted to build a power plant on that property.

68.     Upon information and belief, during the two years period following the shut down of the fuel oil business, TPF LLC incurred additional losses of over $2 million including: interest of $1.27 million, depreciation of $250,000, salaries, insurance, legal expenses, taxes and other expenses to maintain the Zerega Avenue property.

69.     Upon information and belief, these loss figures do not include the related management expenses incurred and paid through 1st Rochdale.

**ii.     Power Plant Development**

70.     Upon information and belief, in 1997 1st Rochdale began actively evaluating power plant development options in New York City.

71.     Upon information and belief, 1st Rochdale initially planned to buy power plants from Consolidated Edison ("ConEd") with significant input from NCSC.

72.     Upon information and belief, in 2000, 1st Rochdale and GPD embarked upon an ambitious plan to build a power plant at the Zerega Avenue Property. The plan to build the power plant changed dramatically over the years with the change in size of the proposed plant from a 79 megawatt ("MW") unit to a 260 MW unit and back to a 79 MW unit and type of the plant from a peaking plant to a simple cycle plant to a combined cycle plant.

C046038/0189460/1376610.4

73.    Upon information and belief, with every change in plan 1st Rochdale had to amend the layout, turbines and other plant components and seek fresh approvals from various authorities and incur the corresponding costs.

74.    Upon information and belief, during the time 1st Rochdale and GPD were planning to build the plant they were also planning to build and purchase other plants at different locations, including buying the North First Street (Brooklyn) property from ConEd and a plant at Coop City in Bronx, and purchasing power plants from the New York Power Authority.

75.    Upon information and belief, during the year 2000 and 2001, management consisting of the BOD namely, Altman, Brown, Crethan, Mildworm, Raskin, Smith, Thurgood and Yaker and the Chief Officers of 1st Rochdale namely, Thurgood, Wortham and Johnson (each of members of the BOD and each of the Chief Officers collectively will be referred to as "Management") spent millions of dollars in legal fees and consultants fees in order to obtain necessary permits and licenses.

76.    Upon information and belief, most of these monies were spent by 1st Rochdale and GPD even after NCSC had stopped extending further loans to 1st Rochdale and its subsidiaries.

77.    Moreover, and upon information and belief, 1st Rochdale did not have any other internal or external source of financing or joint venture agreement with an investor willing to provide the capital necessary in order to build a power plant.

78.    Upon information and belief, the money spent by 1st Rochdale and GPD for the development of a power plant was originally loaned to TPF LLC in order to provide for the retail sale of power and to TPF LLC for its fuel oil business.

(13)

79.     Upon information and belief, from the beginning of 2001, 1st Rochdale and GPD tried to attract various companies to invest in the power plant and to sign a joint venture agreement.

80.     Upon information and belief, in June and July 2001, 1st Rochdale negotiated with Sempra Energy Solutions Corporation ("Sempra") for possible investment in the power plant. Sempra wanted to build a 79.9 MW simple cycle power plant at Zerega Avenue which plans were later converted into a 79.9 MW combined cycle power plant.

81.     Upon information and belief, based on discussions with Sempra, along with several other provisions, 1st Rochdale would invest $3 million as capital and Sempra would pay 1st Rochdale $6.75 million in cash in five installments upon achieving various milestones for power plant development.

82.     Upon information and belief, 1st Rochdale would additionally receive approximately $5 million in cash within five years of commercial operation of the power plant as additional investment from Sempra.

83.     Upon information and belief, Sempra was to fund all the construction costs of the project.  Upon execution of the contract Sempra would have acquired a 95% interest in the power plant leaving the remaining 5% with 1st Rochdale.

84.     Upon information and belief, the deal between 1st Rochdale and Sempra broke off in August or September 2001. [5]

85.     Upon information and belief, all of this occurred while according to the books and records, 1st Rochdale had insufficient monies to meet its then current obligations.

---

[5]     Upon information and belief, at the same time 1st Rochdale, lacking funds necessary to go through with the Zerega Avenue Property power plant construction as no agreement was signed with Sempra, placed a $9.4 million bid to buy the North First Street, Brooklyn property from ConEd.  However, as ConEd was looking for a higher sale price, the deal did not materialize.

86.     Upon information and belief, although documents reviewed suggest that 1st Rochdale made various plans and expected to build the plant and to commence the operation within one year, a March 28, 2003 report stated that it could take up to 44 months solely to obtain environmental permits.

87.     Upon information and belief, during the year 2003, well after NCSC had ceased extending financing and credit arrangements to 1st Rochdale, 1st Rochdale started concentrating on building a power plant with the expectation that it might qualify for Liberty Bond financing.

88.     Upon information and belief, 1st Rochdale incurred significant sums in a failed attempt to lobby politicians in Washington, DC, to insure that the power plant planned by 1st Rochdale, although located in Bronx, would qualify for the financing under the Liberty Zone Bonds proposed by the federal government pursuant to the New York City economic recovery incentives for the downtown Manhattan (Liberty Zone) area.

89.     Upon information and belief, 1st Rochdale failed to obtain the Liberty Zone Bonds.

90.     Upon information and belief, based on a review of reports prepared for 1st Rochdale, it would cost approximately $1.2 million to $1.4 million per MW to build a combined cycle power plant. Therefore the total costs of a 79.9 MW combined cycle power plant proposed by 1st Rochdale would have exceeded $100 million.

91.     Upon information and belief, 1st Rochdale lacked both the funds and the financing necessary to pay for any part of this proposed power plant and its only potential contribution to the building of a power plant was the Zerega Avenue Property.

92.     Upon information and belief, in early 2004, 1st Rochdale sent out offer letters to various potential parties who might be interested in building a power plant at Zerega Avenue Property.

(15)

93.    Upon information and belief, in response to those letters, Allied Investors Consortium, LLC ("Allied Investors") negotiated and entered into an agreement with 1st Rochdale.

94.    Upon information and belief, based on the agreement, Allied Investors would invest over $10 million for a 50% ownership interest.

95.    Upon information and belief, Allied Investors would also pay 1st Rochdale in excess of $1,000,000 in six stages upon completion of specified terms.

96.    Upon information and belief, 1st Rochdale's contribution to the project was to be the Zerega Avenue Property and the related developmental work with a combined investment valued at $7.2 million for its 50% share.

97.    Upon information and belief, the balance of the funds to construct the power plant were supposed to be raised through financing.

98.    Upon information and belief, Allied Investors decided not to pursue the construction of the plant.

99.    Upon information and belief, it appears that from this date through the petition date, 1st Rochdale did not attempt to resurrect these or any other plans for constructing a power plant.

### iii.    **Sustainable Energy**

100.    Upon information and belief, the sustainable energy initiative by 1st Rochdale and its subsidiaries consisted of energy management services, on-site power generation through solar energy, fuel cells, micro turbine and appliance fairs where members and consumers would be able to acquire household appliances at discounted prices.

101.    Upon information and belief, 1st Rochdale provided energy management services to its members for a fee with the objective of lowering total energy costs to them and their customers.

102.    Upon information and belief, the on-site power generation services included installing solar energy, fuel cell and micro turbines for a fee and related services.

103.    Upon information and belief, it appears that the financing of the on-site power generation projects were on a 50-50 basis whereby 50% of the cost of the projects was provided by New York State Energy Research and Development Authority ("NYSERDA") in the form of a rebate to the customers and the remaining 50% was paid by the customer.

104.    Upon information and belief, 1st Rochdale received a nominal fee for coordinating these activities.

105.    Upon information and belief, the fee received by 1st Rochdale for these projects was insufficient to cover the associated overhead expenses.

106.    Upon information and belief, Management was aware of these losses; however in furtherance of their breach of fiduciary duty to 1st Rochdale, they chose to ignore the situation, and thus caused 1st Rochdale to incur further losses in connection with these projects.

**The ESCO Business**

107.    Upon information and belief, on October 22, 2001, 1st Rochdale signed an agreement to purchase energy from Mirant Americas Energy Marketing LP ("Mirant"), which 1st Rochdale would then resell to its customers.

108.    Upon information and belief, as a result of this agreement between 1st Rochdale and Mirant, 1st Rochdale and NCSC agreed to grant Mirant a security interest in all of 1st Rochdale's energy payments and receivables from its customers.

(17)

109.    Upon information and belief, this arrangement with Mirant helped 1st Rochdale to retain its status as an ESCO and continue to operate its retail sale of power business.

110.    Upon information and belief, in July 2003, Mirant filed for bankruptcy and on July 28, 2004, Mirant terminated the agreement with 1st Rochdale.

111.    Upon information and belief, as a result of this termination, 1st Rochdale did not have the necessary financial wherewithal to provide letters of credit or a third party guarantee to NYISO in order to purchase power for resale.    Accordingly, 1st Rochdale had to cease conducting business as an ESCO.

112.    Upon information and belief, after 1st Rochdale closed its business as an ESCO it transferred all its customers to ConEd.

113.    Upon information and belief, it appears that in 2004 1st Rochdale did not try to market its business to other ESCOs, as it did in 2001, when, with the approval of 1st Rochdale, ConEd contacted other ESCOs and asked them if they were interested in buying the retail sale of power business of 1st Rochdale and, within 24 hours, 1st Rochdale was contacted by 6 or 7 ESCOs.

114.    Upon information and belief, and based on the financial records of the Debtor, during the period 1st Rochdale was an ESCO (approximately 5 years), 1st Rochdale did not generate enough cash flow to meet its expenses (except in the year 2002-2003) even though, contrary to the reason for its existence, it charged its customers the same or higher rates charged by ConEd or other ESCOs.

C046038/0189460/1376610.4

**Breaches of Fiduciary Duty Led to 1st Rochdale's Substantial Losses and Bankruptcy**

115.    Upon information and belief, during the period January 1999 through the date of filing of the bankruptcy petition, 1st Rochdale suffered losses in excess of $15 million, exclusive of the additional losses suffered by its wholly owned subsidiaries.

116.    Even though the BOD minutes indicate that Management knew about these losses, it appears that Management never devised any strategy to reduce the losses or to stop operating the businesses that were losing money.

117.    Upon information and belief, commencing in or about the beginning of 1999, Management embarked on an excessively costly and speculative venture to a build a power plant, which venture ultimately failed.

118.    Upon information and belief, after early 2000, when NCSC withdrew its financial support to 1st Rochdale and without 1st Rochdale having the financial ability to build a power plant, Management caused 1st Rochdale to spend millions of dollars on legal and professional fees for the proposed power plant project and diverted the limited resources of 1st Rochdale towards the power plant project.

119.    Upon information and belief, during the year 2003 and 2004 Thurgood and Wortham, with the approval of the BOD, in what amounted to a futile effort, carelessly spent thousands of dollars in travel, professional and other expenses lobbying Washington and Albany in order to obtain proper qualification for Liberty Bonds funding (as proposed funds were for the development of downtown Manhattan not the Bronx).

