BRYAN CAVE LLP
1290 Avenue of the Americas
New York, New York  10104
(212) 541-2000
Robert A. Wolf (RW 3419)
Andrea K. Fisher (AF 0150)
*Counsel to Robert L. Geltzer, the Chapter 7 Trustee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --  x

| | | |
|---|---|---|
| In re: | : | |
| | : | **Bankruptcy Proceeding Chapter 7** |
| 1ST ROCHDALE COOPERATIVE GROUP,   LTD. | : | **Case No. 05-12086 (PCB)** |
| | : | |
| Debtor | : | |

-- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --  x

ROBERT L. GELTZER, as Chapter 7 Trustee for
1ST ROCHDALE COOPERATIVE GROUP, LTD.,    :

  Plaintiff,    :

  v.    :

GARY ALTMAN, RHODA BROWN, "JOHN DOE
1" AS EXECUTOR OR ADMINISTRATOR OF
THE ESTATE OF GEORGE CRETHAN, SAUL
MILDWORM, JACK RASKIN, DAVID SMITH,    :    **O7 CV 7852 (DC)**
"JOHN DOE 2" AS EXECUTOR OR
ADMINISTRATOR OF THE ESTATE OF ALLEN
THURGOOD, EDWARD YAKER, GREGORY
WORTHAM and DAVID L. JOHNSON,    :

  Defendants.    :

-- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --  X

**PLAINTIFF-TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION
TO DISMISS THE COMPLAINT OF DEFENDANTS GARY ALTMAN, RHODA
BROWN, THE ESTATE OF GEORGE CRETHAN, SAUL MILDWORM,
JACK RASKIN, DAVID SMITH AND EDWARD YAKER**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT .....................................................................................1

INTRODUCTION ...........................................................................................................1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ...............................2

    A.    The Background of the Debtor ...............................................................2

    B.    Financing from National Cooperative Service Corporation ...................................4

    C.    1st Rochdale's  Business Development ....................................5

    D.    Breaches of Fiduciary Duty Led to 1st Rochdale's Substantial Losses and Bankruptcy ...........................................................................................................10

    E.    Bonus Payments Authorized by the Movant Directors to Thurgood, Wortham and Johnson...........................................................................................11

ARGUMENT ................................................................................................................13

    POINT I    THE TRUSTEE'S COMPLAINT STATES VALID CLAIMS FOR RELIEF AND THEREFORE THE MOVANT DIRECTORS HAVE FAILED TO MEET THE STRICT CRITERIA NECESSARY TO WARRANT A DISMISSAL OF THE TRUSTEE'S COMPLAINT UNDER RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE .........................................................................13

    POINT II    THE MOVANT DIRECTORS BREACHED THEIR DUTY OF CARE AND THE BUSINESS JUDGMENT RULE DOES NOT BAR THE TRUSTEE'S  CLAIMS AGAINST THEM..............................15

        A.    Counts One and Two Adequately Plead Breach of Fiduciary Duty Claims against the Movant Directors ......................................15

        B.    The Trustee Has Properly Alleged that the Movant Directors Have Breached Their  Fiduciary Duty by Authorizing Bonus Payments to Thurgood, Wortham and  Johnson ..............................20

        C.    The Business Judgment Rule Does Not Bar the Claims of the Trustee ........................................................................................21

    POINT III    A SIX-YEAR STATUTE OF LIMITATIONS PERIOD APPLIES TO THE BREACH OF FIDUCIARY DUTY CLAIMS .............................26

    POINT IV    THE TRUSTEE IS NOT REQUIRED TO PROVIDE NOTICE AND A HEARING REGARDING THE ADVERSARY AS 11

U.S.C § 363 AND RULE 6004 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE ARE NOT APPLICABLE  TO A
TRUSTEE'S COMMENCEMENT OF AN ADVERSARY
PROCEEDING..........................................................................................28

POINT V     THE TRUSTEE HAS PROPERLY ALLEGED THAT THE
DEBTOR WAS INSOLVENT....................................................................33

CONCLUSION...................................................................................................................35

C046038/0189460/1448642.10

# TABLE OF AUTHORITIES

## FEDERAL CASES

PAGE(S)

Adelphia Commc'ns. Corp. v. Rigas (In re Adelphia Commc'ns. Corp.),
    323 B.R. 345 (Bankr. S.D.N.Y. 2005)........................................................................17

Aronson v. Lewis, 473 A.2d 805 (Del. 1984) ...........................................................15

Carnivale Bag Co. v. Slide-Rite Mfg. Corp.,
    395 F. Supp. 287 (S.D.N.Y. 1975)........................................................................14

Cede & Co. v. Technicolor, Inc., 634 A.2d 345 (Del. 1993);
    judgment rev'd on other grounds, 758 A.2d 485 (Del. Supr. 2000)....................................21

Clarkson Co. v. Shaheen,
    660 F.2d 506 (2d Cir. 1981)..................................................................................24

Conley v. Gibson, 355 U.S. 41 (1957) .................................................................13, 34

Contempri Homes, Inc. v. Ameritik Real Estate & Dev. Corp.,
    No. 88 Civ. 8408 (KMW), 1989 WL. 153030 (S.D.N.Y. Dec. 11, 1989)..........................34

Crazy Eddie, Inc. v. Antar, (In re Crazy Eddie, Inc.),
    No. 89B11313-11457 (TLB), 1992 Bankr. LEXIS 2018
    (Bankr. S.D.N.Y. Dec. 17, 1992)..........................................................................13

Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns. Corp.,
    No. Civ. A. 12150, 1991 WL. 277613 (Del. Ch. Dec. 30, 1991) .......................................17

Dunbar v. Commissioner of Internal Revenue,
    119 F.2d 367 (7th Cir. 1941) ................................................................................34

F.D.I.C. v. Abel,
    No. 92 Civ. 9175, 1995 WL. 716729 (S.D.N.Y. Dec. 6, 1995)..........................................26

F.D.I.C. v. Bober,
    No. 95 Civ. 9529 (JSM), 2002 WL. 1929486 (S.D.N.Y. Aug. 22, 2002) ..............................16

F.D.I.C. ex rel., First N.Y. Bank for Bus. v. Bober,
    No. 95 Civ. 9529 (JSM), 2003 WL. 21976410 (S.D.N.Y. Aug. 19, 2003) ....................16, 20

Gully v. National Credit Union Admin. Board,
    341 F.3d 155 (2d Cir. 2003)..................................................................................17

Hanson Trust, PLC. v. ML SCM Acquis'n, Inc.,
    781 F.2d 264 (2d Cir. 1986)....................................................... 15, 16, 20-22, 24

C046038/0189460/1448642.10

In re Argo Commc'ns Corp., 134 B.R. 776 (Bankr. S.D.N.Y. 1991)............................................26

In re Betty Owens Schs., Inc.,
    No. 96 Civ. 3576 (PKL), 1997 WL. 188127 (S.D.N.Y. Apr. 17, 1997).........................30, 31

In re Capgro Leasing Assocs., 169 B.R. 305 (Bankr. E.D.N.Y. 1994)..................................29, 30

In re Center Wholesale Inc.,
    759 F.2d 1440 (9th Cir. 1985) ........................................................................................31

In re El San Juan Hotel Corp., 841 F.2d 6 (1st Cir. 1988) ....................................................29

In re Everfresh Beverages, Inc., 238 B.R. 558 (Bankr. S.D.N.Y. 1999)......................................14

In re Keene Corp., 164 B.R. 844 (Bankr. S.D.N.Y. 1994)........................................................27

In re Lavigne, 114 F.3d 379 (2d Cir. 1997) .........................................................................31

In re Mediators, Inc., 105 F.3d 822 (2d Cir. 1997) ..............................................................27

In re Moberg Trucking, Inc., 112 B.R. 362 (Bankr. 9th Cir. 1990) ..........................................31

In re Olympia Holding Corp., 188 B.R. 287 (M.D. Fl. 1994),
    aff'd on other grounds, 68 F.3d 1304 (11th Cir. 1995) ...................................................30, 31

In re RSL.COM PrimeCall, Inc.,
    No. 01-11457 (ALG), 2003 WL. 22989669 (Bankr. S.D.N.Y. Dec. 11 2003) ...................17

In re Savage Indus., Inc., 43 F.3d 714 (1st Cir. 1994) .........................................................31

In re Twin Pines Fuel, Corp., Case No. 05-12088 (PCB) ........................................................3

In re Weisser Eyecare, Inc., 245 B.R. 844 (Bankr. N.D. Ill. 2000)............................................31

Lippe v. Bairnco Corp., 230 B.R. 906 (S.D.N.Y. 1999) .........................................................26

Malin v. XL Capital Ltd.,
    No. 3:03 Civ. 2001 (PCD), 2005 WL. 2146089 (D. Conn. Sept. 1, 2005)..........................16

Milbank, Tweed, Hadley & McCloy v. Boon, 13 F.3d 537 (2d Cir. 1994) .................................16

Myers v. United States, 162 F. Supp. 913 (N.D.N.Y. 1958)........................................................14

Norlin Corp. v. Rooney, Pace, Inc., 744 F.2d 255 (2d Cir. 1984) ..................................15, 20, 22

Northwestern. Nat'l Ins. Co. v. Alberts, 769 F. Supp. 498 (S.D.N.Y. 1991)................................16

C046038/0189460/1448642.10

O'Connor & Assocs. v. Dean Witter Reynolds, Inc.,
    529 F. Supp. 1179 (S.D.N.Y. 1981)..................................................................17