120.    Upon information and belief, Management's aforesaid diversion of the financial resources of 1st Rochdale towards the speculative power plant project, left 1st Rochdale without adequate financial resources, and caused 1st Rochdale and its subsidiaries to incur multi-million dollar losses, which in turn ultimately cause 1st Rochdale's bankruptcy filing.

C046038/0189460/1376610.4

**Bonus Payments to Thurgood, Wortham and Johnson**

121.    Upon information and belief, while 1st Rochdale was suffering significant losses, Thurgood, Wortham and Johnson were awarded incentive payments and bonus amounts by the BOD in addition to receiving their regular salary and other benefits.

122.    Upon information and belief, the award of incentive payments and bonus amounts occurred at a time during which 1st Rochdale was insolvent.

     i.    **Thurgood Incentive/Bonus Payments**

123.    Upon information and belief, during the period commencing April 1, 1999 through March 31, 2000 Thurgood was awarded incentives and bonuses in the amount of twenty-five thousand dollars ($25,000).

124.    Upon information and belief, during the period commencing April 1, 2000 through March 31, 2001, Thurgood was awarded incentives and bonuses in the amount of one hundred twenty-five thousand dollars ($125,000).

125.    Upon information and belief, during the period commencing April 1, 2002 through March 31, 2003, Thurgood was awarded incentives and bonuses in the amount of sixty two thousand four hundred fifty nine dollars ($62,459).

126.    Upon information and belief, during the period commencing April 1, 2003 through March 31, 2004, Thurgood was awarded incentives and bonuses in the amount of forty eight thousand nine hundred eight three dollars ($48,983).

127.    Hereinafter the bonus/incentive amounts received by Thurgood shall be referred to as the "Thurgood Incentive/Bonus Transfers."

128.    Upon information and belief, despite the fact that 1st Rochdale from its inception, suffered losses and the BOD was aware of those losses, the BOD still awarded the Thurgood Incentive/Bonus Transfers.

C046038/0189460/1376610.4

ii.  **The Wortham Incentive/Bonus Payments**

129.   Upon information and belief, during the period commencing April 1, 1999 through March 31, 2000, Wortham was awarded incentives and bonuses in the amount of five thousand dollars ($5,000).

130.   Upon information and belief, during the period commencing April 1, 2000 through March 31, 2001, Wortham was awarded incentives and bonuses in the amount of one hundred twenty-five thousand dollars ($125,000).

131.   Upon information and belief, during the period commencing April 1, 2002 through March 31, 2003, Wortham was awarded incentives and bonuses in the amount of thirty thousand twenty-five dollars ($30,025).

132.   Upon information and belief, during the period commencing April 1, 2003 through March 31, 2004, Wortham was awarded incentives and bonuses in the amount of forty four thousand five hundred thirty dollars ($44,530).

133.   Hereinafter the bonus/incentive amounts received by Wortham shall be referred to as the "Wortham Incentive/Bonus Transfers."

134.   Upon information and belief, despite the fact that 1st Rochdale from its inception, suffered losses and the BOD was aware of those losses, the BOD still awarded the Wortham Incentive/Bonus Transfers.

iii.  **The Johnson Incentive/Bonus Payments**

135.   Upon information and belief, during the period commencing April 1, 2000 through March 31, 2001, Johnson was awarded incentives and bonuses in the amount of one thousand dollars ($1,000).

136.    Upon information and belief, during the period commencing April 1, 2002 through March 31, 2003, Johnson was awarded incentives and bonuses in the amount of two thousand five hundred thirty three dollars ($2,533).

137.    Upon information and belief, during the period commencing April 1, 2003 through March 31, 2004, Johnson was awarded incentives and bonuses in the amount of twelve thousand eight hundred twenty five dollars ($12,825).

138.    Hereinafter the bonus/incentive amounts received by Johnson shall be referred to as the "Johnson Incentive/Bonus Transfers."

139.    Upon information and belief, despite the fact that 1st Rochdale from its inception, suffered losses and the BOD was aware of those losses, the BOD still awarded the Johnson Incentive/Bonus Transfers.

## COUNT ONE

## CLAIM FOR BREACH OF FIDUCIARY DUTIES OF DUE CARE AGAINST ALTMAN, BROWN, THE CRETHAN ESTATE, MILDWORM, RASKIN, SMITH, THE THURGOOD ESTATE, YAKER, WORTHAM AND JOHNSON

140.    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

141.    Upon information and belief, as directors, senior officers, and/or employees with management responsibility at 1st Rochdale, Management owed 1st Rochdale fiduciary duties, when acting on behalf of 1st Rochdale, to exercise the care, diligence and skill that a reasonably prudent person in a like position would exercise under comparable circumstances, and with a view to 1st Rochdale's best interests.

142.    Upon information and belief, by virtue of the acts and omissions described in this Complaint, the Management failed to exercise the care, diligence, and skill that directors and

(22)

officers of a company would exercise under comparable circumstances, and instead acted in a grossly negligent manner, thereby violating their fiduciary duties to 1st Rochdale, in that, among other things:

(a)     Management operated 1st Rochdale's businesses in a manner that was neither financially nor economically viable.  As set forth above, during the time that 1st Rochdale operated it suffered over $15,000,000 in losses.  Rather than utilize the full $11.6 million remaining from the $14 million loan from NCSC to TPF LLC, of which $2.6 million had already been utilized for the purchase of the Zerega Avenue Property, Management chose to divert approximately $3 million from TPF LLC to 1st Rochdale and GPD for the development of a power plant.  This diversion of funds from TPF LLC severely hurt TPF LLC's fuel oil distribution business and left TPF LLC short of the necessary funds to buy fuel oil at the cheapest price available.

(b)     Despite their fiduciary duties to 1st Rochdale, Management continued to waste the resources of 1st Rochdale and erode the Debtor's financial wherewithal to operate as a company.  With respect to the plan to develop a power plant, Management spent millions of dollars in legal fees and consultants fees in order to obtain necessary permits and licenses, notwithstanding the cessation of financing from NCSC in 2000.  Moreover, 1st Rochdale, lacking funds necessary to go through with the Zerega Avenue Property power plant construction as no agreement was in place, placed a $9.4 million bid to buy the North First Street, Brooklyn property from ConEd.  Additionally, 1st Rochdale improperly incurred significant sums in a failed attempt to lobby politicians in Washington, DC, to insure that the power plant planned by 1st Rochdale, would qualify for the financing under the Liberty Zone Bonds proposed by the federal government pursuant to the New York City economic recovery incentives for the downtown Manhattan (Liberty Zone) area, despite the fact, that the Zerega Avenue Property was located in the Bronx.  Despite the fact, that 1st Rochdale had no viable source of funding and despite the fact that it would cost close to $100,000,000 to build the power plant, 1st Rochdale with the approval of Management continued to pour money into the development of the power plant project.  All of this occurred while according to the Debtor's books and records, 1st Rochdale was grossly undercapitalized for the business in which it was engaged.

(c)     Management continued to allow 1st Rochdale to engage in the sustainable energy business, despite the fact that it too was losing money.  Although 1st Rochdale received a fee for the coordination of the sustainable energy activities, that fee was never sufficient to cover its operating expenses with respect to this business.

(d)     Even after 1st Rochdale's agreement with Mirant terminated and as a result of this termination, 1st Rochdale did not have the necessary financial wherewithal to provide letters of credit or a third party guarantee to NYISO in order to purchase power for resale and as a result had to close conducting business as an ESCO, Management allowed 1st Rochdale to transfer all of it accounts to ConEd and then made no attempt to market its business to other ESCOs, as it had done in 2001.

143.    Upon information and belief, as a direct and proximate result of Management's actions and omissions, the Debtor has been substantially injured, and suffered damages in an amount to be determined at trial.

144.    By virtue of the foregoing, the Trustee is entitled to a judgment on behalf of the Debtor's estate jointly and severally against the Defendants in an amount to be determined at trial.

## COUNT TWO

### BREACH OF FIDUCIARY DUTIES AGAINST ALTMAN, BROWN, THE CRETHAN ESTATE, MILDWORM, RASKIN, SMITH, THE THURGOOD ESTATE AND YAKER, REGARDING BONUSES PAID TO THURGOOD, WORTHAM AND JOHNSON

145.    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

146.    Upon information and belief, during the pre-petition period starting from in or about April 1, 1999 through March 31, 2004, 1st Rochdale was insolvent and faced a liquidity crisis which eventually led 1st Rochdale into bankruptcy.

147.    Upon information and belief, despite that liquidity crisis, the BOD caused 1st Rochdale to make incentive payments and bonus amounts to Thurgood, Wortham and Johnson during the pre-petition period as follows:

| Date | Name | Title | Amount |
|------|------|-------|--------|
| 4/01/1999-3/31/2004 | Allen Thurgood | Chief Executive Officer | $261,442 |
| 4/01/1999-3/31/2004 | Gregory Wortham | Chief Operating Officer | $204,555 |
| 4/01/1999-3/31/2004 | David L. Johnson | Chief Financial Officer | $16,358 |

148.    Upon information and belief, given the Debtors' insolvent condition at the time, members of the BOD namely, Altman, Brown, Crethan, Mildworm, Raskin, Smith, Thurgood

and Yaker breached their fiduciary duties in connection with compensation decisions during the pre-petition period, by paying the aforesaid incentive payments and bonus amounts to Thurgood, Wortham and Johnson.

149.    Upon information and belief, as a direct and proximate result of those breaches of fiduciary duties by the BOD, 1st Rochdale has been substantially injured and has suffered damages in the aggregate amount of $482,355.

150.    By virtue of the foregoing, the Trustee is entitled to a judgment on behalf of the Debtor's estate jointly and severally against the Defendants Gary Altman, Rhoda Brown, "John Doe 1" as Executor or Administrator of the Estate of George Crethan, Saul Mildworm, Jack Raskin, David Smith, "John Doe 2" as Executor or Administrator of the Estate of Allen Thurgood and Edward Yaker in the amount of $482,355 together with interest thereon.

## COUNT THREE

### AVOIDANCE AND RECOVERY OF THE
### THURGOOD INCENTIVE/BONUS TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 544(b) AND 550(a) AND §§ 273, 274, 275 AND 278 OF NEW YORK DEBTOR AND CREDITOR LAW
### (as against "John Doe 2" as Executor or Administrator of the Estate of Allen Thurgood)

151.    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

152.    Upon information and belief, the Thurgood Incentive/Bonus Transfers from or on behalf of the Debtor to the Thurgood were made without fair consideration.  Upon information and belief, the Thurgood Incentive/Bonus Transfers were not made by or on behalf of the Debtor to Thurgood in good faith or honestly, fairly, and openly.