Parker v. Bain, 68 F.3d 1131 (9th Cir. 1995)..........................................................29

Pereria v. Cogan (In re Trace Int'l Holding, Inc.),
    No. 00 Civ. 619 (RWS), 2001 U.S. Dist. LEXIS 2461
    (S.D.N.Y. Mar. 8, 2001), rev'd on other grounds, 413 F.3d 330 (2d Cir. 2005) ............ 28-32

Raine v. Lorimar Prods., Inc., et al., 71 B.R. 450 (Bankr. S.D.N.Y. 1987).........................14, 23

Robert L. Geltzer v. Crossroads Tabernacle (In re Rivera),
    214 B.R. 101 (Bankr. S.D.N.Y. 1997)..................................................................13

Roselink Investors, L.L.C., v. Shenkman, 386 F. Supp. 2d 209 (S.D.N.Y. 2004)..................15, 17

RSL Commc'n PLC v. Bildirici,
    No. 04-cv-5217 (KMK), 2006 U.S. Dist. LEXIS 67548
    (Bankr. S.D.N.Y. Sept. 14, 2006) ......................................................................16, 22

Stephens v. National Distillers & Chems., Corp.,
    No. 91 Civ. 2901 (JSM), 91 Civ. 2902,
    1996 U.S. Dist. LEXIS 6915 (S.D.N.Y. May 20, 1996) ...............................................22

Thomson Kernaghan & Co. v. Global Intellicom, Inc.,
    No. 99 Civ. 3005 (DLC), 99 Civ. 3015,
    2000 WL. 640653 (S.D.N.Y. May 17, 2000) ...........................................................34

United States v. Whiting Pools, Inc., 462 U.S. 198 (1983)...........................................30

Walker Distrib. Co. v. Lucky Lager Brewing Co.,
    323 F.2d 1 (9th Cir. 1963) .............................................................................14, 23

Whitney Holdings, Ltd. v. Givotovsky, 988 F. Supp. 732 (S.D.N.Y. 1997) ...........................26

## NEW YORK STATE CASES

AG Capital Funding Partners, L.P. v. State St., 5 N.Y.3d 582 (2005)................................14

Auerbach v. Bennett, 47 N.Y.2d 619, 419 N.Y.S.2d 920 (1979).....................................16, 20, 21

Barr v. Wackman, 36 N.Y.2d 371, 368 N.Y.S.2d 497 (1975) .........................................22, 25

Davidowitz v. Edelman,
    153 Misc. 2d 853, 583 N.Y.S.2d 340 (N.Y. Sup. Ct. Kings Cty. 1992),
    aff'd by, 203 A.D.2d 234, 612 N.Y.S.2d 882 (2d Dep't 1994) .....................................22

C046038/0189460/1448642.10

De Castro v. Bhokari,
   201 A.D.2d 382, 607 N.Y.S.2d 348 (1st Dep't. 1994)........................................................23

Gibbs v. Breed, Abbott & Morgan,
   271 A.D.2d 180, 710 N.Y.S.2d 578 (1st. Dep't 2000)........................................................16

Heimbinder v. Berkovitz,
   175 Misc. 2d 808, 670 N.Y.S.2d 301
   (N.Y. Sup. Ct. Kings Cty. 1998), judgment modified on
   other grounds, 263 A.D. 466, 693 N.Y.S.2d 200 (2d Dep't 1999)......................................17

Levandusky v. One Fifth Avenue, Apt. Corp.,
   75 N.Y.2d 530, 554 N.Y.S.2d 807 (1990).....................................................................23, 24

Messner v.112 East 83rd St. Tenants Corp.,
   42 A.D.3d 356, 840 N.Y.S.2d 45 (1st Dep't. 2007)..........................................................24

New York Credit Men's Adjustment Bureau v. Weiss, 305 N.Y. 1 (1953) .................................17

## FEDERAL STATUTES

11 U.S.C.A. §§ 101 et seq (2004 & Supp. 2007) ..........................................................4

11 U.S.C.A § 101(32) (2004 & Supp. 2007)...............................................................33

11 U.S.C.A § 323 (2004)...........................................................................................32

11 U.S.C.A § 323(b) (2004) ..................................................................................28, 29

11 U.S.C.A § 362 (2004)...........................................................................................30

11 U.S.C.A § 363 (2004)...........................................................................................30

11 U.S.C.A. § 363(b) (2004) .....................................................................................32

11 U.S.C.A § 363(b)(1) (2004) .............................................................................28, 30

28 U.S.C.A. § 157(b)(2)(H) (2006)...........................................................................28

28 U.S.C.A. § 157(b)(2) (2006) ................................................................................28

Fed. R. Bankr. P. 6009 ....................................................................................28, 29, 32

Fed. R. Civ. P. 8(a) ..................................................................................................13

Fed. R. Civ. P. 12 ....................................................................................................13

C046038/0189460/1448642.10

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 13

Fed. R. Civ. P. 7012(b) .................................................................................................1

## NEW YORK STATE STATUTES

N.Y. C.P.L.R. § 213 (7) (McKinney 2003) ..........................................................26, 27

N.Y. Bus. Corp. Law § 701 (McKinney 2003) .........................................................15

N.Y. Bus. Corp. Law § 715(h) (McKinney 2003) .....................................................15

N.Y. Bus. Corp. Law § 717(a) (McKinney 2003).............................................15, 20, 22

N.Y. Bus. Corp. Law § 720 (McKinney 2003) .........................................................27

## MISCELLANEOUS

3 Collier on Bankruptcy ¶ 323.LH[2][a] (Lawrence P. King ed., 15th ed. 2007).......................30

3 Collier on Bankruptcy ¶ 323.03 (Lawrence P. King ed., 15th ed. 2007) .................................29

10 Collier on Bankruptcy ¶ 6009.RH (Lawrence P. King ed., 15th ed. 1998)............................30

10 Collier on Bankruptcy ¶ 6009.01 (Lawrence P. King ed., 15th ed. 2005) .............................29

C046038/0189460/1448642.10

## PRELIMINARY STATEMENT

Plaintiff Robert L. Geltzer, the Chapter 7 Trustee (the "Trustee" or "Plaintiff") for the above-captioned debtor, 1st Rochdale Cooperative Group, Ltd. ("1st Rochdale" or the "Debtor"), by his Special Litigation Counsel, Bryan Cave LLP, hereby submits this Memorandum of Law in opposition to the motion (the "Dismissal Motion") of Defendants Gary Altman ("Altman"), Rhoda Brown ("Brown"), The Estate of George Crethan ("Crethan"), Saul Mildworm ("Mildworm"), Jack Raskin ("Raskin"), David Smith ("Smith") and Edward Yaker ("Yaker") (collectively, the "Movant Directors") seeking an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), dismissing Counts One and Two of the Trustee's complaint (the "Complaint") in this adversary proceeding (the "Adversary"), which asserts breaches of fiduciary duty on the part of the Movant Directors.

## INTRODUCTION

The Trustee's claims for breaches of fiduciary duty by the Movant Directors are supported by extensive factual detail, set forth in the Complaint, that has been obtained from books and records of the Debtor which the Trustee has been able to procure thus far without the benefit of any discovery in this Adversary yet being taken of any of the Movant Directors, of any other defendants in this Adversary, or of any third parties.

As set forth in the Complaint, the alleged breaches of fiduciary duty fall into two categories: (i) those relating to the grossly negligent manner in which the Movant Directors wasted the financial resources of 1st Rochdale, by, among other things, approving, at a time when the company was already undercapitalized and insolvent, the diverting of millions of dollars from its more viable line of business to an ill-conceived, ill-fated, speculative plan to build a new

1

power plant facility in the Bronx (the "Power Plant Project"), as a result of which 1st Rochdale was sent into deeper insolvency (Count One of the Complaint); and (ii) those relating to the Movant Directors' awarding, while 1st Rochdale was insolvent, to one of their fellow directors, who also served as Chief Executive Officer of the company, and to the company's Chief Operating Officer, of bonuses aggregating in excess of $200,000 to each of them, as well as awarding bonuses to the company's Chief Financial Officer (Count Two of the Complaint). Moreover, as alleged in the Complaint, and as documentary evidence will show, each of the Movant Directors sat on the 1st Rochdale Board of Directors (the "Board") during the entirety of the period within which the acts comprising the Movant Directors' breaches of fiduciary duty occurred.

The key allegations in the Complaint that serve as the factual predicates for the Trustee's claims against the Movant Directors, among others, set forth in Counts One and Two – which allegations, pursuant to the case law cited in Point I, _infra_, must be accepted as true in the context of the subject Motion – are set forth below.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.    The Background of the Debtor

The Debtor, 1st Rochdale Cooperative Group, Ltd., was a New York corporation with a principal place of business located at 465 Grand Street, New York, New York 10002. (Complaint ¶ 3.)  It was formed as a general cooperative corporation on or about August 27, 1997, under the laws of the State of New York.  (Complaint ¶ 29.)  At the time of its incorporation, the Movant Directors Mildworm, Raskin, Smith and Yaker, as well as Allen

C046038/0189460/1448642.10

Thurgood ("Thurgood")[1], who served as Chairman, Vice President and Chief Executive Officer of the Debtor, were elected to 1st Rochdale's Board.  (Complaint ¶ 30.)  Movant Directors, Altman, Brown and Crethan[2] were elected to 1st Rochdale's Board on or about June 6, 1998 (Complaint ¶ 31.)  Gregory L. Wortham ("Wortham") joined 1st Rochdale in 1998 and was an officer of 1st Rochdale and served as Vice President and Chief Operating Officer/Assistant Secretary.  (Complaint ¶ 15.)  David L. Johnson ("Johnson") was an officer of 1st Rochdale and served as Chief Financial Officer/Assistant Secretary of 1st Rochdale.  (Complaint ¶ 16.)