153.    Upon information and belief, on the date of each of the Thurgood Incentive/Bonus Transfers, the Debtor (i) was insolvent or was rendered insolvent as a result of such transfer, (ii) had unreasonably small capital for the business in which it was engaged or was

about to engage, and/or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

154.    Accordingly, pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the Thurgood Incentive/Bonus Transfers.

155.    Accordingly, pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant "John Doe 2" as Executor or Administrator of the Estate of Allen Thurgood the value of the Thurgood Incentive/Bonus Transfers, in the amount of $261,442, plus interest, for the benefit of the Debtor's estate.

## COUNT FOUR

### UNJUST ENRICHMENT
### FROM THE THURGOOD INCENTIVE/BONUS TRANSFERS
### (as against "John Doe 2" as Executor or Administrator of the Estate of Allen Thurgood)

156.    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

157.    Upon information and belief, as a result of the Thurgood Incentive/Bonus Transfers from or on behalf of the Debtor to Thurgood, Thurgood received interests in property that rightfully belonged to the Debtor.

158.    Upon information and belief, the Debtor did not receive any benefit or received less than reasonably equivalent value in connection with the Thurgood Incentive/Bonus Transfers.

159.    Upon information and belief, Thurgood was unfairly benefited by wrongfully receiving and retaining the benefits of the Thurgood Incentive/Bonus Transfers without providing adequate consideration therefor to the Debtor, and was unjustly enriched thereby.

C046038/0189460/1376610.4

160.    By reason of the foregoing unjust enrichment, the Trustee is entitled to judgment against Defendant "John Doe 2" as Executor or Administrator of the Estate of Allen Thurgood in the amount of $261,442, together with interest thereon.

## COUNT FIVE

### AVOIDANCE AND RECOVERY OF THE WORTHAM INCENTIVE/BONUS TRANSFERS AS FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C. §§ 544(b) AND 550(a) AND §§ 273, 274, 275 AND 278 OF NEW YORK DEBTOR AND CREDITOR LAW (as against Defendant Gregory Wortham)

161.    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

162.    Upon information and belief, the Wortham Incentive/Bonus Transfers from or on behalf of the Debtor to Wortham were made without fair consideration.  Upon information and belief, the Wortham Incentive/Bonus Transfers were not made by or on behalf of the Debtor to Wortham in good faith or honestly, fairly, and openly.

163.    Upon information and belief, on the date of each of the Wortham Incentive/Bonus Transfers, the Debtor (i) was insolvent or was rendered insolvent as a result of such transfer, (ii) had unreasonably small capital for the business in which it was engaged or was about to engage, and/or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

164.    Accordingly, pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the Wortham Incentive/Bonus Transfers.

165.    Accordingly, pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant Gregory Wortham the value of the Wortham Incentive/Bonus Transfers, in the amount of $204,555, plus interest, for the benefit of the Debtor's estate.

C046038/0189460/1376610.4

## COUNT SIX

### UNJUST ENRICHMENT
### FROM THE WORTHAM INCENTIVE/BONUS TRANSFERS
### (as against Defendant Gregory Wortham)

166.     The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

167.     Upon information and belief, as a result of the Wortham Incentive/Bonus Transfers from or on behalf of the Debtor to Wortham, Wortham received interests in property that rightfully belonged to the Debtor.

168.     Upon information and belief, the Debtor did not receive any benefit or received less than reasonably equivalent value in connection with the Wortham Incentive/Bonus Transfers.

169.     Upon information and belief, Wortham was unfairly benefited by wrongfully receiving and retaining the benefits of the Wortham Incentive/Bonus Transfers without providing adequate consideration therefor to the Debtor, and was unjustly enriched thereby.

170.     By reason of the foregoing unjust enrichment, the Trustee is entitled to judgment against Defendant Gregory Wortham in the amount of $204,555, together with interest thereon.

## COUNT SEVEN

### AVOIDANCE AND RECOVERY OF THE
### JOHNSON INCENTIVE/BONUS TRANSFERS AS FRAUDULENT CONVEYANCES
### PURSUANT TO 11 U.S.C. §§ 544(b) AND 550(a) AND §§ 273, 274, 275 AND 278 OF
### NEW YORK DEBTOR AND CREDITOR LAW
### (as against Defendant David Johnson)

171.     The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

(28)

172.    Upon information and belief, the Johnson Incentive/Bonus Transfers from or on behalf of the Debtor to Johnson were made without fair consideration.  Upon information and belief, the Johnson Incentive/Bonus Transfers were not made by or on behalf of the Debtor to Wortham in good faith or honestly, fairly, and openly.

173.    Upon information and belief, on the date of each of the Johnson Incentive/Bonus Transfers, the Debtor (i) was insolvent or was rendered insolvent as a result of such transfer, (ii) had unreasonably small capital for the business in which it was engaged or was about to engage, and/or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

174.    Accordingly, pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the Johnson Incentive/Bonus Transfers.

175.    Accordingly, pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Defendant David Johnson the value of the Johnson Incentive/Bonus Transfers, in the amount of $16,358, plus interest, for the benefit of the Debtor's estate.

**COUNT EIGHT**

**UNJUST ENRICHMENT**
**FROM THE JOHNSON INCENTIVE/BONUS TRANSFERS**
**<u>(as against Defendant David Johnson)</u>**

176.    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

177.    Upon information and belief, as a result of the Johnson Incentive/Bonus Transfers from or on behalf of the Debtor to Johnson, Johnson received interests in property that rightfully belonged to the Debtor.

C046038/0189460/1376610.4

178.    Upon information and belief, the Debtor did not receive any benefit or received less than reasonably equivalent value in connection with the Johnson Incentive/Bonus Transfers.

179.    Upon information and belief, Johnson was unfairly benefited by wrongfully receiving and retaining the benefits of the Johnson Incentive/Bonus Transfers without providing adequate consideration therefor to the Debtor, and was unjustly enriched thereby.

180.    By reason of the foregoing unjust enrichment, the Trustee is entitled to judgment against Defendant David Johnson in the amount of $16,358, together with interest thereon.

**WHEREFORE**, the Trustee as Plaintiff respectfully requests that this Court grant judgment for the Trustee on behalf of the Debtors' estates as follows:

1.    On Count One, a determination that Defendants Gary Altman, Rhoda Brown, "John Doe 1" as Executor or Administrator of the Estate of George Crethan, Saul Mildworm, Jack Raskin, David Smith, "John Doe 2" as Executor or Administrator of the Estate of Allen Thurgood, Edward Yaker, Gregory Wortham and David Johnson breached their fiduciary duties to 1st Rochdale, and a judgment jointly and severally against those Defendants Gary Altman, Rhoda Brown, "John Doe 1" as Executor or Administrator of the Estate of George Crethan, Saul Mildworm, Jack Raskin, David Smith, "John Doe 2" as Executor or Administrator of the Estate of Allen Thurgood, Edward Yaker, Gregory Wortham and David Johnson in an amount to be determined at trial.

2.    On Count Two, a determination that Defendants Gary Altman, Rhoda Brown, "John Doe 1" as Executor or Administrator of the Estate of George Crethan, Saul Mildworm, Jack Raskin, David Smith, "John Doe 2" as Executor or Administrator of the Estate of Allen Thurgood and Edward Yaker breached their fiduciary duties to 1st Rochdale in connection with the awarding of incentive payments and bonus amounts to Thurgood, Wortham and Johnson, and a judgment jointly and severally against Defendants Gary Altman, Rhoda Brown, "John Doe 1"

as Executor or Administrator of the Estate of George Crethan, Saul Mildworm, Jack Raskin, David Smith, "John Doe 2" as Executor or Administrator of the Estate of Allen Thurgood and Edward Yaker in the amount of $482,355, plus applicable interest thereon.

3.      On Count Three, a determination that the Thurgood Incentive/Bonus Transfers constitute fraudulent conveyances and are subject to avoidance under 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and recovery in the amount of $261,442, plus interest, from Defendant "John Doe 2" as Executor or Administrator of the Estate of Allen Thurgood, pursuant to 11 U.S.C. § 550(a);

4.      On Count Four, judgment against Defendant "John Doe 2" as Executor and Administrator of the Estate of Allen Thurgood in the amount of $261,442, together with interest thereon;

5.      On Count Five, a determination that the Wortham Incentive/Bonus Transfers constitute fraudulent conveyances and are subject to avoidance under 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and recovery in the amount of $204,555, plus interest, from Defendant Gregory Wortham, pursuant to 11 U.S.C. § 550(a);

6.      On Count Six, judgment against Defendant Gregory Wortham in the amount of $204,555, plus interest thereon;

7.      On Count Seven, a determination that the Johnson Incentive/Bonus Transfers constitute fraudulent conveyances and are subject to avoidance under 11 U.S.C. § 544(b) and §§ 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and recovery in the amount of $16,358, plus interest, from Defendant David Johnson, pursuant to 11 U.S.C. § 550(a);

8.    On Count Eight, judgment against Defendant David Johnson in the amount of $16,358, plus interest thereon; and

9.    For such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
          March 28, 2007

                            BRYAN CAVE LLP

                            Counsel to the Chapter 7 Trustee

                            By: /s/ Robert A. Wolf
                                Robert A. Wolf (RW-3419)
                                Andrea K. Fisher (AF 0150)
                            1290 Avenue of the Americas
                            New York, New York  10104
                            Telephone:  (212) 541-2000
                            Facsimile:  (212) 541-4630

(32)

**EXHIBIT B**

SCHWARTZ, LICHTENBERG LLP
420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 389-7818
Barry E. Lichtenberg (BL 9750)
Attorneys for Gary Altman, Rhoda Brown,
The Estate of George Crethan, Saul Mildworm,
Jack Raskin, David Smith and Edward Yaker

UNITED STATES BANKRUPTCY COURT                Hearing Date: _____
SOUTHERN DISTRICT OF NEW YORK                         Time: _____
-----------------------------------------------------------------------x
In re:                                          :    Chapter 7
                                                :
1ST ROCHDALE COOPERATIVE GROUP, LTD.       :    Case No. 05-12086
(PCB)                                           :
                                                :
                    Debtor.                     :
-----------------------------------------------------------------------x
ROBERT L. GELTZER, as Chapter 7 Trustee for 1ST  :    JURY TRIAL
ROCHDALE COOPERATIVE GROUP, LTD.,               :    DEMANDED
                                                :
                    Plaintiff,                  :
                                                :
                                                :
GARY ALTMAN, RHODA BROWN, "JOHN DOE 1"          :
AS EXECUTOR OR ADMINISTRATOR OF THE             :
ESTATE OF GEORGE CRETHAN, SAUL                  :
MILDWORM, JACK RASKIN, DAVID SMITH, "JOHN       :    Adv. Pro. No. 07-1652
DOE 2" AS EXECUTOR OR ADMINISTRATOR OF          :
THE ESTATE OF ALLEN THURGOOD, EDWARD            :
YAKER, GREGORY WORTHAM and DAVID L.             :
JOHNSON,                                        :
                                                :
                    Defendants.                 :
-----------------------------------------------------------------------x

**NOTICE OF MOTION OF THE FORMER DIRECTORS FOR AN
ORDER PURSUANT TO 28 U.S.C. § 157 (d) WITHDRAWING THE
REFERENCE OF THIS ADVERSARY PROCEEDING
FROM THE UNITED STATES BANKRUPTCY COURT**

   **PLEASE TAKE NOTICE,** that upon the annexed affirmation and supporting

papers (the "Motion"), defendants Gary Altman, Rhoda Brown, The Estate of George

Crethan, Saul Mildworm, Jack Raskin, David Smith and Edward Yaker (collectively, the

0114201-016

"Former Directors") will move before the assigned District Court Judge, at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, Court Room _____ on _____ _____, 2007 at _____ , or as soon thereafter as counsel can be heard, for an Order, pursuant to 28 U.S.C. §157(d) and Rule 5011 of the Federal Rules of Bankruptcy Procedure, withdrawing the reference with respect to the above-captioned Adversary Proceeding as to the Former Directors.