1st Rochdale was essentially set up to purchase sources of energy and sell that energy to its members, which were for the most part cooperative housing companies and condominiums.  In addition, 1st Rochdale would purchase and resell phone, cable, satellite broadcast, internet, home security and/or medical alert services and/or any and all other similar communications services.  (Complaint ¶ 32.)

After its formation, 1st Rochdale formed seven (7) wholly-owned subsidiaries, namely Twin Pines Fuels, LLC ("TPF LLC"), Twin Pines Fuels Corp. ("Twin Pines")[3], Gotham Power Development, LLC ("GPD"), Gotham Power Corporation, Gotham Power Company LLC, Gotham Power Zerega, LLC and Apple Juice Power, LLC.[4] (Complaint ¶ 33.)  TPF LLC was formed primarily to engage in the fuel oil distribution business.  (Complaint ¶ 35.)  Twin

---

[1] Allen Thurgood died in or about April 2007.  The executors of his estate denoted in the caption, as "John Doe 2," are named as a defendant in the Adversary but are not among the Movant Directors.

[2] George Crethan died in or about March 2006 and his estate is one of the Movant Director parties.

[3] Twin Pines has itself been a debtor in bankruptcy since March 31, 2005, in a Chapter 7 case pending in the Bankruptcy Court of this District under the case caption, In re Twin Pines Fuel, Corp., Case No. 05-12088(PCB).  The Trustee is also the Chapter 7 Trustee of Twin Pines.

[4] Upon information and belief, other than Twin Pines, none of the other subsidiaries of 1st Rochdale have filed for bankruptcy.

3

Pines was formed primarily to own real property located at 1066 Zerega Avenue, Bronx, New York (the "Zerega Avenue Property").  (Complaint ¶ 36.)  GPD, Gotham Power Corporation, Gotham Power Company LLC, Gotham Power Zerega, LLC and Apple Juice Power, LLC were formed primarily for the aforementioned Power Plant Project.  (Complaint ¶ 37.)

On March 31, 2005 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 petition (the "Petition") under Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.  (Complaint ¶27.)  On March 31, 2005, the Trustee was appointed Interim Trustee of the Debtor.  He subsequently became permanent Trustee by operation of law, and now is qualified and acting as Trustee.  (Complaint ¶ 28.).

**B**.    **Financing from National Cooperative Service Corporation**

From the beginning of 1999, 1st Rochdale obtained multimillion dollars in loans and credit support from National Cooperative Service Corporation ("NCSC").  NCSC was a privately funded, member-owned cooperative that provided electrical cooperatives with specialized financing services.  (Complaint ¶ 41.)  NCSC provided credit support to 1st Rochdale in several ways, such as by direct loan or letters of credit to the New York Independent System Operator ("NYISO") for the benefit of 1st Rochdale.  (Complaint ¶ 42.)  In 1999, NCSC provided financing to TPF LLC in the total amount of approximately $9,000,000.  In 2000, NCSC provided TPF LLC with an additional $4,000,000 in financing.  (the "TPF LLC Loans") (Complaint ¶ 43.)  NCSC and 1st Rochdale entered into a Revolving Line of Credit Agreement, dated as of April 14, 1999, in an amount not to exceed $5,000,000 (the 1st Rochdale Loan").  (Complaint ¶ 44.)  NCSC and 1st Rochdale entered into a certain Letter of Credit Application and Agreement, dated as of April 27, 2000, in a total amount not to exceed $9,000,000 (the "1st

C046038/0189460/1448642.10

Rochdale Letter of Credit") (the 1st Rochdale Loan and the 1st Rochdale Letter of Credit will collectively be referred to as the "1st Rochdale Indebtedness").  (Complaint ¶ 45.)  The TPF LLC Loans and the 1st Rochdale Indebtedness were both cross-guaranteed and cross-collateralized in favor of NCSC by 1st Rochdale, TPF LLC and Twin Pines.  (Complaint ¶ 46.)

At some point in 2000, NCSC stopped extending new credit to 1st Rochdale and its wholly-owned subsidiaries.  (Complaint ¶ 47.)  During the period following the time that NCSC stopped extending credit, 1st Rochdale requested new lines of credit from NCSC on several occasions, under different formats and plans, but it appears that every request was denied.  (Complaint ¶ 48.)  On or about October 1, 2001, NCSC withdrew its credit support to NYISO and on October 10, 2001, NYISO issued a notice of termination of service agreement to 1st Rochdale.  (Complaint ¶ 49.)  1st Rochdale attempted to get its credit support renewed with NCSC, but NCSC declined to renew its credit support to 1st Rochdale.  1st Rochdale was therefore no longer allowed to purchase energy directly from NYISO.  (Complaint ¶ 50.)

**C.    $\underline{1^{st}\text{ Rochdale's  Business Development}}$**

In early 1998, 1st Rochdale obtained a certificate to operate as an Energy Service Company ("ESCO") and started the retail sale of power.  (Complaint ¶ 51.)  1st Rochdale's initial customers were the cooperative societies that formed 1st Rochdale; however over the period of time 1st Rochdale managed to attract other individual and corporate customers including American Express.  (Complaint ¶ 52.)  Along with its wholly-owned subsidiaries, 1st Rochdale developed the following broad categories of business.  (Complaint ¶ 53.)

C046038/0189460/1448642.10

i.    **Fuel Oil Distribution Business**

On or about November 10, 1999, Twin Pines, with financing provided by NCSC to TPF LLC, purchased property at Zerega Avenue in Bronx, New York for $2.6 million, which property would be utilized for TPF LLC's fuel purchase, sale and storage operation.  (Complaint ¶ 54.)  Although NCSC loaned in total approximately $14 million to TPF LLC, of which $5 million was to be utilized for the purchase and upgrade of the Zerega Avenue Property, very little money was actually spent on its upgrade.  (Complaint ¶ 55.)  Approximately $9 million of the $14 million loaned to TPF LLC was to be utilized for the operation of the fuel oil business.  (Complaint ¶ 56.)  TPF LLC started purchasing and selling fuel oil in early 2000.  (Complaint ¶ 57.)  TPF LLC continued this operation through the end of 2002, when, it was forced to close its fuel business by NCSC.  (Complaint ¶ 58.)  During the period TPF LLC was in operation, its major clients included large cooperatives and government contracts where the margins were low.  (Complaint ¶ 59.)  During the period of three years that TPF LLC was in operation, its aggregated losses amounted to over $7.7 million.  (Complaint ¶ 60.)  One of the reasons that contributed to TPF LLC's low margin was a lack of sufficient funds to buy oil at a cheaper price.  (Complaint ¶ 61.)  Approximately $11.4 million of the original $14 million loaned to TPF LLC was available for the operation of the TPF LLC fuel oil distribution business.  (Complaint ¶ 62.)

However, an additional $3 million was diverted from 1st Rochdale's wholly-owned subsidiary TPF LLC to 1st Rochdale itself for the proposed Power Plant Project as more fully set forth below.  (Complaint ¶ 63.)  This diversion of approximately $6 million in funds from TPF LLC severely hurt the fuel oil business and left TPF LLC short of cash and unable to buy fuel oil at the cheapest price available.  (Complaint ¶ 64.)  Moreover, notwithstanding the aforementioned diversion of funds from TPF LLC to 1st Rochdale, TPF LLC still had to pay

6

interest on the full amount of the TPF LLC Loans to NCSC, further causing damage to the company. (Complaint ¶ 65.) After NCSC allegedly forced TPF LLC to close down its business, NCSC apparently wanted Twin Pines and TPF LLC to sell the Zerega Avenue Property and repay the proceeds to NCSC. (Complaint ¶ 66.) However, the Movant Directors chose not to comply with NCSC's request to sell the Zerega Avenue Property, as they intended on utilizing the property for the Power Plant Project (Complaint ¶ 67.) During the two-year period following the shut down of the fuel oil business, TPF LLC incurred additional losses of over $2 million including: interest of $1.27 million, depreciation of $250,000, salaries, insurance, legal expenses, taxes and other expenses to maintain the Zerega Avenue property. (Complaint ¶ 68.) These loss figures do not include the related management expenses incurred and paid through 1st Rochdale. (Complaint ¶ 69.)

### ii.    Power Plant Development

In 1997, 1st Rochdale began actively evaluating power plant development options in New York City. (Complaint ¶ 70.) 1st Rochdale initially planned to buy power plants from Consolidated Edison ("ConEd") with significant input from NCSC. (Complaint ¶ 71.) In 2000, 1st Rochdale and its wholly-owned subsidiary GPD embarked upon a plan to build a power plant at the Zerega Avenue Property. As indicated in documents reviewed by the Trustee, the Movant Directors were present at Board meetings where decisions regarding the development of the Power Plant Project were made. The plan to build the power plant changed dramatically over the years with the change in size of the proposed plant from a 79 megawatt ("MW") unit to a 260 MW unit and back to a 79 MW unit and type of the plant from a peaking plant to a simple cycle plant to a combined cycle plant. (Complaint ¶ 72.)