**PLEASE TAKE FURTHER NOTICE**, that any objections to the relief sought in the Motion shall be made in writing, filed with the Bankruptcy Clerk's office and served on the undersigned so that it is received at least three days before the hearing date set by the District Court.

Dated: New York, New York
          September 5, 2007

SCHWARTZ, LICHTENBERG LLP

By: _/s/Barry E. Lichtenberg_____
       Barry E. Lichtenberg (BL 9750)

420 Lexington Avenue, Suite 2400
New York, New York 10170
 (212) 389-7818
Attorneys for Defendants
     Gary Altman
     Rhoda Brown
     The Estate of George Crethan
     Saul Mildworm
     Jack Raskin
     David Smith
     Edward Yaker

TO:
Bryan Cave LLP
Attorneys for Chapter 7 Trustee
1290 Avenue of the Americas
New York, New York 10104
Attn:  Robert A. Wolf, Esq.

Wander & Associates, P.C.
641 Lexington Avenue, 21st Floor
New York, New York 10022
Attn:  David Wander, Esq.

Loeffler Tuggey Pauerstein Rosenthal LLP
755 E. Mulberry, Suite 200
San Antonio, Texas 78212
Attn:  Jonathan D. Pauerstein, Esq.

United States Trustee
33 Whitehall Street
21st Floor
New York, New York 10007

SCHWARTZ, LICHTENBERG LLP
420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 389-7818
Barry E. Lichtenberg (BL 9750)
Attorneys for Gary Altman, Rhoda Brown,
The Estate of George Crethan, Saul Mildworm,
Jack Raskin, David Smith and Edward Yaker

UNITED STATES BANKRUPTCY COURT                    Hearing Date: _____
SOUTHERN DISTRICT OF NEW YORK                           Time: _____
-----------------------------------------------------------------------x
In re:                                              :    Chapter 7
                                                    :
1ST ROCHDALE COOPERATIVE GROUP, LTD.                :    Case No. 05-12086 (PCB)
                                                    :
                    Debtor.                         :
-----------------------------------------------------------------------x
ROBERT L. GELTZER, as Chapter 7 Trustee for 1ST    :    <u>JURY TRIAL DEMANDED</u>
ROCHDALE COOPERATIVE GROUP, LTD.,                   :
                                                    :
                    Plaintiff,                      :
                                                    :
GARY ALTMAN, RHODA BROWN, "JOHN DOE 1"             :
AS EXECUTOR OR ADMINISTRATOR OF THE                 :
ESTATE OF GEORGE CRETHAN, SAUL                      :
MILDWORM, JACK RASKIN, DAVID SMITH, "JOHN :          Adv. Pro. No. 07-1652
DOE 2" AS EXECUTOR OR ADMINISTRATOR OF             :
THE ESTATE OF ALLEN THURGOOD, EDWARD                :
YAKER, GREGORY WORTHAM and DAVID L.                 :
JOHNSON,                                            :
                                                    :
                    Defendants.                     :
-----------------------------------------------------------------------x

**AFFIRMATION OF BARRY E. LICHTENBERG, ESQ., IN SUPPORT
OF THE MOTION OF DEFENDANTS GARY ALTMAN, RHODA BROWN, ESTATE
OF GEORGE CRETHAN, SAUL MILDWORM, JACK RASKIN, DAVID SMITH AND
EDWARD YAKER FOR AN ORDER, PURSUANT TO 28 U.S.C. § 157(d), TO
IMMEDIATELY WITHDRAW THE REFERENCE OF THIS ADVERSARY
<u>PROCEEDING FROM THE UNITED STATES BANKRUPTCY COURT</u>**

0114201-021

BARRY E. LICHTENBERG, Esq., affirms the following under penalty of perjury:

1.      I am an attorney duly admitted and in good standing to practice before the Untied States district Courts for the Southern District of New York and the Eastern District of New York.  I am a member of Schwartz, Lichtenberg LLP, attorneys for defendants Gary Altman, Rhoda Brown, Estate of George Crethan, Saul Mildworm, Jack Raskin, David Smith and Edward Yaker (collectively, the "Former Directors").  I submit this affirmation in support of the Former Directors' Motion dated September 5, 2007, for the entry of an order, pursuant to 28 U.S.C.§157(d) and Federal Rule of Bankruptcy Procedure 5011, to immediately withdraw "for cause" the reference of the above-referenced adversary proceeding (the "Adversary Proceeding") from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") as to the Former Directors and to place before this Court documents relevant to this Motion.

2.       Upon information and belief, each of the Former Directors previously served, at certain times, on the board of directors of 1st Rochdale Cooperative Group Ltd ("1st Rochdale").

3.      Upon information and belief, on March 31, 2005, 1st Rochdale filed a voluntary chapter 7 petition under Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. in the Untied States Bankruptcy Court for the Southern District of New York.

4.      Upon information and belief, on March 31, 2005, Robert L. Geltzer was appointed interim trustee of 1st Rochdale and subsequently became permanent trustee (the "Trustee").

5.      Upon information and belief, on or about March 28, 2007, the Trustee caused to be filed a complaint (the "Complaint") in the above-noted adversary proceeding (the "Adversary Proceeding").

6.      None of the Former Directors has filed a proof of claim with the Bankruptcy Court against 1st Rochdale.

7.      On September 5, 2007, the Former Directors filed with the Bankruptcy Court a Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), made applicable to that proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, together with a memorandum of law and supporting affidavit (the "Motion to Dismiss").  A copy of the Motion to Dismiss is annexed hereto as Exhibit "A."

8.      The Motion to Dismiss seeks the dismissal of the only counts in the complaint that assert claims against the Former Directors, to wit, Count One and Count Two.  The Motion to Dismiss also demands a jury trial.  Additionally, the Former Directors have filed a separate demand for a jury trial pursuant to Federal Rules of Civil Procedure 38 and 39.  A copy of the Former Directors' jury demand is annexed hereto as Exhibit "B."

9.      Pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, the Motion to Dismiss denies that the adversary proceeding is a core proceeding and expressly states that the Former Directors do not consent to either the entry of any findings of fact or conclusions of law or to the entry of any final orders or judgments by the bankruptcy judge.  The Motion to Dismiss also states that the Former Directors do not consent to a jury trial by the Bankruptcy Court.

10.     As detailed in the Motion to Dismiss, the Complaint alleges only one traditional common law, state-created, non-core cause of action -- breach of fiduciary duty -- as to which the Former Directors are entitled to a jury trial before the District Court.

11.     The instant Motion to Withdraw the Reference is being made on a timely basis and, because it is being filed contemporaneously with the Motion to Dismiss, is being made at the Former Directors' first opportunity to respond to the Complaint.  The Former Directors have

filed no answer to the Complaint.  They have corresponded with Judge Beatty only once to suggest a chambers conference among all parties, which request was denied.  A copy of said correspondence is annexed hereto as Exhibit "C."

12.    For these reasons, as well as the additional reasons set forth in the accompanying memorandum of law, the Former Directors respectfully seek immediate withdrawal of the reference from the Bankruptcy Court with respect to the Adversary Proceeding against them.

13.    No previous request for the relief contained herein has been made to this or any other Court.

14.    I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Dated:  New York, New York
          September 5, 2007


                                              /s/Barry E. Lichtenberg
                                             Barry E. Lichtenberg (BL 9750)

SCHWARTZ, LICHTENBERG LLP       Hearing Date: _____
420 Lexington Avenue, Suite 2400       Time: _____
New York, New York 10170
(212) 389-7818
Barry E. Lichtenberg (BL 9750)
Attorneys for defendants Gary Altman, Rhoda Brown,
The Estate of George Crethan, Saul Mildworm,
Jack Raskin, David Smith and Edward Yaker

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                             :   Chapter 7
                                :
1ST ROCHDALE COOPERATIVE GROUP, LTD.   :   Case No. 05-12086 (PCB)
                                :
            Debtor.          :
------------------------------------------------------------------x
ROBERT L. GELTZER, as Chapter 7 Trustee for 1ST  :   <u>JURY TRIAL DEMANDED</u>
ROCHDALE COOPERATIVE GROUP, LTD.,       :
                                :
           Plaintiff,       :
                                :
GARY ALTMAN, RHODA BROWN, "JOHN DOE 1" :
AS EXECUTOR OR ADMINISTRATOR OF THE    :
ESTATE OF GEORGE CRETHAN, SAUL        :
MILDWORM, JACK RASKIN, DAVID SMITH, "JOHN :  Adv. Pro. No. 07-1652
DOE 2" AS EXECUTOR OR ADMINISTRATOR OF :
THE ESTATE OF ALLEN THURGOOD, EDWARD  :
YAKER, GREGORY WORTHAM and DAVID L.    :
JOHNSON,                              :
                                :
           Defendants.    :
------------------------------------------------------------------x

**MEMORANDUM OF LAW OF DEFENDANTS GARY ALTMAN, RHODA
BROWN, THE ESTATE OF GEORGE CRETHAN, SAUL MILDWORM,
JACK RASKIN, DAVID SMITH AND EDWARD YAKER IN SUPPORT OF
MOTION, PURSUANT TO 28 U.S.C. § 157(d) AND RULE 5011 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE, TO IMMEDIATELY WITHDRAW
THE REFERENCE FROM THE BANKRUPTCY COURT WITH RESPECT
<u>TO THE ADVERSARY PROCEEDING</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 2

FACTUAL BACKGROUND ............................................................................................. 4

ARGUMENT

    PURSUANT TO 28 U.S.C. § 157(d), THERE IS "CAUSE" FOR THIS
    COURT IMMEDIATELY TO WITHDRAW THE REFERENCE
    WITH RESPECT TO THE ADVERSARY PROCEEDING ............................................. 4

    A.    Bankruptcy Courts Do Not Have Jurisdiction
          To Enter Final Orders Or Judgments In Non-Core Matters ................................. 5