7

With every change in plan 1st Rochdale had to amend the layout, turbines and other plant components and seek fresh approvals from various authorities and incur significant corresponding costs.  (Complaint ¶ 73.)  During the time 1st Rochdale and GPD were planning to build the plant they were also planning to build and purchase other plants at different locations, including buying a North First Street (Brooklyn) property from ConEd and a plant at Coop City in Bronx, and purchasing power plants from the New York Power Authority.  (Complaint ¶ 74.)

During the year 2000 and 2001, 1st Rochdale Board, including the Movant Directors recklessly authorized the expenditure of millions of dollars in legal fees and consultants fees ostensibly to obtain necessary permits and licenses notwithstanding 1st Rochdale's insolvent financial condition.  (Complaint ¶ 75.)  Most of these monies were expended even after NCSC had stopped extending further loans to 1st Rochdale and its subsidiaries.  (Complaint ¶ 76.)  Moreover, 1st Rochdale did not have any other internal or external source of financing or joint venture agreement with an investor willing to provide the capital necessary in order to build a power plant; each of its efforts to line up a potential financier, joint venturer or investor ultimately failed.  (Complaint ¶¶ 77-99.)

Furthermore, during the year 2003, well after NCSC, had ceased extending financing and credit to 1st Rochdale, the Board, including Movant Directors, allowed 1st Rochdale to engage in an inexplicable effort to qualify the Power Plant Project for Liberty Zone Bond financing, notwithstanding that such post-9/11 financing was intended by the federal government to provide economic recovery incentives for the downtown Manhattan (Liberty Zone) area, not for properties like the Zerega Avenue Property located in the Bronx.  (Complaint ¶¶ 87-88.)  1st Rochdale wasted significant sums in a doomed-from-the-start attempt to lobby politicians in Washington, D.C. and Albany, to enable 1st Rochdale to qualify for such financing.

(Complaint ¶ 88.)  Not surprisingly, 1st Rochdale failed to obtain the Liberty Zone Bonds.
(Complaint ¶t 89.)

### iii.    Sustainable Energy

The sustainable energy initiative by 1st Rochdale and its subsidiaries consisted of
energy management services, on-site power generation through solar energy, fuel cells, micro
turbine and appliance fairs where members and consumers would be able to acquire household
appliances at discounted prices.  (Complaint ¶ 100.)  1st Rochdale provided energy management
services to its members for a fee with the objective of lowering total energy costs to them and
their customers.  (Complaint ¶ 101.)  The on-site power generation services included installing
solar energy, fuel cell and micro turbines for a fee and related services.  (Complaint ¶ 102.)  It
appears that the financing of the on-site power generation projects were on a 50-50 basis
whereby 50% of the cost of the projects was provided by New York State Energy Research and
Development Authority ("NYSERDA") in the form of a rebate to the customers and the
remaining 50% was paid by the customer.  (Complaint ¶ 103.)  1st Rochdale received a nominal
fee for coordinating these activities.  (Complaint ¶ 104.)  The fee received by 1st Rochdale for
these projects was insufficient to cover the associated overhead expenses.  (Complaint ¶ 105.)
Although 1st Rochdale Board, including the Movant Directors were aware of these losses in
furtherance of their breach of fiduciary duty to 1st Rochdale, they chose to ignore the situation,
and thus caused 1st Rochdale to incur further losses in connection with these projects.
(Complaint ¶ 106.)

C046038/0189460/1448642.10

**D.      Breaches of Fiduciary Duty Led to 1st Rochdale's Substantial Losses and Bankruptcy**

During the period January 1999 through the Petition Date, 1st Rochdale suffered losses in excess of $15 million, exclusive of the additional losses suffered by its wholly-owned subsidiaries.  (Complaint¶ 115.)  Even though the minutes of the board meetings of the Debtor indicate that the Movant Directors knew about these losses, it appears that they never devised any strategy to reduce the losses or to stop operating the businesses that were losing money. (Complaint ¶ 116.)

Commencing in or about the beginning of 1999, the Movant Directors embarked on an excessively costly and speculative venture to a build a power plant, which venture was doomed to fail. (Complaint ¶ 117.)  After early 2000, when NCSC withdrew its financial support to 1st Rochdale and without 1st Rochdale having the financial ability to build a power plant, the Board, including the Movant Directors, caused 1st Rochdale to spend millions of dollars on legal and professional fees for the proposed Power Plant Project and diverted the limited resources of 1st Rochdale toward that project.  (Complaint ¶ 118.)  During the year 2003 and 2004 the Board, including the Movant Directors, carelessly allowed 1st Rochdale to spend thousands of dollars in travel, professional and other expenses lobbying Washington and Albany for what they had clear reason to know would be a futile effort to qualify the Power Plant Project for Liberty Zone Bonds funding, as such funding was explicitly designed for post-9/11 development in downtown Manhattan, not in the Bronx.  (Complaint ¶ 119.)  The Movant Director's authorized diversion of the financial resources of 1st Rochdale toward the speculative Power Plant Project left 1st Rochdale without adequate financial resources, and caused 1st Rochdale and its subsidiaries to incur multi-million dollar losses, which in turn ultimately caused 1st Rochdale's bankruptcy filing.  (Complaint ¶ 120.)

E.     **Bonus Payments Authorized by the Movant Directors to Thurgood,**
       **Wortham and Johnson**

While 1st Rochdale was insolvent, the 1st Rochdale Board, including the Movant

Directors, authorized the payment of incentive payments and bonus amounts to their fellow

director and Chief Executive Officer ("CEO") Thurgood, as well as to the Chief Operating

Officer ("COO") Wortham and to the Chief Financial Officer ("CFO") Johnson. These

authorized bonus payments were in addition to those individuals' regular salary and other

benefits.  (Complaint ¶¶ 121-137.)

During the period commencing April 1, 1999 through March 31, 2004, during

which time 1st Rochdale was insolvent the Board, including the Movant Directors, awarded

Thurgood incentives and bonuses in an amount totaling $261,442, as set forth in the following

chart. (Complaint ¶¶ 123-126).

| 4/01/1999-3/31/2000 | 4/01/2000-3/31/2001 | 4/01/2001-3/31/2002 | 4/01/2002-3/31/2003 | 4/01/2003-3/31/2004 |
|---|---|---|---|---|
| $25,000 | $125,000 | - | $62,459 | $48,983 |

During the same period, the Board awarded Wortham incentives and bonuses in

an amount totaling $204,555, as set forth in the below chart. (Complaint ¶¶ 129-132)

| 4/01/1999-3/31/2000 | 4/01/2000-3/31/2001 | 4/01/2001-3/31/2002 | 4/01/2002-3/31/2003 | 4/01/2003-3/31/2004 |
|---|---|---|---|---|
| $5,000 | $125,000 | - | $30,025 | $44,530 |

Also during the same period the Board awarded Johnson incentives and bonuses

in the amount of $16,358.  (Complaint ¶¶ 135-137.)

Despite the fact that the Debtor's liabilities exceeded its assets (Complaint ¶ 23.),

the Debtor was unable to pay its obligations as they became due (Complaint ¶ 24.), the Debtor

was grossly undercapitalized for the business in which it was engaged (Complaint at ¶ 25.), and

the Movant Directors were fully aware of the Debtor's poor financial condition. (Complaint ¶

C046038/0189460/1448642.10

26.), the Board, including the Movant Directors, in breach of their fiduciary duties, still awarded those bonuses to Thurgood, Wortham and Johnson, which bonuses constituted fraudulent conveyances.  (Complaint ¶¶ 128-134 and 139.)

C046038/0189460/1448642.10

**ARGUMENT**

**POINT I**

**THE TRUSTEE'S COMPLAINT STATES VALID CLAIMS FOR RELIEF AND THEREFORE THE MOVANT DIRECTORS HAVE FAILED TO MEET THE STRICT CRITERIA NECESSARY TO WARRANT A DISMISSAL OF THE TRUSTEE'S COMPLAINT UNDER RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 8(a), made applicable to this adversary proceeding by Bankruptcy Rule 7008, provides that "a pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . ."

Fed. R. Civ. P. 12 provides, in relevant part, as follows:

(b) . . . Every defense, in law or fact, to a claim for relief in any pleading whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in a responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion . . . (6) to dismiss failure of the pleading to state a claim upon which relief can be granted . . .

A motion under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to ensure that it meets with the requirements of Fed. R. Civ. P. 8(a), which requires a short and plain statement that the pleader is entitled to relief. See Crazy Eddie, Inc. v. Antar, (In re Crazy Eddie, Inc.), No. 89B11313–11457 (TLB), 1992 Bankr. LEXIS 2018, at *10 (Bankr. S.D.N.Y. Dec. 17, 1992). A motion to dismiss a complaint must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When reviewing a motion to dismiss, the court must take all well plead factual allegations as true and such allegations must be viewed in a light most favorable to the plaintiff. See Robert L. Geltzer v. Crossroads Tabernacle (In re Rivera), 214 B.R. 101, 104 (Bankr. S.D.N.Y. 1997). Accordingly, doubt as to a party's ability to prove his case is not a sufficient

C046038/0189460/1448642.10

reason to dismiss his complaint for failure to state a claim upon which relief can be granted. See Raine v. Lorimar Prods., Inc., et al., 71 B.R. 450, 453 (Bankr. S.D.N.Y. 1987) (citing Walker Distrib. Co. v. Lucky Lager Brewing Co., 323 F.2d. 1, 4 (9th Cir. 1963); Carnivale Bag Co. v. Slide-Rite Mfg. Corp., 395 F. Supp. 287, 291 (S.D.N.Y. 1975); Myers v. United States, 162 F. Supp. 913, 914 (N.D.N.Y. 1958)). Further, any deficiencies in the Complaint may be amplified by supplemental pleadings and any other evidence. See AG Capital Funding Partners, L.P. v. State St., 5 N.Y.3d 582 (2005).