    B.    The Adversary Proceeding Is A Non-Core
          Proceeding As To The Former Directors ............................................................ 8

          1.    Count One and Count Two Of The Adversary Proceeding Are Non-Core
              Because It Has No Nexus To 1st Rochdale's Bankruptcy Case ................. 8

          2.    Abundant "Cause" Exists For The Court To Withdraw
              The Reference With Respect To The Adversary Proceeding .................... 9

          3.    The Complaint's Allegation That The Adversary Proceeding Is A "Core
              Proceeding" Is Incorrect ......................................................................... 13

    C.    The Reference Must Be Withdrawn Because
          The Seventh Amendment Prohibits The Bankruptcy
          Court From Holding Jury Trials In Non-Core Matters ....................................... 15

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

Beard v. Braunstein,
    914 F.2d 434, 443 (3d Cir. 1990)……………………………………………….. 14

Granfinanciera, S.A. v. Nordberg
    492 U.S. 33, 41 (1989)…………………………………………………………...15

Hatzel & Buehler v. Orange & Rockland Utilities, Inc.,
    107 B.R. 34 (D. Del. 1989)…………………………………………………9, 10

In re 131 Liquidating Corp.,
    222 B.R. 209 (S.D.N.Y. 1998)…………………………………………………..8, 15

In re American Energy, Inc.,
    50 B.R. 175 (Bankr. D.N.D. 1985)…………………………………………8, 9, 14

In re Cinematronics, Inc.,
    916 F.2d 1444 (9th Cir. 1990)………………………………………………13, 15

In re CIS Corp.,
    172 B.R. 748 (S.D.N.Y. 1994)……………………………………………..8

In re J.T. Moran Financial Corp.,
    124 B.R. 931 (S.D.N.Y. 1991)…………………………………………10, 15

In re Landbank Equity Corp.,
    77 B.R. 44 (E.D. Va. 1987)…………………………………………………8, 10

In re Murray,
    149 B.R. 383 (E.D. Va. 1993) ...............................................................8, 9, 14

In re National Enterprises, Inc.,
    128 B.R. 961 .......................................................................................10

In re Orion Pictures Corp.,
    4 F.3d 1095 (2d Cir. 1993) ...................................................................passim

In re Wedtech Corp.,
94 B.R. 293 (S.D.N.Y. 1988) ...............................................................11, 16

In re Weinstein,
237 B.R. 567 (Bankr. E.D.N.Y. 1999) ...............................................9, 16

Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,
458 U.S. 50 (1982)...............................................................6, 7, 14

Parsons v. Bedford,
3 Pet. 433 (1830) ...............................................................15

Pied Piper Casuals, Inc. v. Insurance Co. of the State of Pennsylvania,
72 B.R. 156 (S.D.N.Y. 1987) ...............................................................15

**STATUTES AND RULES**

11 U.S.C. § 363(b)...............................................................15

11 U.S.C. § 548 ...............................................................passim

20 U.S.C. § 157 ...............................................................16

28 U.S.C. § 157(a) ...............................................................6,8, 9

28 U.S.C. § 157(b)(1)(2) ...............................................................passim

28 U.S.C. § 157(c)(1) ...............................................................passim

28 U.S.C. § 157(d)...............................................................2, 7

28 U.S.C. § 1334...............................................................5, 8

Federal Rule of Bankruptcy Procedure 5011 ...............................................................2

Federal Rule of Bankruptcy Procedure 7008 ...............................................................10, 11

Federal Rule of Bankruptcy Procedure 7009 ...............................................................14

Federal Rule of Civil Procedure 7012 ...............................................................14

Federal Rule of Civil Procedure 60(b) ...............................................................14

Federal Rule of Civil Procedure 9(b) ...............................................................14

Federal Rule of Civil Procedure 12(b) ...............................................................14

SCHWARTZ, LICHTENBERG LLP                    Hearing Date: _____
420 Lexington Avenue, Suite 2400                Time: _____
New York, New York 10170
(212) 389-7818
Barry E. Lichtenberg (BL 9750)
Attorneys for defendants Gary Altman, Rhoda Brown,
The Estate of George Crethan, Saul Mildworm,
Jack Raskin, David Smith and Edward Yaker

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                                          :    Chapter 7
                                                :
1ST ROCHDALE COOPERATIVE GROUP, LTD.            :    Case No. 05-12086 (PCB)
                                                :
                Debtor.                         :
------------------------------------------------------------------x
ROBERT L. GELTZER, as Chapter 7 Trustee for 1ST :    JURY TRIAL DEMANDED
ROCHDALE COOPERATIVE GROUP, LTD.,               :
                                                :
                Plaintiff,                      :
                                                :
GARY ALTMAN, RHODA BROWN, "JOHN DOE 1"          :
AS EXECUTOR OR ADMINISTRATOR OF THE             :
ESTATE OF GEORGE CRETHAN, SAUL                  :
MILDWORM, JACK RASKIN, DAVID SMITH, "JOHN       :    Adv. Pro. No. 07-1652
DOE 2" AS EXECUTOR OR ADMINISTRATOR OF          :
THE ESTATE OF ALLEN THURGOOD, EDWARD            :
YAKER, GREGORY WORTHAM and DAVID L.             :
JOHNSON,                                        :
                                                :
                Defendants.                     :
------------------------------------------------------------------x

**MEMORANDUM OF LAW OF DEFENDANTS GARY ALTMAN, RHODA BROWN,
THE ESTATE OF GEORGE CRETHAN, SAUL MILDWORM,
JACK RASKIN, DAVID SMITH AND EDWARD YAKER IN SUPPORT OF
MOTION, PURSUANT TO 28 U.S.C. § 157(d) AND RULE 5011 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE, TO IMMEDIATELY WITHDRAW THE
REFERENCE FROM THE BANKRUPTCY COURT WITH
<u>RESPECT TO THE ADVERSARY PROCEEDING</u>**

# PRELIMINARY STATEMENT[1]

Defendants Gary Altman, Rhoda Brown, Estate of George Crethan, Saul Mildworm, Jack Raskin, David Smith and Edward Yaker, former members of the board of directors of 1st Rochdale Cooperative Group, Ltd. ("1st Rochdale") (collectively, the "Former Directors") respectfully submit this memorandum of law in support of their motion, pursuant to 28 U.S.C §157(d) and Rule 5011 of the Federal Rules of Bankruptcy Procedure, for an order withdrawing the reference to the Bankruptcy Court with respect to the above-referenced adversary proceeding (the "Adversary Proceeding").

The action against the Former Directors does not belong in Bankruptcy Court.  Of the eight counts in the Complaint, only Count One and Count Two assert claims against the Former Directors.  The Former Directors, who have also moved to dismiss the Complaint, respectfully request that this Court withdraw the reference to the Bankruptcy Court with respect to the Adversary Proceeding as to them.  This Court may withdraw the reference if there is "cause" to do so and "cause" plainly exists here for several reasons. First, as a matter of law, the Bankruptcy Court lacks the power to enter final judgment in the Adversary Proceeding. This is so because the sole two counts against the Former Directors constitute a classic "non-core" proceeding.  It is based entirely on a single non-bankruptcy state law cause of action of breach of fiduciary duty that has no relation whatsoever to the Bankruptcy Code.  This cause of action could plainly have been brought in state court had 1st Rochdale not sought bankruptcy protection. Further, none of the Former Directors have filed a proof of claim in 1st Rochdale's bankruptcy case, nor do they have any nexus with 1st Rochdale's bankruptcy case. They are defendants in the Bankruptcy Court only because that is where the Trustee chose to sue them.

---

[1] All defined terms that are used, but not defined, below have the same meaning as in the accompanying Affirmation

Withdrawal of the reference will assure that parties, such as the Former Directors, will not be forced to submit to judgment by the Bankruptcy Court.  It will also spare 1st Rochdale, its creditors and the Former Directors the substantial expenses and delays likely to be caused by duplicative and protracted proceedings in the Bankruptcy Court and this Court, which are likely to ensue if the reference is not withdrawn.

"Cause" to withdraw the reference also exists because the Former Directors have sought a jury trial in the Adversary Proceeding and the Bankruptcy Court is constitutionally prohibited from conducting jury trials in non-core proceedings. Under similar circumstances, courts have recognized that immediate withdrawal of the reference is appropriate in order to enable the Adversary Proceeding to proceed most efficiently and expeditiously in the Court with original jurisdiction over the Adversary Proceeding.

The other factors that courts have considered in deciding whether to withdraw the reference also squarely support immediate withdrawal in this case. For example, this Court is clearly more qualified than the Bankruptcy Court to determine the non-bankruptcy causes of action raised in the Adversary Proceeding.  The Adversary Proceeding as against the Former Directors will proceed more expeditiously in this Court and at far lesser expense to 1st Rochdale, its creditors and the Former Directors than if it is allowed to remain in the Bankruptcy Court. Concerns of forum shopping also require immediate withdrawal of the reference. The Trustee selected the Bankruptcy Court as its forum presumably because it believed the Bankruptcy Court -- whose primary task is to protect the rights of debtors and their creditors -- will likely react favorably to the Adversary Proceeding. The Former Directors, on the other hand, had no choice as to the selection of the forum; they are seeking simply to have the Adversary Proceeding restored to the Court that has original jurisdiction.

of Barry E. Lichtenberg, Esq.

The Former Directors are entitled to a jury trial with respect to the Adversary Proceeding and are entitled to have final judgment entered by this Court, not the Bankruptcy Court. Withdrawal of the reference will protect these rights, minimize the substantial costs and delay of these proceedings for 1st Rochdale, its creditors and the Former Directors and level the playing field so that the Former Directors receive judgment solely on the merits. Although the timing of the withdrawal is subject to this Court's discretion, the clear lack of any nexus between the Former Directors and 1st Rochdale's bankruptcy case and the Trustee's failure to substantiate any of its allegations against the Former Directors strongly suggest that the last-minute commencement of the Adversary Proceeding in the Bankruptcy Court was an abuse of that court's power that should be redressed by this Court's immediate withdrawal of the reference with respect to the Adversary Proceeding.

## STATEMENT OF FACTS

The facts relevant to this Motion are set forth in the accompanying Affirmation of Barry E. Lichtenberg, Esq., dated September 5, 2007, (the "Lichtenberg Aff."), and annexed thereto, which is submitted herewith and incorporated herein by reference.

## ARGUMENT

### PURSUANT TO 28 U.S.C. § 157(d), THERE IS "CAUSE" FOR THIS COURT IMMEDIATELY TO WITHDRAW THE REFERENCE WITH RESPECT TO THE ADVERSARY PROCEEDING

The withdrawal of the reference in bankruptcy cases and proceedings is governed by 28 U.S.C. § 157(d) which provides as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities

affecting interstate commerce.