Moreover, where, as in this case, the Trustee has been appointed subsequent to the occurrence of the events relevant to his/her Complaint and accordingly, he/she does not have firsthand knowledge of those events, and has not yet had the opportunity to take discovery of the opposing parties and of third parties, the Trustee should be afforded even more leeway in his/her pleadings, cf., In re Everfresh Beverages, Inc., 238 B.R. 558 (Bankr. S.D.N.Y. 1999).

In any event, in the instant case, the allegations contained in the Trustee's Complaint are more than sufficient to sustain his various causes of action against the Movant Directors. As is further detailed below, each of the Trustee's causes of action asserted against the Movant Directors are supported by significant detail that more than adequately sets forth viable claims for relief.

C046038/0189460/1448642.10

## POINT II

## THE MOVANT DIRECTORS BREACHED THEIR DUTY OF CARE AND THE BUSINESS JUDGMENT RULE DOES NOT BAR THE TRUSTEE'S CLAIMS AGAINST THEM

**A.      Counts One and Two Adequately Plead Breach of Fiduciary Duty Claims against the Movant Directors**

Directors and officers of a corporation owe certain fiduciary duties to the corporation.  Under New York law, the management of a New York corporation is generally vested in the board of directors, N.Y. Bus. Corp. Law § 701 (McKinney 2003) ("BCL").  The fiduciary duties of directors and officers have been generally characterized as the duty of care and the duty of loyalty.  Norlin Corp. v. Rooney, Pace, Inc., 744 F.2d 255, 264 (2d Cir. 1984). The officers and directors must perform their duties "in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances." BCL § 715(h) (duties of officers), BCL § 717(a) (duties of directors).

It is well settled that the duty of due care "requires that a director's decision be made on the basis of reasonable diligence in gathering and considering material information." Hanson Trust, PLC. v. ML SCM Acquis'n, Inc., 781 F.2d 264, 274 (2d Cir. 1986) ("Hanson Trust"); see also Roselink Investors, L.L.C., v. Shenkman, 386 F. Supp. 2d 209, 220 (S.D.N.Y. 2004) ("Roselink") ("[D]irectors have a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them.") (quoting Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).  This duty to become informed is a serious one, as "[d]irectors may be liable . . . for failing reasonably to obtain material information or to make a reasonable inquiry into material matters."  Hanson, 781 F.2d at 274-75.  Once informed, "[d]irectors must exercise their 'honest judgment in the lawful and legitimate furtherance of corporate purposes.'"

Id. at 274 (quoting Auerbach v. Bennett, 47 N.Y.2d 619, 419 N.Y.S.2d 920 (1979).

      To establish that Defendants breached their fiduciary duty, the Trustee need only "establish that the offending parties' actions were 'a substantial factor' in causing an identifiable loss." F.D.I.C. ex rel., First N.Y. Bank for Bus. v. Bober, No. 95 Civ. 9529 (JSM), 2003 WL 21976410, at *1 (S.D.N.Y. Aug. 19, 2003) ("Bober") "[B]reaches of [] fiduciary [duty] in any context comprise a special breed of cases that often loosen normally stringent requirements of causation and damages." Milbank, Tweed, Hadley & McCloy v. Boon, 13 F.3d 537, 543 (2d Cir. 1994); Northwestern. Nat'l Ins. Co. v. Alberts, 769 F. Supp. 498, 506 (S.D.N.Y. 1991) ("A plaintiff alleging breach of fiduciary duty . . . is not required to meet the higher standard of loss or proximate causation."). "The reason for this rule" is that "this type of action is not merely to compensate the plaintiff for wrongs committed . . . [but also] 'to prevent them, by removing agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others . . . .'" Bober, 2003 WL 21976410, at *1 (quoting Gibbs v. Breed, Abbott & Morgan, 271 A.D.2d 180, 710 N.Y.S.2d 578, 584 (1st. Dep't 2000)).

      This inquiry often raises factual questions which normally are not properly resolved on a motion to dismiss. RSL Commc'n PLC v. Bildirici, No. 04-cv-5217 (KMK), 2006 U.S. Dist. LEXIS 67548, at *14 (Bankr. S.D.N.Y. Sept. 14, 2006); Malin v. XL Capital Ltd., No. 3:03 Civ. 2001 (PCD), 2005 WL 2146089, at *4 n.5 (D. Conn. Sept. 1, 2005); F.D.I.C. v. Bober, No. 95 Civ. 9529 (JSM), 2002 WL 1929486, at *3 (S.D.N.Y. Aug. 22, 2002) ("Whether [defendant director's] failure to attend the [board] meetings caused the losses and whether the outcome would have been different had [defendant] actually attended the meetings are questions of causation that rest on disputed facts.").

      Directors and officers owe their fiduciary duties to both corporations and share-

holders.  See Gully v. National Credit Union Admin. Bd., 341 F.3d 155, 165 (2d Cir. 2003);

O'Connor & Assocs. v. Dean Witter Reynolds, Inc., 529 F. Supp. 1179, 1184 (S.D.N.Y. 1981).

However, "once insolvency ensues, the fiduciary duties of corporate officer and directors also

extends to creditors."  New York Credit Men's Adjustment Bureau v. Weiss, 305 N.Y. 1, (1953);

see Adelphia Commc'ns. Corp. v. Rigas (In re Adelphia Commc'ns. Corp.), 323 B.R. 345, 386

n.140 (Bankr. S.D.N.Y. 2005) ("Many courts, including the Second Circuit, this one, and the

state courts from which the applicable principles have their origin, have said that when a

corporation becomes insolvent or enters into the zone of insolvency, the fiduciary duties of a

corporation expand from its stockholders to its creditors.")  see also Roselink, 386 F. Supp. 2d at

215;  In re RSL.COM PrimeCall, Inc., No. 01-11457 (ALG), 2003 WL 22989669, at *7 (Bankr.

S.D.N.Y. Dec. 11 2003) ("Insolvency, however, changes the scope of a director's duties, and

upon insolvency directors owe fiduciary duties to creditors or, stated differently, to the

corporation and to all of its interested constituencies, including creditors and shareholders.");

Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns. Corp., No. Civ. A. 12150, 1991 WL

277613, at *36 n.55 (Del. Ch. Dec. 30, 1991) (explaining competing interests of shareholders

and creditors that must be balanced by a director when corporation enters the "zone of

insolvency").  This duty is "deriv[ed] from the principle that the corporate assets constitute [a]

trust fund for [the] benefit of creditors." Heimbinder v. Berkovitz, 175 Misc. 2d 808, 670

N.Y.S.2d 301, 307 (N.Y. Sup. Ct. Kings Cty. 1998), judgment modified on other grounds, 263

A.D. 466, 693 N.Y.S.2d 200 (2d Dep't 1999).

       As set forth in the Complaint, the Movant Directors have not only breached their

duty of care to the Debtor, but to the creditor body as well.

C046038/0189460/1448642.10

The Movant Directors, when acting on behalf of 1st Rochdale, owed it fiduciary duties to exercise the care, diligence and skill that a reasonably prudent person in a like position would exercise under comparable circumstances, and with a view to 1st Rochdale's best interests. By virtue of the acts and omissions described in this Complaint, the Movant Directors failed to exercise the care, diligence, and skill that directors and officers of a company would exercise under comparable circumstances, and instead acted in a grossly negligent manner, thereby violating their fiduciary duties to 1st Rochdale and its creditor constituency.

The Movant Directors operated 1st Rochdale in a manner that was financially and economically unreasonable, and indeed, disastrous.  As set forth in the Complaint, from 1999 through the Petition Date, 1st Rochdale was insolvent, suffering over $15,000,000 in losses. (Complaint ¶ 115.)  During that period of time commencing in 1999, the Debtor, with the rubberstamp of the Movant Directors, took on significant debt from NCSC amounting to over $23,000,000 in loans.  (Complaint ¶¶ 43-45.)

In furtherance of their inability to operate the Debtor with the degree of care and skill that was required of them, the Board, including the Movant Directors, oversaw the reckless siphoning off of loan monies intended for the fuel oil distribution business of TPF LLC, 1st Rochdales's wholly-owned subsidiary, toward the entirely speculative, ill-conceived Power Plant Project.  NCSC had made a $14 million loan to TPF LLC.  (Complaint ¶ 55.)  1st Rochdale had already utilized $2.6 million of that money to purchase the Zerega Avenue Property, but instead of utilizing the full $11.6 million remaining from the $14 million loan from NCSC for TPF LLC's oil fuel distribution business, the Board chose to divert approximately $3 million from TPF LLC and its oil distribution business to the development of a power plant.  (Complaint ¶ 63.)  This diversion of funds from TPF LLC severely hurt TPF LLC's fuel oil distribution

18

business, and left TPF LLC short of the necessary funds to buy fuel oil at the cheapest price

available.  (Complaint ¶ 64.)  Moreover, as set forth in the Trustee's Complaint, in further breach

of their fiduciary duties to 1st Rochdale, the Movant Directors continued to waste the resources

of 1st Rochdale and erode its financial wherewithal to operate as a company, all while 1st

Rochdale was woefully insolvent.