As demonstrated below, pursuant to 28 U.S.C. § 157(d), "cause" exists for this Court immediately to withdraw the reference to the Bankruptcy Court with respect to Count One and Count Two of the Adversary Proceeding.  First, the Adversary Proceeding is a non-core proceeding as to which the Bankruptcy Court does not have the power to enter final judgment. To allow the Adversary Proceeding to continue in the Bankruptcy Court will likely result in protracted and duplicative proceedings at great and unnecessary expense to 1st Rochdale, its creditors and the Former Directors. Thus, considerations of judicial economy require that this Court, rather than the Bankruptcy Court, preside over all aspects of the Adversary Proceeding.

Second, the Former Directors are entitled to a jury trial as to the Count One and Count Two.  The Bankruptcy Court, however, is constitutionally prohibited from holding a jury trial in the Adversary Proceeding because the Adversary Proceeding is a non-core matter as to the claims against the Former Directors.  Accordingly, withdrawal of the reference is warranted.

## A.    Bankruptcy Courts Do Not Have Jurisdiction To Enter Final Orders Or Judgments In Non-Core Matters

The United States District Court for the Southern District of New York has jurisdiction over all bankruptcy cases filed in the United States Bankruptcy Court for the Southern District of New York, including 1st Rochdale's bankruptcy case and the Adversary Proceeding.  Under 28 U.S.C. § 1334, the district courts "shall have original and exclusive jurisdiction of all cases under title 11" except that the "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 157(a) provides that:

Each district court may provide that any or all cases under title 11

> and any or all proceedings arising under title 11 or arising in or
> related to a case under title 11 shall be referred to the bankruptcy
> judges for the district.

28 U.S.C. § 157(a).

The referral of "all cases" to "the bankruptcy judges for the district" pursuant to this

provision does not, however, authorize the bankruptcy judges to decide every case and dispute

that may arise in any bankruptcy case. Although 28 U.S.C. § 157(b)(1) provides that

"[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings

arising under title 11, or arising in a case under title 11 . . ..", section 157(c)(1) authorizes

bankruptcy judges to hear but not to <u>determine</u> "non-core" proceedings:

> A bankruptcy judge may hear a proceeding that is not a core
> proceeding but that is otherwise related to a case under title 11. In
> such a proceeding, the bankruptcy judge shall submit proposed
> findings of fact and conclusions of law to the district court, and any
> final order or judgment shall be entered by the district judge after
> considering the bankruptcy judge's proposed findings and
> conclusions and after reviewing de novo those matters to which any
> party has timely and specifically objected.

28 U.S.C. § 157(c)(1).

The prohibition in section 157(c), which prevents the bankruptcy court from entering

final judgment in non-core matters, is rooted in the Supreme Court's holding in *Northern*

*Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982) *("Marathon").* In the

*Marathon* case, the Supreme Court invalidated powers formerly granted to bankruptcy courts to

issue final orders in matters involving "state-created private rights." *Marathon*, 458 U.S. at 71.

Such matters, the Supreme Court held, require adjudication by Article III judges. *Id*. Because

they are Article I courts, rather than Article III courts, bankruptcy courts may not be granted "the

essential attributes of judicial power" constitutionally belonging only to Article III courts. *Marathon,* 458 U.S. at 87.  Hence, the adjudication of "state-created private rights" can reside only with Article III courts, while matters involving the "restructuring of debtor-creditor relations, which [are] at the core of the federal bankruptcy power" and therefore may be considered a "public right," *Marathon,* 458 U.S. at 71-- may be adjudicated by Article I bankruptcy courts. *Marathon,* 458 U.S. at 87.  *See In re Orion Pictures Corp.,* 4 F.3d 1095, 1100 (2d Cir. 1993) ("*Orion*").

In response to *Marathon,* Congress enacted the Bankruptcy Amendments and Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333. In connection therewith, Rule 7008 of the Federal Rules of Bankruptcy Procedure provides in relevant part as follows:

> In an adversary proceeding before a bankruptcy judge, the complaint, counterclaims, cross-claim, or third-party complaint shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge.

Pursuant to Rule 7008, all proceedings before the bankruptcy courts must be characterized as either "core" - and therefore finally determined by a bankruptcy judge, or "non-core," and therefore requiring final adjudication by an Article III court, in the form of either withdrawal of the reference or de novo review by the District Court.

As set forth in the Lichtenberg Affirmation, the Former Directors have objected to the entry by the Bankruptcy Court of any findings of fact or conclusions of law in connection with the Adversary Proceeding. Since the Adversary Proceeding is a non-core matter (as demonstrated below), the Former Directors are entitled to de novo review by this Court of any findings of fact and/or conclusions of law that the Bankruptcy Court may propose in connection

with the Adversary Proceeding.

**B.    The Adversary Proceeding Is**
      **A Non-Core Proceeding as to the Former Directors**

Neither Count One nor Count Two constitutes a "core" matter.  None of the allegations in

the Complaint -- insofar as the Former Directors are concerned -- have any connection

whatsoever with bankruptcy law.  The sole allegation as to the Former Directors is for breach of

fiduciary duty.  The Bankruptcy Code is invoked only as to the remaining defendants, whom the

Complaint alleges to be former officers of the Debtor (the "Former Officers").  Even the

remaining six counts, which contain causes of action against the Former Officers, are essentially

non-core proceedings.  Three of the remaining counts allege the common law causes of action of

unjust enrichment.  The remaining three are predicated on New York State Debtor and Creditor

Law and invoke only the avoidance provisions of the Bankruptcy Code.

**1.    Count One and Count Two Of The Adversary Proceeding Are Non-Core**
      **Because It Has No Nexus To 1st Rochdale's Bankruptcy Case**

The Bankruptcy Code contains no precise definition of the term "core." Rather, 28 U.S.C.

§ 157(b)(2) contains a non-exclusive list of certain types of proceedings that are designated as

"core." As the term itself clearly implies, however, "core proceeding" encompasses only "those

proceedings which would not exist at law in absence of the Bankruptcy Code." *E.g., In re*

*American Energy Inc.,* 50 B.R. 175, 178 (Bankr. D.N.D. 1985); *In re Murray,* 149 B.R. 383, 386

(E.D. Va. 1993). *See In re 131 Liquidating Corp.,* 222 B.R. 209, 211 (S.D.N.Y. 1998). Thus, the

case law defines a "core proceeding" as one which "invokes a substantive right provided by title

11 or is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In*

*re CIS Corp.,* 172 B.R. 748, 755 (S.D.N.Y. 1994).  *See also In re Landbank Equity Corp.,* 77

B.R. 44, 47 (E.D. Va. 1987) (action for negligence and fraud was non-core because it was based

on pre-petition transactions).

Conversely, a proceeding, such as the Adversary Proceeding, that seeks to assert rights that do not arise under bankruptcy law, have no relation to the Bankruptcy Code and would exist even in the absence of any bankruptcy case, clearly is non-core. *See, e.g., In re Murray,* 149 B.R. at 387 (state law fraud and fraudulent conveyance claims are non-core); *Hatzel & Buehler v. Orange & Rockland Utilities, Inc.,* 107 B.R. 34, 40 (D. Del. 1989) (a proceeding is non-core unless it has "as its foundation the creation, recognition or adjudication of rights which would not exist independent of a bankruptcy environment. . .") (citation omitted); *In re American Energy, Inc.*, 50 B.R. at 179 (action for breach of pre-petition contract is non-core). To compel a party to endure protracted litigation in the bankruptcy court under such circumstances would be utterly inequitable given the generally perceived bias of the bankruptcy court in favor of maximizing creditor recoveries. *See Id.; In re Weinstein*, 237 B.R. 567, 573 (Bankr. E.D.N.Y. 1999).

## 2. Abundant "Cause" Exists For The Court To Withdraw The Reference With Respect To The Adversary Proceeding

Under these cases, it is abundantly clear that, at least insofar as the Former Directors are concerned, the Adversary Proceeding is, in its entirety, non-core and the reference should be withdrawn because there is no post-petition nexus whatsoever between the Former Directors and 1st Rochdale. None of the Former Directors have filed proofs of claim against 1st Rochdale in 1st Rochdale's bankruptcy proceeding.[2] Furthermore, none of the allegations in the Complaint as to the Former Directors arise under the Bankruptcy Code; Count One and Count Two are non-bankruptcy, state law causes of action arising from acts and/or omissions that allegedly occurred well before - and in certain cases many years before - the filing of 1st Rochdale's petition and in

---

[2] The Former Directors do not concede, however, that the filing of any proof of claim in the 1st Rochdale bankruptcy

no way depend upon the Bankruptcy Code or 1st Rochdale's status as a Chapter 7 debtor. *See, e.g.*, Id; *In re J.T. Moran Financial Corp.,* 124 B.R. 931, 937 (S.D.N.Y. 1991) (proceeding was non-core because "there were no post-petition transactions between the parties"); *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.,* 107 B.R. at 38 (action based on state contract and tort claims are clearly non-core). Any sort of connection between the Former Directors and 1st Rochdale's bankruptcy case is so remote that the non-core character of the Adversary Proceeding is evident. Thus, there is simply no basis for this Adversary Proceeding to go forward in the Bankruptcy Court as to the Former Directors. *See, e.g.,* Id; *In re Landbank Equity Corp*., 77 B.R. at 49 (court withdrew reference in non-core adversary proceeding involving allegations of pre-petition negligence and fraud); *In re National Enterprises, Inc.,* 128 B.R. at 961 (court withdrew reference in adversary proceeding involving breach of pre-petition contract).

The non-core character of the Adversary Proceeding also requires withdrawal of the reference because it will spare 1st Rochdale's bankruptcy estate the substantial costs of duplicative judicial review. Given the non-core nature of those proceedings, the Bankruptcy Court has jurisdiction only to propose findings of fact and conclusions of law, and this Court would be compelled to review those findings and conclusions de novo. That inefficiency alone compels withdrawal of the reference. *See Orion,* 4 F.3d at 1101 (fact that bankruptcy court's determination on non-core matters is subject to de novo review requires withdrawal of reference where estate would be spared substantial costs by having only one proceeding).

This principle is especially applicable in light of the dispositive motions that have been filed in the Bankruptcy Court with respect to the Adversary Proceeding. Contemporaneous with the filing of this Motion, the Former Directors filed with the Bankruptcy Court a Motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal

---

case would constitute a waiver of their right to a jury trial in the Adversary Proceeding.

Rules of Bankruptcy Procedure, seeking to dismiss the Complaint with respect to the Former

Directors (the "Motion to Dismiss").  As detailed in the Motion to Dismiss, at least insofar as the

Former Directors are concerned, the Complaint is completely lacking in merit.

Under 28 U.S.C. § 157, the Bankruptcy Court, as an Article I Court, is prohibited from

entering final judgment with respect to the Adversary Proceeding and, therefore, should not

determine the Motion to Dismiss. As this Court has previously recognized, "[t]he reference [to

the Bankruptcy Court] will not extend . . . beyond the point where the matter is ready for trial *or*

*dispositive motions*." *In re Wedtech Corp.,* 94 B.R. 293, 297 (S.D.N.Y. 1988) (emphasis added).