　　　　With respect to the Power Plant Project, the Movant Directors caused 1st

Rochdale to spend millions of dollars in legal fees, and consultants' fees and related wasteful

expenditures in an effort to obtain necessary permits and licenses, notwithstanding the cessation

of financing from NCSC.  Additionally, 1st Rochdale, through Board acquiescence, incurred

further wasteful unjustifiable expenses in the patently senseless attempt to lobby politicians in

Washington, D.C. and Albany to grant the Liberty Zone Bond financing to the Bronx-based

Power Plant Project under a federal program designed to spur economic recovery in the

downtown Manhattan (Liberty Zone) area, not in the Bronx.  (Complaint ¶ 88.)  Despite the fact

that 1st Rochdale had no viable source of funding and despite the fact that it would cost close to

$100,000,000 to build the power plant (Complaint ¶ 90.), 1st Rochdale, with the approval of the

Movant Directors, continued to pour money into the development of the Power Plant Project.

All of this occurred while, according to the Debtor's books and records, 1st Rochdale was grossly

undercapitalized

　　　　　The Trustee's allegations of gross fiscal irresponsibility sets forth viable claims

for breach of fiduciary duty.  As set forth above, the Movant Directors operated 1st Rochdale and

made decisions for 1st Rochdale in a grossly negligent manner.  The decisions of the Movant

Directors to expend millions upon millions of dollars of the Debtor, as well as monies designated

for the fuel oil distribution business of its wholly-owned subsidiary, on an ill-fated attempt to

C046038/0189460/1448642.10

build a power plant, amounted to grossly negligent management of the Debtor and total disregard

for the fiscal well-being of the Debtor.  Such actions clearly violated the duty of care owed by

the Movant Directors to the Debtor in that the Movant Directors did not perform their duties "in

good faith and with that degree of care which an ordinarily prudent person in a like position

would use under similar circumstances."  See BCL § 717(a); Norlin, 744 F.2d at 264, Supra..

The Trustee has sufficiently pled facts that the Movant Directors' actions were 'a substantial

factor' in causing an identifiable loss."  See Bober, 2003 WL 21976410, at *1, Supra..


B.      **The Trustee Has Properly Alleged that the Movant Directors Have Breached Their
        Fiduciary Duty by Authorizing Bonus Payments to Thurgood, Wortham and
        Johnson**

            Additionally, while the Debtor was insolvent, the Movant Directors authorized

bonus payments to Thurgood, a fellow director and CEO of the Debtor, aggregating in excess of

$260,000.  (Complaint ¶¶ 123-126.)  Similarly, the Movant Directors awarded bonus payments

of over $200,000 to Wortham, 1st Rochdale's COO (Complaint ¶¶ 129-132.), and awarded

bonuses exceeding $16,000 to Johnson, 1st Rochdale's CFO. of the Debtor.  (Complaint ¶¶ 135-

137.)  It was patently improper for the Movant Directors to award such bonuses at a time when

the Debtor was insolvent.

            As set forth in the Complaint, because these payments were transferred at a time

when the Debtor was insolvent, such payments represented fraudulent conveyances.  "The proper

exercise of due care by a director in informing himself of material information and in overseeing

the outside advice on which he might appropriately rely is, of necessity, a pre-condition to

performing his ultimate duty of acting in good faith to protect the best interests of the

corporation"  Hanson, 781 F.2d at 277, see also, Auerbach, 47 N.Y.2d 631-632; 419 N.Y.S.2d at

927.  The Board's granting of the aforesaid bonuses during a period when 1st Rochdale was

C046038/0189460/1448642.10

insolvent is illustrative of how the Movant Directors operated the Debtor in a manner in which no prudent person would.  Their actions indicate a complete and total disregard for the economic welfare of the Debtor and its creditors and such actions constitute a breach of fiduciary duty.

**C.      The Business Judgment Rule Does Not Bar the Claims of the Trustee**

Generally, the business judgment rule precludes judicial inquiry into the actions of corporate directors, so long as the directors' actions were taken in good faith and after reasonable investigation.  Auerbach, 47 N.Y.2d at 629, 419 N.Y.S.2d at 926.  However, "[T]he business judgment doctrine is misapplied when it is extended to provide protection to corporate board members where there is an abundance of evidence strongly suggesting breach of fiduciary duty."  Hanson, 781 F.2d at 274.  "[T]he exercise of fiduciary duties by a corporate board member includes more than avoiding fraud, bad faith and self-dealing."  Id.  "Directors must exercise their 'honest judgment in the lawful and legitimate furtherance of corporate purposes.'" Id., citing Auerbach, 47 N.Y.2d at 629, 419 N.Y.S.2d at 926.

"The law is settled that, particularly where directors make decisions likely to affect shareholder welfare, the duty of due care requires that a director's decision be made on the basis of "reasonable diligence" in gathering and considering material information. In short, a director's decision must be an informed one."  Hanson, 781 F.2d at 274.  "[W]hile directors are protected to the extent that their actions evidence their business judgment, such protection assumes that courts must not reflexively decline to consider the content of their 'judgment' and the extent of the information on which it is based." Id. at 275.  "The duty of directors of [a] company to act on an informed basis [thus] forms the duty of care element of the business judgment rule."  Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 367 (Del. 1993); judgment rev'd on other grounds, 758 A.2d 485 (Del. Supr. 2000)).  The standard of directorial conduct in

C046038/0189460/1448642.10

BCL § 717 is applied not to the result of the decision making process but rather to the process itself. Stephens v. National Distillers & Chems., Corp., No. 91 Civ. 2901 (JSM), 91 Civ. 2902 (JSM), 1996 U.S. Dist. LEXIS 6915, at *17 (S.D.N.Y. May 20, 1996)

Although the standard of review for business judgments is deferential, to receive the protection of the business judgment rule a director must show an exercise of judgment, not simply the existence of a business decision. Directors' fiduciary duties "require them to do more 'than passively rubber-stamp the decisions of the active managers.'" Davidowitz v. Edelman, 153 Misc. 2d 853, 583 N.Y.S.2d 340, 344 (N.Y. Sup. Ct. Kings Cty. 1992), aff'd by, 203 A.D.2d 234, 612 N.Y.S.2d 882 (2d Dep't 1994) (quoting Barr v. Wackman, 36 N.Y.2d 371, 368 N.Y.S.2d 497 (1975)). See also RSL Commc'n., 2006 U.S. Dist. LEXIS 67548 at *17.[5]

As set forth in the Complaint, the Movant Directors continued to allow 1st Rochdale to engage in businesses projects, including most particularly the Power Plant Project, which not only diverted funds from its potentially viable oil distribution business but wasted millions of dollars upon an ill-conceived project that only served to deepen the existing insolvency of the corporation. Additionally, in further violation of the duty of loyalty owed to the Debtor, the Movant Directors awarded bonuses to Thurgood, Wortham and Johnson at a time when the Debtor was insolvent.

The Movant Directors argue that because the Trustee has not alleged individual tortious acts, the Trustee's Complaint should fail.

---

[5] Even assuming arguendo that the Movant Directors may not have acted out of self-interest or engaged in fraud or self-dealing in breach of their duty of loyalty, they do not appear to have pursued adequately their obligation to ensure the Debtor's fundamental right to make the "decisions affecting [the] corporation's ultimate destiny," Hanson, 781 F.2d at 277 quoting Norlin, 744 F.2d at 258.

C046038/0189460/1448642.10

The Movant Directors conveniently overlook the allegations in the Complaint that during the relevant period of time when the alleged breaches of fiduciary duty by the Board members occurred, each one of them sat on the Board. (Complaint ¶¶ 30-31.) Commencing in 1999 through the Petition Date, during which period 1st Rochdale lost over $15 million, exclusive of additional losses suffered by its wholly-owned subsidiaries, (Complaint ¶ 115.), 1st Rochdale, with the approval of the Movant Directors, embarked on a costly and speculative plan to build a power plan. (Complaint ¶ 117.) As set forth above, during that time, each of the Movant Directors was a member of 1st Rochdale's Board. Moreover, during the period from April 1, 1999 through March 31, 2004, when Thurgood, Worthem and Johnson were awarded bonuses by the 1st Rochdale board, each of the Movant Directors was a member of 1st Rochdale's Board.

At this point in the instant Adversary, in the context of a motion to dismiss, the Trustee need not prove his case specifically, any doubt as to a party's ability to prove one's case is not a sufficient reason to dismiss one's complaint for failure to state a claim upon which relief can be granted. See Raine, 71 B.R. at 453, (citing Walker Distrib., 323 F.2d. at 4). The allegations contained in the Trustee's Complaint that each of the Movant Directors sat on the Board during the relevant period of time that the duty breaches occurred, are more than sufficient to sustain the Trustee's various causes of action against the Movant Directors.

Moreover, the cases which Movant Directors cite for the proposition that separate tortious claims must be alleged against each individual Movant Director are inapposite. Both De Castro v. Bhokari, 201 A.D.2d 382, 383, 607 N.Y.S.2d 348 (1st Dep't. 1994) ("De Castro"), and Levandusky v. One Fifth Ave., Apt. Corp., 75 N.Y.2d 530, 554 N.Y.S.2d 807 (1990) do not involve breach of fiduciary duty claims, but rather judicial review of challenges by individual

C046038/0189460/1448642.10

resident-tenant shareholders of decisions affecting them taken by a residential cooperative apartment corporation board.