Even if this Court believes that the clear non-core status of the Adversary Proceeding does not

preclude the Bankruptcy Court from deciding the Former Directors' Motion to Dismiss, "cause"

exists for this Court to withdraw the reference and decide the Motion to Dismiss in order to spare

the Former Directors the prejudice they will suffer from having the Bankruptcy Court address the

Motion to Dismiss in the ordinary course. If the Bankruptcy Court is inclined to grant the Former

Directors' Motion to Dismiss, the Trustee, as plaintiff, will have an absolute right to immediately

appeal that decision to the District Court. The Former Directors, on the other hand, would likely

not have a right to appeal as of right a decision by the Bankruptcy Court denying the Motion to

Dismiss. Rather, they will be locked into lengthy and costly litigation with respect to the

Adversary Proceeding no matter how baseless it may be. Since there is no nexus between the

Former Directors and 1st Rochdale's bankruptcy case, however, the Former Directors should at

least have an opportunity to have this Court -- which will conduct the jury trial in this Adversary

Proceeding -- decide the Motion to Dismiss and any other dispositive motions before the Former

Directors are forced to endure protracted litigation. *See Id*. *cf. Orion*, 4 F.3d at 1103 (Second

Circuit remanded motion to withdraw reference to district court and vacated bankruptcy court

order dismissing adversary proceeding).

Likewise, this Court's interest in reducing forum shopping supports immediate withdrawal of the reference because the Former Directors are the only parties that have not engaged in any forum shopping. The Trustee, which could have commenced the Adversary Proceeding in state court, chose instead to do so in the Bankruptcy Court, presumably because it believed the Bankruptcy Court would be the most favorable jurisdiction. The Former Directors, on the other hand, are merely seeking to have the Adversary Proceeding transferred to the Court that has statutory jurisdiction of this proceeding – a proceeding that could have been brought in various jurisdictions whether or not 1st Rochdale filed for bankruptcy. Indeed, there can be no question that, but for 1st Rochdale's bankruptcy proceeding, the Adversary Proceeding could never be heard by the Bankruptcy Court.

This Court's interest in maintaining uniform bankruptcy administration also clearly supports withdrawal of the reference. Withdrawal of the reference will have not any negative effect on uniform bankruptcy administration because the Complaint's allegations against the Former Directors raise only non-bankruptcy issues. Indeed, to the extent that the type of issues raised in the Complaint may have an impact on the Debtor's bankruptcy cases, withdrawal of the reference will enhance the uniformity of bankruptcy administration because this Court has far more experience than the Bankruptcy Court in hearing and determining the types of non-bankruptcy causes of action that are asserted in the Complaint.

In sum, consideration of judicial economy, uniformity of bankruptcy administration, the limited resources of the estate, fairness to the Former Directors and forum shopping all constitute additional "cause" to withdraw the reference with respect to the Adversary Proceeding.

3.    **The Complaint's Allegation That The Adversary Proceeding Is A "Core Proceeding" Is Incorrect**

The Complaint asserts that it "is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (H)." (Complaint, par. 19)  Section 157(b)(2) provides in relevant part:

(2)    Core Proceedings include, but are not limited to –

(A)    matters involving the administration of the estate;….

(H)    Proceedings to determine, avoid, or recover fraudulent conveyance….

Neither section justifies retention of Count One and Count Two in Bankruptcy Court.

The non-core nature of the Complaint is not altered by the possibility that the outcome of the Adversary Proceeding allegedly may have an impact on the administration of the debtors' bankruptcy case. In *Orion,* for example, the Court of Appeals reversed a decision of the District Court that held an adversary proceeding involving a claim for breach of a pre-petition contract was a core proceeding. The District Court based its holding on 28 U.S.C. §157(b)(2)(A), which provides that a proceeding is core if it will have an impact on the "administration of the estate." The Second Circuit disagreed. It explained that virtually every adversary proceeding in any bankruptcy case will somehow affect the "administration of the estate," but construing 28 U.S.C. § 157 so as to render every such proceeding as core "creates an exception to *Marathon* that would swallow the rule." 4 F.3d at 1102. Ultimately, *Orion* held the adversary proceeding at issue in that case was non-core because it involved "a pre-petition contract action that the Supreme Court held in *Marathon* may not be finally adjudicated by a non-Article III judge." *Id*. (citing *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir. 1990)). ("[I]t is clear that to the extent that the claim is for pre-petition contract damages, it is non-core"). *See In re Cinematronics, Inc.,* 916 F.2d 1444, 1450 (9th Cir. 1990) (state law contract claims are non-core unless they fit

squarely within enumerated, statutory core proceedings); *In re Murray*, 149 B.R. at 386 ("[a]

common sense interpretation of the term 'core' . . . include[s] only those proceedings which are

specifically defined in subsection (b)(2)(B) through (N) . . . "); *In re American Energy, Inc.,* 50

B.R. at 178 (28 U.S.C. § 157(b)(2) should not "be interpreted or expanded as to in effect

emasculate the jurisdiction prescriptions of the *Marathon* case").

Likewise, the three fraudulent conveyance causes of actions, which are brought under

New York Debtor and Creditor Law and not under Bankruptcy Code Section 548, which covers

fraudulent transfers and conveyances, allege absolutely no wrongdoing by the Former Directors.

The sole legal allegation against the Former Directors is for breach of fiduciary duty.

In summary, Count One and Count Two of the Adversary Proceeding is clearly a non-

core proceeding. Accordingly, immediate withdrawal of the reference as to the Adversary

Proceeding is warranted to ensure than an Article I bankruptcy court does not impermissibly

exercise Article III judicial powers.

**C.**      **The Reference Must Be Withdrawn Because**
            **The Seventh Amendment Prohibits The Bankruptcy**
            **<u>Court From Holding Jury Trials In Non-Core Matters</u>**

In addition to the fact that the Adversary Proceeding is non-core and that the

Bankruptcy Court may not enter final judgment with respect thereto, the reference to the

Bankruptcy Court must be withdrawn because the Former Directors have made a timely request

for a jury trial in connection with the Adversary Proceeding (see Lichtenberg Aff. ¶ 18).

The law is clear that the Bankruptcy Court is constitutionally prohibited from conducting

a jury trial in a non-core proceeding. The Seventh Amendment to the United States Constitution

provides:

> In suits at common law, where the value in controversy shall exceed

> twenty dollars, the right of trial by jury shall be preserved, and no
> fact tried by a jury shall be otherwise reexamined in any court of the
> United States, than according to the rules of the common law.

Construing the language of the amendment, the Supreme Court has "consistently interpreted the phrase 'suits at common law' to refer to 'suits in which <u>legal</u> rights were to be ascertained and determined, in contra-distinction to those where equitable rights alone were recognized and equitable remedies were administered.'" *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41 (1989) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830) (emphasis in original)).

The Court of Appeals for the Second Circuit has held that "the Constitution prohibits Bankruptcy Courts from holding jury trials in non-core matters." *Orion,* 4 F. 3d at 1101. See *131 Liquidating Corp.,* 222 B.R. at 211 ("since jury trials have been demanded, any non-core matter must be tried in the district court"). For that reason, the Seventh Amendment mandates withdrawal of the reference in cases involving non-core claims that require a jury trial. *Id*; *See, e.g., In re Cinematronics, Inc.,* 916 F.2d at 1451; *In re J.T. Moran Financial Corp.,* 124 B.R. at 941 ("[a] bankruptcy court does not have authority to conduct a jury trial in non-core proceedings especially when all the parties have not consented") (citations omitted); *In re Wedtech Corp.,* 94 B.R. at 296 ("de *novo* review of the jury's findings would violate the essence of trial by jury"); *Pied Piper Casuals, Inc. v. Insurance Co. of the State of Pennsylvania,* 72 B.R. 156, 160 (S.D.N.Y. 1987) (*"Pied Piper"*) ("the provisions for *de novo* review seem incompatible with the concept of a right to a jury trial").  A debtor cannot abrogate a party's Seventh Amendment right to a jury trial simply by bringing suit in the Bankruptcy Court rather than the District Court. *Pied Piper,* 72 B.R. at 159. Accordingly, the reference should immediately be withdrawn with respect to the Adversary Proceeding.

Furthermore, although the Adversary Proceeding has not yet reached the trial stage, the

Former Directors' right to a jury trial constitutes "cause" for immediate withdrawal of the reference. As the bankruptcy court candidly acknowledged in *In re Weinstein,* 237 B.R. 567 (Bankr. E.D.N.Y. 1999), the right of parties in a non-core proceeding to a jury trial is intended to accomplish far more than simply protecting that particular right; it also protects those parties throughout the proceeding from the perceived pro-debtor/creditor bias of the bankruptcy court. As the bankruptcy court said:

> Courts of appeals should also recognize, even if they are reluctant to make the point explicit, that many creditors perceive, rightly or wrongly, that bankruptcy judges tend to be more personally and institutionally sympathetic to debtors or to trustees acting to increase distributions to the bankruptcy estate. In this respect, the demand for a jury trial is intended to protect the creditor against the adverse impact of that perceived bias.

*Id*. at 574.

The Adversary Proceeding is a non-core proceeding, and the Former Directors have timely requested and are entitled to a jury trial. Consequently, "cause" exists for the Court immediately to withdraw the reference to the Bankruptcy Court with respect to the Adversary Proceeding.

## <u>CONCLUSION</u>

For the reasons set forth above, the Former Directors respectfully request that this Court

enter an Order, pursuant to 28 U.S.C. § 157(d) and Rule 5011 of the Federal Rules of

Bankruptcy Procedure, immediately withdrawing the reference from the Bankruptcy Court with

respect to the Adversary Proceeding and granting such other relief as is just and proper.