As set forth by the Appellate Division in <u>Levandusky</u>, the issue which the Appellate Division was faced with was what is the "standard to be applied in judicial review of this challenge to a decision of the board of directors of a <u>residential </u>cooperative corporation." (emphasis added)  <u>Levandusky</u>, 75 N.Y.2d at 535-36, 554 N.Y.S.2d at 810.  <u>Levandusky</u> and its progeny, including <u>Messner v.112 East 83rd St. Tenants Corp.</u>, 42 A.D.3d 356, 840 N.Y.S.2d 45, (1st Dep't. 2007), in which a tenant did sue the board of a residential cooperative, are limited to cases dealing with sui generis relationship between resident cooperative apartment shareholders and residential cooperative apartment corporation.  The Debtor was an energy cooperative corporation, not a residential apartment cooperative corporate, and thus the <u>Levandusky</u> family of cases are inapplicable here.  Moreover, as set forth above, "[T]he business judgment doctrine is misapplied when it is extended to provide protection to corporate board members where there is an abundance of evidence strongly suggesting breach of fiduciary duty…."  <u>Hanson</u>, 781 F.2d at 274.

As the Movant Directors have offered no evidence that they had informed themselves regarding their decisions with respect to the Debtor, or that they had relied in good faith on the statements of others, a jury could find a negligent breach of the pertinent duty of care. <u>cf</u>. <u>Clarkson Co. v. Shaheen</u>, 660 F.2d 506, 513 (2d Cir. 1981).

As set forth above, the Trustee has pled the requisite allegations to establish cognizable claims against the Movant Directors for breaches of their duty of care to the Debtor and its creditors.  These claims are  not barred by the business judgment rule.  Moreover, in light of the fact, as set forth above, that the Trustee has not yet had the benefit of taking discovery in

C046038/0189460/1448642.10

this Adversary, and accordingly, the allegations in the Complaint are based upon the limited amount of documents the Trustee was able to obtain subsequent to his appointment, he should be held to a more liberal standard with respect to his pleading.  Barr v. Charterhouse Group, supra.

C046038/0189460/1448642.10

## POINT III

### A SIX-YEAR STATUTE OF LIMITATIONS PERIOD APPLIES TO THE BREACH OF FIDUCIARY DUTY CLAIMS

The Movant Directors contend that a three-year limitations period applies to the breach of fiduciary duty claims.  However, as this Court has already decided in Lippe v. Bairnco Corp., 230 B.R. 906 (S.D.N.Y. 1999) ("Lippe"), a case cited in the Movant Directors' memorandum of law for other reasons, a six-year statute of limitations period pursuant to N.Y. C.P.L.R. 213(7) applies where a corporation sues a former officer, director or shareholder for breach of fiduciary duty.  Lippe, 230 B.R at 913.  See also, In re Argo Commc'ns Corp., 134 B.R. 776, 785-88 (Bankr. S.D.N.Y. 1991) (holding that six-year statute applies to bankruptcy trustee's suit, in name of debtor and for benefit of its creditors, against related corporations for breach of fiduciary duty and corporate waste); Whitney Holdings, Ltd. v. Givotovsky, 988 F. Supp. 732, 741-43 (S.D.N.Y. 1997) (holding that six-year statute applies where corporation sues a former officer, director, or shareholder for breach of fiduciary duty); F.D.I.C. v. Abel, No. 92 Civ. 9175, 1995 WL 716729, at *10-11 (S.D.N.Y. Dec. 6, 1995) (holding that six-year statute applies to claims by FDIC, as receiver, against former officers of bank for breach of fiduciary duty).

N.Y. C.P.L.R. § 213(7) states that "an action by or on behalf of a corporation against a present or former director, officer, or stockholder for an accounting, or to procure a judgment on the ground of fraud, or to enforce a liability, penalty or forfeiture, or to recover damages for waste or for an injury to property or for an accounting therewith" shall be "commenced within six years." N.Y. C.P.L.R. § 213(7). This section "supplants all other statutes of limitation potentially applicable to a suit on a corporation's claim against its director, officer, or shareholder." Whitney Holdings, 988 F. Supp. at 742.

26

The Trustee, standing in the shoes of the Debtor, is suing the Movant Directors on behalf of the bankruptcy estate. "[A] bankruptcy trustee, suing on behalf of the debtor under New York law, may pursue an action for breach of fiduciary duty against the debtor's fiduciaries." <u>In re Mediators, Inc.</u>, 105 F.3d 822, 826-27 (2d Cir. 1997) (citing <u>In re Keene Corp.</u>, 164 B.R. 844, 853 (Bankr. S.D.N.Y. 1994)).  Additionally, BCL § 720 permits an action against officers and directors of a corporation for, among other things, unlawful conveyances, such as the fraudulent conveyances authorized by the Movant Directors in the form of bonuses to Thurgood, Worthem and Johnson.  Thus, as was true with the breach of fiduciary duty claims in <u>Lippe</u>, N.Y. C.P.L.R. § 213(7) encompasses the breach of fiduciary duty claims asserted by the Trustee against the Movant Directors in the subject Adversary.  Therefore, such claims are subject to a six-year statute of limitations period.

C046038/0189460/1448642.10

**POINT IV**

**THE TRUSTEE IS NOT REQUIRED TO PROVIDE NOTICE AND A HEARING
REGARDING THE ADVERSARY AS 11 U.S.C § 363 AND RULE 6004 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE ARE NOT APPLICABLE
TO A TRUSTEE'S COMMENCEMENT OF AN ADVERSARY PROCEEDING**

The Movant Directors argue that this Court should dismiss Counts One and Two of the Complaint on the alleged alternative ground that the Trustee has failed to afford parties in interest an opportunity to be noticed and heard on the issue of the commencement of what the Movant Directors refer to as "non-bankruptcy litigation."[6]  In what amounts to a convoluted and meritless argument, the Movant Directors claim that the commencement of this Adversary Proceeding is a so called "use" of property not in the "ordinary course" under §363(b)(1) and that the Trustee failed to give the allegedly required notice of the commencement thereof.

United States District Judge Sweet, in Pereria v. Cogan (In re Trace Int'l Holding, Inc.), No. 00 Civ. 619 (RWS), 2001 U.S. Dist. LEXIS 2461 (S.D.N.Y. Mar. 8, 2001), rev'd on other grounds, 413 F.3d 330 (2d Cir. 2005), was presented with this exact same issue and determined that notice and a hearing were not required for a trustee to commence litigation on behalf of a bankruptcy estate.

In support of its decision, the Court in Cogan pointed to § 323(b) of the Bankruptcy Code and Rule 6009 of the Federal Rules of Bankruptcy Procedure.  Section 323(b) states that "the trustee in a case under this title has capacity to sue and be sued." 11 U.S.C. §

---

[6]    In characterizing the Adversary as "non-bankruptcy litigation," the Movant Directors are presumably contending that the Trustee's claims therein are "non-core" claims, rather than core claims under 28 U.S.C. § 157(b)(2).  However, whether or not Counts One and Two of the Trustee's claims are deemed "core" claims, clearly Counts Three through Eight which assert fraudulent transfer claims , and which are not the subject of the instant Motion, are "core" claims pursuant to 28 U.S.C. § 157(b)(2)(H).

C046038/0189460/1448642.10

323(b).  Rule 6009 provides that:

> With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.

Fed. R. Bankr. P. 6009; see also 3 Collier on Bankruptcy ¶ 323.03, at 323-6 (Lawrence P. King ed., 15th ed. 2007) (Section 323(b) "must be read with . . . Bankruptcy Rule 6009"); 15 Collier on Bankruptcy ¶ 6009.01, at 6009-1 to 6009-2 (Lawrence P. King ed., 15th ed. 2005) ("Rule 6009 has a single and straightforward purpose. It permits a trustee . . . to prosecute or defend any action on behalf of the estate in any tribunal without the need to obtain bankruptcy court approval. Rule 6009's authority stems from the Bankruptcy Code section 323(b), which gives the trustee the power to sue and be sued.").  As noted by the Court in Cogan, "[a]lthough Rule 6009 refers to 'court approval,' rather than to the concepts of notice and a hearing, those concepts will be discussed interchangeably here because court approval is the necessary concomitant of a notice and hearing requirement."  Cogan., 2001 U.S. Dist. LEXIS 2461 at *13.

As set forth in Bankruptcy Rule 6009, many courts have recognized a bankruptcy trustee's authority to commence litigation without court approval.  See Parker v. Bain, 68 F.3d 1131, 1136 (9th Cir. 1995) (Rule 6009 "clarifies that the trustee . . . has standing to, and may, litigate appropriate actions on behalf of the estate without prior approval of the bankruptcy court," although this rule "does not trump" the automatic stay provision of pursuant of § 362 of Bankruptcy Code); In re El San Juan Hotel Corp., 841 F.2d 6, 8-9 (1st Cir. 1988) (stating in dicta that bankruptcy court acted without authority in reassigning trustee's power to sue on behalf of estate to someone else, given trustee's authority to sue on behalf of the estate with or without court approval, pursuant to § 323(b) and Rule 6009); In re Capgro Leasing Assocs., 169 B.R. 305, 312-13 (Bankr. E.D.N.Y. 1994) (Rule 6009 "plainly furnishes a trustee with the discretion

C046038/0189460/1448642.10

to decide whether to litigate actions as it sets forth, and to do so with or without court approval," though the § 362 automatic stay provision "properly leaves with the bankruptcy judge the discretion and authority to decide when to let such action go forward.").