Dated: New York, New York
      September 5, 2007

SCHWARTZ, LICHTENBERG LLP

By:   /s/Barry E. Lichtenberg
     Barry E. Lichtenberg (BL 9750)

420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 389-7818

Attorneys for Defendants
    Gary Altman
    Rhoda Brown
    The Estate of George Crethan
    Saul Mildworm
    Jack Raskin
    David Smith
    Edward Yaker

**EXHIBIT C**

SCHWARTZ, LICHTENBERG LLP
420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 389-7818
Barry E. Lichtenberg (BL 9750)
Attorneys for Gary Altman, Rhoda Brown,
The Estate of George Crethan, Saul Mildworm,
Jack Raskin, David Smith and Edward Yaker

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
In re:                                                            :       Chapter 7
                                                                  :
1ST ROCHDALE COOPERATIVE GROUP, LTD.                              :       Case No. 05-12086 (PCB)
                                                                  :
                        Debtor.                                   :
---------------------------------------------------------------------x   **NOTICE OF DEMAND**
ROBERT L. GELTZER, as Chapter 7 Trustee for 1ST                   :       **FOR JURY TRIAL**
ROCHDALE COOPERATIVE GROUP, LTD.,                                 :
                                                                  :
                        Plaintiff,                                :
                                                                  :
GARY ALTMAN, RHODA BROWN, "JOHN DOE 1"                            :
AS EXECUTOR OR ADMINISTRATOR OF THE                               :
ESTATE OF GEORGE CRETHAN, SAUL                                    :
MILDWORM, JACK RASKIN, DAVID SMITH, "JOHN                         :       Adv. Pro. No. 07-1652
DOE 2" AS EXECUTOR OR ADMINISTRATOR OF                            :
THE ESTATE OF ALLEN THURGOOD, EDWARD                              :
YAKER, GREGORY WORTHAM and DAVID L.                               :
JOHNSON,                                                          :
                                                                  :
                        Defendants.                               :
---------------------------------------------------------------------x

         Pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure, made applicable

herein by Federal Rules of Bankruptcy 9015(a), defendants Gary Altman, Rhoda Brown, Estate

of George Crethan, Saul Mildworm, Jack Raskin, David Smith and Edward Yaker demand a trial

by jury in the United States District Court for the Southern District of New York in this action of

all issues triable by jury in this matter.

Dated: New York, New York
       September 5, 2007

                              SCHWARTZ, LICHTENBERG LLP


                              By:  /s/Barry E. Lichtenberg
                                  Barry E. Lichtenberg (BL 9750)

                              420 Lexington Avenue, Suite 2400
                              New York, New York 10170
                              (212) 389-7818

                              Attorneys for Defendants
                                Gary Altman
                                Rhoda Brown
                                The Estate of George Crethan
                                Saul Mildworm
                                Jack Raskin
                                David Smith
                                Edward Yaker


TO:

Bryan Cave LLP
Attorneys for Chapter 7 Trustee
1290 Avenue of the Americas
New York, New York 10104
Attn:  Robert A. Wolf, Esq.

Wander & Associates, P.C.
641 Lexington Avenue, 21st Floor
New York, New York 10022
Attn:  David Wander, Esq.

Loeffler Tuggey Pauerstein Rosenthal LLP
755 E. Mulberry, Suite 200
San Antonio, Texas 78212
Attn:  Jonathan D. Pauerstein, Esq.

United States Trustee
33 Whitehall Street
21st Floor
New York, New York 10007

**EXHIBIT D**

# MEMO ENDORSED

$\cap HIN \, \, 151$

**SCHWARTZ, LICHTENBERG LLP**
420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 389-7818
Barry E. Lichtenberg (BL 9750)
Attorneys for Gary Altman, Rhoda Brown,
the Estate of George Crethan, Saul Mildworm,
Jack Raskin, David Smith and Edward Yaker

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/10/07

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                     :

1ST ROCHDALE COOPERATIVE GROUP, LTD.   :

         Debtor.          :
-----------------------------------------------------------x

ROBERT L. GELTZER, as Chapter 7 Trustee for 1ST  :
ROCHDALE COOPERATIVE GROUP, LTD.,   :

        Plaintiff,      :

GARY ALTMAN, RHODA BROWN, "JOHN DOE 1"  :
AS EXECUTOR OR ADMINISTRATOR OF THE  :
ESTATE OF GEORGE CRETHAN, SAUL    :
MILDWORM, JACK RASKIN, DAVID SMITH, "JOHN :
DOE 2" AS EXECUTOR OR ADMINISTRATOR OF  :
THE ESTATE OF ALLEN THURGOOD, EDWARD  :
YAKER, GREGORY WORTHAM and DAVID L.  :
JOHNSON,                :

        Defendants.   :
-----------------------------------------------------------x

Chapter 7
Case No. 05-12086 (PCB)

**Case No. 07-cv-7852(DC)**

## STIPULATION AND ORDER PURSUANT TO 28 U.S.C. § 157(d)
## GRANTING MOTION OF THE FORMER DIRECTORS AND WITHDRAWING
## THE REFERENCE OF THIS ADVERSARY PROCEEDING FROM THE
## UNITED STATES BANKRUPTCY COURT

### BACKGROUND

    1.     Robert L. Geltzer is the Chapter 7 Trustee (the "Trustee") of the estate of 1st

Rochdale Cooperative Group, Ltd. ("1st Rochdale").

0114201-032

2. On or about March 28, 2007, the Trustee commenced an adversary proceeding by filing a complaint against former directors and officers of the Debtor (the "Complaint").

3. On or about September 5, 2007, Schwartz, Lichtenberg LLP, attorneys for defendants Gary Altman, Rhoda Brown, The Estate of George Crethan, Saul Mildworm, Jack Raskin, David Smith and Edward Yaker (collectively, the "Former Directors") filed a motion for an order dismissing the complaint (the "Dismissal Motion") and a motion for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference of this Adversary Proceeding from the United States Bankruptcy Court (the "Withdrawal of Reference Motion").

4. The Trustee's counsel has advised the Former Directors' counsel that the Trustee will consent to an order withdrawing the reference pursuant to the Withdrawal of the Reference Motion, upon the consent of such order by any other counsel who have appeared or filed an answer on behalf any other defendant in the Complaint (the "Remaining Counsel").

5. Counsel to the Former Directors has contacted Remaining Counsel and obtained their consent. As a result, the respective parties, as set forth below by their respective counsel, agree that the reference shall be withdrawn from the United States Bankruptcy Court.

**NOW, THEREFORE, IT IS HEREBY AGREED** by and between the parties as follows:

1. The reference of the above-captioned adversary proceeding shall be withdrawn forthwith from the United States Bankruptcy Court for the Southern District of New York to the United States District Court for the Southern District of New York (the "District Court"), Case no. 07-cv-7852(DC).

2. This Stipulation is subject to District Court order approving this Stipulation by having this Stipulation "so ordered."

2

3.      This Stipulation may be signed in multiple counterparts, and by facsimile, each of which when so executed and delivered shall be deemed an original, but all of which when taken together shall constitute but one and the same instrument.

4.      This Stipulation may not be altered, modified, or changed unless in writing, and subject to appropriate order of the District Court.

[two signature pages to follow]

Dated:  New York, New York           SCHWARTZ, LICHTENBERG LLP
        September  1  , 2007          Attorneys for Defendants Gary Altman, Rhoda Brown,
                                        The Estate of George Crethan, Saul Mildsworm,
                                        Jack Raskin, David Smith and Edward Yaker


                                     By: _____
                                         Barry E. Lichtenberg (BL 9750)
                                     420 Lexington Avenue, Suite 2400
                                     New York, New York  10170
                                     Telephone: (212) 309-7818


Dated:  New York, New York           BRYAN CAVE LLP
        October  1  , 2007           Counsel for Chapter 7 Trustee


                                     By: _____
                                         Robert A. Wolf, Esq. (RW 3419)
                                     1290 Avenue of the Americas
                                     New York, New York 10104
                                     Telephone: (212) 541-2240


Dated:  San Antonio, Texas           LOEFFLER TUGGEY FAUERSTEIN ROSENTHAL LLP
        September _____, 2007        Attorneys for Defendant Gregory Wootham


                                     By: _____
                                         Jonathan D. Fauerstein (JF 9559)
                                     755 E. Mulberry, Suite 200
                                     San Antonio, Texas 78212
                                     Telephone: (210) 354-4300


Dated:  New York, New York           WANDER & ASSOCIATES, P.C.
        September ___, 2007           Attorneys for Defendant David L. Johnson


                                     By: _____
                                         David Wander, Esq. (DW 6145)
                                     641 Lexington Avenue, 21st Floor
                                     New York, New York 10022
                                     Telephone: (212) 751-9700


0114201-032                              4

08/24/2007 15:57 FAX 210 354 4034 LOEFFLER TUGGEY ATTY ☑002/002

Dated: New York, New York          SCHWARTZ, LICHTENBERG LLP
September _____, 2007               Attorneys for Defendants Gary Altman, Rhoda Brown,
                                       The Estate of George Crothum, Saul Mildworm,
                                       Jack Raskin, David Smith and Edward Yekar


                                   By: _____
                                         Barry E. Lichtenberg (BL 9750)
                                   420 Lexington Avenue, Suite 2400
                                   New York, New York 10170
                                   Telephone: (212) 389-7818


Dated: New York, New York          BRYAN CAVE LLP
      September _____, 2007         Counsel for Chapter 7 Trustee


                                   By: _____
                                         Robert A. Wolf, Esq. (RW 5418)
                                   1290 Avenue of the Americas
                                   New York, New York 10104
                                   Telephone: (212) 541-2240


Dated: San Antonio, Texas          LOEFFLER TUGGEY PAULERSTEIN ROSENTHAL LLP
      September 24, 2007            Attorneys for Defendant Gregory Wortham


                                   By: _____
                                         _____ (# 9750)
                                   755 E. Mulberry, Suite 200
                                   San Antonio, Texas 78212
                                   Telephone: (210) 354-4060


Dated: New York, New York          WANDER & ASSOCIATES, P.C.
      September ___, 2007           Attorneys for Defendant David L. Johnson


                                   By: _____
                                         David Wander, Esq. (DW 0145)
                                   641 Lexington Avenue, 21st Floor
                                   New York, New York 10022
                                   Telephone: (212) 751-9700


0114391-032                                    4

Dated: New York, New York
September ____, 2007

SCHWARTZ, LICHTENBERG LLP
Attorneys for Defendants Gary Altman, Rhoda Brown,
   The Estate of George Crethan, Saul Mildworm,
   Jack Raskin, David Smith and Edward Yaker

By: _____
       Barry R. Lichtenberg (BL 9750)
420 Lexington Avenue, Suite 2400
New York, New York  10170
Telephone: (212) 389-7818

Dated: New York, New York
   September ____, 2007

BRYAN CAVE LLP
Counsel for Chapter 7 Trustee

By: _____
       Robert A. Wolf, Esq. (RW 3419)
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 541-2340

Dated: San Antonio, Texas
   September ____, 2007

LOEFFLER TUGGEY PAUERSTEIN ROSENTHAL LLP
Attorneys for Defendant Gregory Wortham

By: _____
       Jonathan D. Pauerstein (JP 8959)
755 E. Mulberry, Suite 200
San Antonio, Texas 78212
Telephone: (210) 354-4300

Dated: New York, New York
   September 24, 2007

WANDER & ASSOCIATES, P.C.
   Attorneys for Defendant David L. Johnson

By: _____
       David Wander, Esq. (DW 0145)
641 Lexington Avenue, 21st Floor
New York, New York 10022
Telephone: (212) 751-9700

0114301-022

4

SO ORDERED:

Dated:  New York, New York
        October _10_, 2007

_____
HONORABLE DENNY CHIN
UNITED STATES DISTRICT COURT JUDGE