        As pointed out by the Court in <u>Cogan</u>, "…§ 323 of the Bankruptcy Code and Rule 6009 are derived from former Bankruptcy Rule 610, which was itself adopted to eliminate the previously-existing requirement of the Bankruptcy Act of 1898 that a trustee obtain court approval in order to prosecute or defend an action in which the estate has an interest." <u>Cogan</u>, 2001 U.S. Dist. LEXIS 2461 at *16; <u>see also</u> <u>In re Capgro Leasing</u>, 169 B.R. at 312; 3 Collier on Bankruptcy ¶ 323.LH[2][a], at 323-12.1 (Lawrence P. King ed., 15th ed. 2007); 10 Collier on Bankruptcy ¶ 6009.RH, at 6009-8 (Lawrence P. King ed., 15th ed. 1998).  This legislative history, together with the repeal of the Bankruptcy Act of 1898, is inconsistent with the proposition that in order to commence a lawsuit on behalf of a bankruptcy estate the trustee must first obtain court approval, after notice and a hearing pursuant to § 363(b)(1).  <u>Cogan</u>, 2001 U.S. Dist. LEXIS 2461 at *16-17.

        The Movant Directors argue that the commencement of litigation by the Trustee is a form of property of a bankruptcy estate, <u>see</u> <u>United States v. Whiting Pools, Inc</u>., 462 U.S. 198, 205 n.9 (1983); <u>In re Betty Owens Schs., Inc.</u>, No. 96 Civ. 3576 (PKL), 1997 WL 188127, at *2 (S.D.N.Y. Apr. 17, 1997) and as characterized by one court, the pursuit of an estate's cause of action by a trustee is "use" of that asset within the meaning of § 363. <u>See</u> <u>In re Olympia Holding Corp</u>., 188 B.R. 287, 295 (M.D. Fl. 1994) ("It is . . . without question that the trustee is able to 'use' those assets by pursuing the causes of action in court as section 363(l) would protect."), <u>aff'd on other grounds</u>, 68 F.3d 1304 (11th Cir. 1995).

        However, as noted by the Court in <u>Cogan</u>, "<u>In re Olympia Holding,</u> which dealt

with the applicability of 363(l) of the Bankruptcy Code in dealing with ipso facto clauses as they affect the debtor's property rights, did not touch on whether such use of those property rights is "outside of the ordinary course of business." Cogan, 2001 U.S. Dist. LEXIS 246, at * 18 n.7; see also In re Olympia Holdings, 188 B.R. at 295. Indeed, in referring to the trustee's "use" of an estate asset through the commencement of litigation, the Cogan court cited § 323 and Rule 6009, which provisions, as just discussed, speak of the trustee's authority to commence litigation with or without court approval. See id." Cogan, 2001 U.S. Dist. LEXIS 2461 at *18. Additionally, Betty Owens Schs., Inc. is distinguishable in that dealt with the issue of notice in the context of a sale of the estate's assets.

Moreover, although the Movant Directors claim that the Trustee's decision to commence litigation is outside the ordinary course of business, they do not support this theory with any facts or relevant case law. In fact, the cases cited by the Movant Directors do not have any facts analogous to the case at bar: See In re Savage Indus., Inc., 43 F.3d 714 (1st Cir. 1994) (dealing with sale of substantially all of chapter 11 debtor's assets and issues of assumption of liabilities); In re Weisser Eyecare, Inc., 245 B.R. 844 (Bankr. N.D. Ill. 2000) (agreement between chapter 7 trustee and former principal of debtor to litigate jointly their separate causes of action and to share proceeds equally was not entered into in the ordinary course of business and was therefore subject to the notice provisions of § 363(b)); In re Moberg Trucking, Inc., 112 B.R. 362 (Bankr. 9th Cir. 1990) (notice issues with respect to sale of debtor's assets); In re Center Wholesale Inc., 759 F.2d 1440 (9th Cir. 1985) (dealing with notice issues concerning a cash collateral order); In re Lavigne, 114 F.3d 379 (2d Cir. 1997) (dealing with whether the Debtor's cancellation of an insurance policy was "ordinary"). However, none of these cases dealt with the issue of whether a trustee must provide notice and a hearing with respect to the

trustee's commencement of litigation on behalf of the debtor's estate.

The statutory language and legislative history of § 323 of the Bankruptcy Code and Bankruptcy Rule 6009, as well as the applicable case law, are clear and must lead this Court to conclude that the § 363(b) notice and hearing requirement is inapplicable to the Trustee's commencement of litigation . As set forth by the <u>Cogan</u> Court, in holding that the notice and hearing requirement of Section 363 of the Bankruptcy Code were not applicable to the Trustee's commencement of litigation, "there are two theories upon which this conclusion could be based: one, that the Trustee's pursuit of this litigation is an ordinary use of estate property; two, that the § 363 provisions governing the use of estate property are inapposite, and the relevant provisions are § 323 and Rule 6009 only." <u>Cogan</u>, 2001 U.S. Dist. LEXIS 2461 at *20. Although ultimately the court in <u>Cogan</u> adopted the theory that the trustee's pursuit of the litigation was in the ordinary course, the Trustee respectfully submits that this Court can reach the same conclusion based upon either rationale.

C046038/0189460/1448642.10

## POINT V

## THE TRUSTEE HAS PROPERLY ALLEGED THAT THE DEBTOR WAS INSOLVENT

The Movant Directors contend that the Trustee has failed to adequately plead the Debtor's insolvency.  This contention is also meritless.[7]

The Complaint sets forth numerous allegations supporting the contention that Debtor was in fact insolvent during the period of time that the Movant Directors committed acts in breach of the fiduciary duties they owed 1st Rochdale.  As alleged in the Complaint, from the beginning of 1999, NCSC provided credit to 1st Rochdale in the amount of $5,000,000 and in that same year, NCSC provided funding to 1st Rochdale's wholly-owned subsidiary TPF LLC, also in the total amount of $9,000,000.  (Complaint ¶¶ 43 and 44.)  Continuing into 2000, NCSC continued to provide financing to the Debtor in an amount which totaled $23,000,000.  (Complaint ¶ 45.)  However, during the two year period that the Debtor incurred increased liabilities in the form of these loans from NCSC, it did not reflect that it had any assets sufficient to overcome the enormous amount of debt it had incurred.  In fact, the only capital which the Debtor had were the loans from NCSC.  The Debtor did not make any of its own capital contributions to the corporation.  Therefore, despite the Movant Directors' allegation that the Debtor was not insolvent, clearly 1st Rochdale was insolvent within the meaning of § 101(32) of the Bankruptcy Code, i.e., that its liabilities exceeded its assets.  11 U.S.C. § 101(32) sets forth: .

---

[7] Although the Movant Directors contend that the Trustee has not properly alleged that the Debtor was insolvent, the Trustee takes respectfully submits that an allegation of insolvency is not required to set forth a claim for breach of fiduciary duty.

C046038/0189460/1448642.10

Moreover, despite the fact that the Debtor remained in business, it continued to lose money over the entirety of its business life[8].

The Movant Directors' argument overlooks the basic tenet that a complaint must be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Trustee's allegations regarding insolvency meet this standard. See Thomson Kernaghan & Co. v. Global Intellicom, Inc., No. 99 Civ. 3005 (DLC), 99 Civ. 3015 (DLC), 2000 WL 640653, at *13 (S.D.N.Y. May 17, 2000) (accepting plaintiff's explicit allegations concerning insolvency even though "allegations which would support the argument that [the defendant] was insolvent at the time . . . are implicit at best" because the court must "tak[e] the allegations in the light most favorable to the plaintiff"); Contempri Homes, Inc. v. Ameritik Real Estate & Dev. Corp., No. 88 Civ. 8408 (KMW), 1989 WL 153030, at *1-2 (S.D.N.Y. Dec. 11, 1989) (accepting allegation of fraudulent asset transfers as satisfying requirement to plead insolvency although plaintiff did not explicitly allege insolvency and no other facts relating to allegation set forth).

In his Complaint, the Trustee has set forth sufficient facts alleging that the Debtor's liabilities i.e. the almost $23 million dollars in loans owed to NCSC, significantly exceeded its assets, to buttress his position that the Debtor was in fact insolvent for the period commencing in 1999 through the Petition Date in 2005.  The Trustee is entitled to the favorable inferences that the Debtor's unhealthy financial condition continued until it went into bankruptcy. See Dunbar v. Commissioner of Internal Revenue, 119 F.2d 367, 370 (7th Cir. 1941)

---

[8]     The fact that 1st Rochdale may have had enough cash to meet its expenses in 2002-2003, is not an indication that its was solvent.  During that time period, and since 1999, 1st Rochdale's liabilities exceeded its assets, rendering 1st Rochdale insolvent.

C046038/0189460/1448642.10

("[A] condition of insolvency shown to exist at a particular time will be presumed to continue in the absence of a showing to the contrary.")

Therefore, based on the foregoing, the Trustee has adequately pled that the Debtor was insolvent at the times relevant to the subject claims of the instant Dismissal Motion.

## CONCLUSION

For the reasons set forth above, the Trustee respectfully submits that this Court should deny the Movant Director's Dismissal Motion in all respects.

Dated: New York, New York
     October 30, 2007

 

BRYAN CAVE LLP
*Counsel to Robert L. Geltzer, the Chapter 7 Trustee*


By: /s/ Robert A. Wolf
    Robert A. Wolf (RW-3419)
    Andrea K. Fisher (AF 0150)
1290 Avenue of the Americas
New York, New York  10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-4630

C046038/0189460/1448642.10