UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>1st ROCHDALE COOPERATIVE GROUP, LTD.<br><br>                Debtor. | Bankruptcy Proceeding Chapter 7<br>Case No. 05-12086 (PCB) |
| ROBERT L. GELTZER, as Chapter 7 Trustee for 1st ROCHDALE COOPERATIVE GROUP, LTD.,<br><br>                Plaintiff,<br><br>    v.<br><br>GARY ALTMAN, RHODA BROWN, "JOHN DOE 1" AS EXECUTOR OR ADMINISTRATOR OF THE ESTATE OF GEORGE CRETHAN, SAUL MILDWORM, JACK RASKIN, DAVID SMITH, FRANCIS CONNOLLY and JOAN RAMER AS EXECUTORS OF THE ESTATE OF ALLEN THURGOOD, EDWARD YAKER, GREGORY WORTHAM and DAVID L. JOHNSON,<br><br>                Defendants. | 07 CV 7852 (DC)<br><br>ECF Case |

# MEMORANDUM OF LAW IN SUPPORT OF THE
# ESTATE OF THURGOOD'S MOTION TO DISMISS

HAYNES and BOONE, LLP
Kenneth J. Rubinstein (KR-1410)
Jonathan D. Pressment (JP-1819)
April L. Neave (AN-3899)
153 East 53rd Street, Suite 4900
New York, New York 10022
(212) 659-4980

**Table of Contents**

Table of Authorities ............................................................................................................. ii

Preliminary Statement ......................................................................................................... 1

Facts Relevant to Motion .................................................................................................... 2

Argument ............................................................................................................................. 5

I.   STANDARDS APPLICABLE TO THE INSTANT MOTION ............................. 5

II.  DISMISSAL OF COUNT THREE IS WARRANTED ......................................... 6

III. DISMISSAL OF COUNT FOUR IS WARRANTED. .......................................... 10

Conclusion ........................................................................................................................ 12

**Table of Authorities**

Federal Cases

*Allen v. WestPoint-Pepperell, Inc.*
   355 F. Supp.2d 704 (2d Cir. 1991) ................................................................................................5

*Amron v. Morgan Stanley Inv. Advisors Inc.*
   464 F.3d 338 (2d Cir. 2006).................................................................................................. 6, 11

*Arista Records LLC v. Lime Group LLC*
   532 F.Supp.2d 556 (S.D.N.Y. 2007)..............................................................................................5

*Bell Atlantic Corp. v. Twombly*
   127 S.Ct. 1955 (S.D.N.Y. 2007) ........................................................................................ 6, 8, 11

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*
   373 F.3d 296 (2d Cir. 2004).......................................................................................................11

*Gotlin v. Lederman*
   367 F.Supp.2d 349 (E.D.N.Y. 2005) .........................................................................................11

*Hirsch v. Arthur Andersen & Co.*
   72 F.3d 1085 (2d Cir. 1995).......................................................................................................10

*In re Crazy Eddie Securities Litig.*
   802 F.Supp. 804 (E.D.N.Y. 1992) ...............................................................................................8

*In re Sharp Intern. Corp.*
   403 F.3d 43 (2d Cir. 2005)...........................................................................................................9

*Lippe v. Bairnco Corp.*
   249 F.Supp.2d 357 (S.D.N.Y. 2003)............................................................................................8

*Lippe v. Bairnco Corporation*
   230 B.R. 906 (S.D.N.Y. 1999)............................................................................................. 7, 10

*Papasan v. Allain*
   478 U.S. 265 (S.D.N.Y. 1986) ....................................................................................................6

*Patrick v. Allen*
   355 F.Supp.2d 704 (S.D.N.Y. 2005)............................................................................................5

*Reprosystem, B.V. v. SCM Corp.*
   727 F.2d 257 (2d Cir. 1984).......................................................................................................11

*Riverside Marketing, LLC v. Signaturecard, Inc.*
   425 F.Supp.2d 523 (S.D.N.Y. 2006) .......................................................................................... 11

*Universal Acupuncture Pain Svcs., P.C. v. State Farm Mut. Auto. Ins. Co.*
   196 F.Supp.2d 378 (S.D.N.Y. 2002) .......................................................................................... 11


State Cases

*Insurance Co. v. 563 Grand Medical, P.C.*
   798 N.Y.S.2d 345, 2004 WL 2008605 (N.Y. Sup., Aug 23, 2004) ............................................... 9

*RGH Liquidating Trust v. Deloitte & Touche LLP*
   No. 600057/2006, 13 Misc.3d 1219(A), 2006 WL 2872525 (N.Y. Sup. Sept. 27, 2006) ……...8, 9


State Statutes

*New York Debtor and Creditor Law* §§ 272, 273, 274, 275, 278 ...................................................... 6, 7

Defendants Francis Connolly and Joan Ramer, as co-executors of the Estate of Allen Thurgood (the "Estate of Thurgood"), by their attorneys, Haynes and Boone LLP, submit this memorandum of law in support of their motion to dismiss Counts Three and Four of the Complaint in this action.

**Preliminary Statement**

Plaintiff Robert L. Geltzer, as Chapter 7 Trustee for 1st Rochdale Cooperative Group Ltd. (the "Trustee"), commenced this action against 10 former officers and directors of the 1st Rochdale Cooperative Group, Ltd. ("1st Rochdale"), a bankrupt entity that was formed to provide affordable energy sources and communication services for cooperative housing in New York. The Trustee asserted eight claims for relief based on an alleged breach of fiduciary duty by 1st Rochdale's former officers and directors, and alleged fraudulent conveyances and unjust enrichment stemming from bonus payments made to certain former officers.

Through this motion, the Estate of Thurgood seeks dismissal of Counts Three and Four of the Complaint which assert claims for fraudulent conveyance and unjust enrichment based on $261,442 in bonus payments made to Mr. Thurgood, the former Vice President, Chief Executive Officer and Chairman of the Board of 1st Rochdale, over a five-year period (1999-2004).

The Complaint is bereft of allegations to establish *prima facie* claims for fraudulent conveyance or for unjust enrichment. The gravamen of the Trustee's claims for which dismissal is sought is that bonuses were paid to Mr. Thurgood at times when 1st Rochdale was either insolvent or had insufficient capital for its ongoing business operations. Alternatively, the Trustee claims that there was inadequate consideration for the bonus payments and therefore, Mr. Thurgood was unjustly enriched. Other than merely recounting the fact that Mr. Thurgood received bonus payments and that 1st Rochdale ultimately went bankrupt, there are no allegations to support the

notion that Mr. Thurgood failed to provide services for which he was entitled to receive bonus payments, or to otherwise challenge the amounts of the bonus payments received.  In fact, the Trustee concedes that, at relevant times, 1st Rochdale was sufficiently funded and/or generated sufficient cash flow to meet its expenses.

Moreover, the Court has already determined that the Trustee failed to allege facts sufficient to establish any "fraud, bad faith or self-dealing" by the directors and that bonus payments, including those to Mr. Thurgood, were "hardly a basis for concern."[1]

Accordingly, dismissal of Counts Three and Four of the Complaint is warranted.

## Facts Relevant to Motion

The facts relevant to this motion are derived from the Complaint, annexed to the Declaration of Jonathan D. Pressment, dated May 27, 2008 ("Pressment Decl."), as Exhibit A, from other undisputed facts and information derived from the pleadings and documents referenced therein, and from the Decision and Order of this Court dated January 17, 2008 (annexed to the Pressment Decl. as Exhibit B).

1st Rochdale was formed as a General Cooperative Corporation under New York law on or about August 27, 1997.  (Pressment Decl., Ex. A, ¶ 29)  At the time of incorporation, Mr. Thurgood was appointed Chief Executive Officer and was elected as Chairman of the Board of Directors. (Ex. A, ¶¶ 30, 38)

On or about March 31, 2005, 1st Rochdale filed a voluntary Chapter 7 petition pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, with the United States Bankruptcy Court for the Southern District of New York.  (Ex. A, ¶ 27)

---

[1] By decision dated January 17, 2008, the Court granted a motion to dismiss (made by seven director-defendants) Count Two of the Complaint which alleged a breach of fiduciary duty against the directors with respect to bonus payments made to former officers (including Mr. Thurgood).  Subsequently, the Trustee indicated that this claim would be dismissed against the Estate of Thurgood. (Pressment Decl., Ex. C)

As detailed in the Complaint, 1st Rochdale was organized to transact business relating to the provision of affordable energy sources and communication services for cooperative housing companies and condominiums in New York.  (Ex. A, ¶ 32)  The majority of 1st Rochdale's activities involved seeking financing for its operations and developing potential energy sources.  (Ex. A, ¶¶ 33-37, 40-63, 70-74, 79-84, 92-97, 100-104, and 107-109)

As noted in the Complaint, during the period of active operations, 1st Rochdale's officers and directors were able to achieve significant goals including:

(i) acquiring approximately $14 million in funding from the National Cooperative Service Corporation from 1999 to 2000  (Ex. A, ¶¶ 40-45, 55);

(ii) obtaining a certificate to operate as an Energy Service Company ("ESCO") in 1998, and engaging in the retail sale of power to individual clients as well as corporate clients, including American Express (Ex. A, ¶¶ 51-52);

(iii) engaging in activities, through 1st Rochdale's wholly-owned subsidiaries, aimed at constructing power plants in the Bronx and Brooklyn (Ex. A, ¶¶ 70-74);

(iv) the acquisition of requisite licenses and permits in connection with the planned development of power plants in New York City (Ex. A, ¶¶ 74-75);

(v) the organization and direction of a sustainable energy initiative in which consumers were able to purchase energy management services and on-site power generation services, and from which 1st Rochdale earned management fees (Ex. A, ¶¶ 100-104);

(vi) negotiating an agreement for the purchase of energy from Mirant Americas Energy Marketing LP in 2001, enabling 1st Rochdale to purchase energy for resale to consumers and retain its status as an ESCO (Ex. A, ¶¶ 107-109);

(vii) generating sufficient cash flow to meet expenses for 2002-2003 (Ex. A, ¶ 114);

    (viii)    forming a wholly-owned subsidiary, Twin Pines Fuels, LLC, which acquired and sold fuel to "large cooperatives and government" from 2000 to 2002 (Ex. A, ¶¶ 33-34, 57-59); and

    (ix)    purchasing property located at 1066 Zerega Avenue, Bronx, New York, later used to lure potential investors, including Sempra Energy Solutions Corporation in 2001, and Allied Investors Consortium, LLC in 2004, in connection with the development of a power plant. (Ex. A, ¶¶ 54, 72, 79-83, 92-97)

As support for its claims, the Trustee asserts that the "Defendants were fully aware" that 1st Rochdale was "unable to pay its obligations as they became due" and was "grossly undercapitalized for the business in which it was engaged." (Ex. A, ¶¶ 24-26).

Procedural History

On or about March 28, 2007, the Trustee commenced the instant action alleging breach of fiduciary duty by all defendants based on assertions of general mismanagement (Count One) and due to bonus payments to officers (Count Two); as well as claims against three officers (including Mr. Thurgood) related to the receipt of bonus payments (Counts Three through Eight).

On or about October 16, 2007, seven director-defendants moved to dismiss Counts One and Two. By decision dated January 17, 2008, the Court denied the director-defendants' motion with respect to Count One and granted the motion with respect to Count Two. In the decision, the Court noted that the Complaint lacked any allegations to establish "fraud, bad faith or self-dealing" on the part of the defendants, and reasoned, in pertinent part, that:

> Count Two merely alleges that the three former officers were paid incentives and bonuses when Rochdale was insolvent, while Rochdale was suffering losses. One of the officers, Johnson, is alleged to have received only $16,358 in incentives and bonuses over a five-year period. This amount is so low it evidences nothing. *The amounts for Thurgood ($261,442)* and Wortham ($204,555),

> *while higher, are hardly a basis for concern, as they were paid over a five-year period as well*.

(Ex. B, p. 5 (citations omitted)) (emphasis added)

Counts Three and Four have been asserted solely against the Estate of Thurgood and seek recovery of bonus payments made to Mr. Thurgood during the period 1999 through 2004. Between 1999 and 2004, Mr. Thurgood allegedly received bonus payments totaling $261,442.[2] Count Three asserts a claim for avoidance and recovery of the bonus payments as fraudulent conveyances pursuant to 11 U.S.C. §§ 544(b) and 550(a) and under New York's Debtor and Creditor Law (§§ 273, 274, 275, 278). Count Four asserts a claim for unjust enrichment.

Against this backdrop, the Estate of Thurgood moves to dismiss Counts Three and Four of the Complaint.

### Argument

### I

### STANDARDS APPLICABLE TO THE INSTANT MOTION

Pursuant to Fed. R. Civ. P. 12(b)(6), dismissal is warranted "where [the complaint] fails to plead enough facts to state a claim to relief that is plausible on its face." *Arista Records LLC v. Lime Group LLC*, 532 F.Supp.2d 556, 566 (S.D.N.Y. 2007) (internal quotes omitted). In resolving such a motion, "a court's consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to such matters of which judicial notice may be taken." *Patrick v. Allen*, 355 F.Supp.2d 704, 709 (S.D.N.Y. 2005) (*quoting Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

---

[2] These payments are broken down as follows: $25,000 (1999-2000), $125,000 (2000-2001), $62,459 (2002-2003), and $48,983 (2003-2004). (Ex. A, ¶¶ 123-126)

While factual allegations of a complaint are to be accepted as true, "a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (2007) (internal quotes and alteration omitted) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986) (the court is "not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006) (even under the liberal standard of Rule 12(b)(6), "bald assertions and conclusions of law will not suffice" (internal quotation marks omitted)).

Thus, the complaint must contain sufficient factual allegations to "raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965, 1974 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed").

## II

## **DISMISSAL OF COUNT THREE IS WARRANTED**

Count Three of the Complaint asserts a claim against the Estate of Thurgood for fraudulent conveyance related to the bonus payments pursuant to New York Debtor and Creditor Law ("NYDCL").[3]

---

3   The trustee seeks to avoid and recover the Thurgood bonus payments pursuant to New York Debtor and Creditor Law ("NYDCL") §§ 273, 274, 275 and 278 as made applicable by 11 U.S.C. §§ 544(b) and 550(a). (Ex. A, ¶¶ 154, 155)  Although the Trustee cites to NYDCL § 278 as a basis for the claim, the Trustee fails to assert any of the requisite elements for a claim pursuant to NYDCL § 278, which provides:
    1.   Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived immediately or mediately from such purchaser,
       a.   Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
       b.   Disregard the conveyance and attach or levy execution upon the property conveyed.
    2.   A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

Avoiding a transfer as constructively fraudulent, requires a showing that the transfer was made: (1) without fair consideration (NYDCL § 272); *and* (2) at a time when the transferor was either insolvent or thereby rendered insolvent (NYDCL § 273); *or* engaged in or about to engage in a business transaction for which its remaining property constituted unreasonably small capital (NYDCL § 274); *or* intended or believed that it would incur debts beyond its ability to pay as the debts (NYDCL § 275). *See* N.Y. Debtor and Creditor Law §§ 272,[4] 273,[5] 274,[6] 275.[7]

Here, the Trustee asserts -- absent any detail -- that each of the bonus payments to Mr. Thurgood were constructively fraudulent.[8] Other than merely parroting the elements for a constructively fraudulent conveyance and recounting the fact that Mr. Thurgood received bonus

---

[4] Section 272 of the N.Y. Debtor and Creditor Law, provides:
  Fair consideration is given for property, or obligation,
  a. When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
  b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compare with the value of the property, or obligation obtained."

[5] Section 273 of the N.Y. Debtor and Creditor Law, provides:
  Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

[6] Section 274 of the N.Y. Debtor and Creditor Law, provides:
  Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

[7] Section 275 of the N.Y. Debtor and Creditor Law, provides:
  Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

[8] The Trustee makes no effort to distinguish the different theories upon which he is proceeding under NYDCL §§ 273-275 and § 278. Instead, the Trustee lumps the elements of each of these claims together which is, in and of itself, a basis for dismissal. *See, e.g., Lippe v. Bairnco Corp.*, 230 B.R. 906, 915 (S.D.N.Y. 1999) (claims under §§ 273-278 of the NYDCL were insufficiently pled since, *inter alia*, §§ 273-278 "set forth different theories with different requirements and plaintiffs lump the sections together without making any real effort to allege how the requirements are met.").

payments as part of his compensation, the Complaint is without any allegations to support a theory that Mr. Thurgood failed to provide services which serve as consideration for the bonus payments or to otherwise challenge the value of the services Mr. Thurgood provided.  *See, e.g.*, *RGH Liquidating Trust v. Deloitte & Touche LLP*, No. 600057/2006, 13 Misc.3d 1219(A), 2006 WL 2872525, *4 (N.Y. Sup. Sept. 27, 2006) (dismissing avoidance claim for failure to adequately plead lack of fair consideration where complaint contained no allegation that defendants failed to perform the services for which they were paid), *aff'd*, 851 N.Y.S.2d at 32; *Twombly*, 127 S. Ct. at 1964-1965 (a party's "obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action will not do").

      The bald allegation that bonus payments made to Mr. Thurgood were without fair consideration is, on its face, without merit.  It is well-settled that an exchange is made for fair consideration if it is made in good faith (by the transferee) and for "an amount that is not 'disproportionately small' as compared to the value of the transferred property." *Lippe v. Bairnco Corp.*, 249 F.Supp.2d 357, 376-377 (S.D.N.Y. 2003); *see, e.g.*, *In re Crazy Eddie Securities Litig.*, 802 F.Supp. 804, 815-817 (E.D.N.Y. 1992) (dismissing fraudulent conveyance claim under NYDCL §§ 272-275, as allegations that the debtor received no benefit from professional services rendered did not suffice to establish that transfer lacked fair consideration).

      Here, as already determined by the Court, there no allegations that the officers and directors acted in bad faith.  Instead, the Trustee rests his fraudulent conveyance claim on the perceived inequities of bonus payments to Mr. Thurgood without any allegations to support what such inequities may be.

      Furthermore, any suggestion that the value of Mr. Thurgood's services was "disproportionately small" to the bonuses he received, disregards the Court's determination that

such bonuses were "hardly a basis for concern." Indeed, over a *five year period*, Mr. Thurgood, the highest ranking officer and director of the company, received *a total of $261,000* in bonus payments.[9]

Moreover, as noted above, the Complaint is replete with details of positive acts or attempted acts taken by Mr. Thurgood (and others) to develop and sustain 1st Rochdale's operations. That such actions did not ultimately result in the company's long-term financial success, does not negate the fact that services were performed for which compensation was deserved. *See, e.g.*, *RGH Liquidating Trust v. Deloitte & Touche LLP*, No. 2006 WL 2872525, at *4 (granting motion to dismiss fraudulent conveyance claim where the complaint failed to allege that defendants did not perform services for which they were paid, and merely alleged that the services were not performed properly), *aff'd*, 47 A.D.3d 516, 851 N.Y.S.2d 31, 32 (1st Dep't 2008); *see also In re Sharp Intern. Corp.*, 403 F.3d 43, 55-56 (2d Cir. 2005) (affirming dismissal for failure to state a claim for fraudulent conveyance because no inference could be drawn that payment discharging antecedent debt was received in bad faith; N.Y. fraudulent conveyance law "is primarily concerned with transactions that shield company assets from creditors, not the manner in which specific debts were created"); *Insurance Co. v. 563 Grand Medical, P.C.*, 4 Misc.3d 1020(A), 798 N.Y.S.2d 345, 2004 WL 2008605, *5 (N.Y. Sup., Aug 23, 2004) ("[a]llowing plaintiff to disgorge the fees paid for these services would arguably unjustly enrich plaintiff and . . . public policy mitigates most strongly in favor of proper compensation for services rendered").

The Trustee also alleges, in conclusory fashion, that 1st Rochdale lacked sufficient funds to make the challenged bonus payments to Mr. Thurgood. Such claims are flatly contradicted by allegations within the Complaint that 1st Rochdale actually received funding or earned revenues in

---

[9] Mr. Thurgood did not receive a bonus for the April 1, 2001 through March 31, 2002 fiscal year.

each of the years that Mr. Thurgood received a bonus (*see* Ex. A, ¶¶ 40-45, 51-52, 55, 70-75, 100-104, 107-109, 114).  It is well-settled that general "conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint."  *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); *see also Lippe v. Bairnco*, 230 B.R. at 915 (conclusory allegation of required element was insufficient to state a claim when contradicted by more specific allegations in the complaint).

     The Court's analysis in *Lippe v. Bairnco Corporation*, 230 B.R. 906 (1999), is instructive. *Lippe* involved an action brought by the trustees of a creditors' trust seeking to recover alleged fraudulent transfers.  The Court determined that the fraudulent transfer claims were insufficiently pled where, as here, the "plaintiffs lump[ed] the sections [of the NYDCL] together without making any real effort to allege how the requirements are met."  *Lippe*, 230 B.R. at 915.  In addition, the Court concluded that, as is the situation herein, the complaint's "conclusory" allegations, with respect to the bankrupt entity's purported insolvency, were contradicted by more specific allegations of the complaint.  *Id*.

     Accordingly, Count Three of the Complaint should be dismissed.

### III

### DISMISSAL OF COUNT FOUR IS WARRANTED

     Count Four of the Complaint asserts a claim against the Estate of Thurgood for unjust enrichment based on the same facts discussed above.  On this claim, the Trustee contends that 1st Rochdale "did not receive any benefit or received less than reasonably equivalent value" for the bonus payments to Mr. Thurgood, and that he "unfairly benefited by wrongfully receiving and retaining the benefits of the [bonus payments] without providing adequate consideration . . . ." (Ex. A, ¶¶ 157-159).

Under New York law, a *prima facie* claim for unjust enrichment requires a showing that: (1) defendant benefited; (2) at plaintiff's expense; and (3) it would be against equity and good conscience for defendant to retain the benefit received. *See, e.g., Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 263 (2d Cir. 1984) ("a plaintiff seeking an equitable recovery based on unjust enrichment must first show that a benefit was conferred upon the defendant, and then show that as between the two parties, enrichment of the defendant was unjust"); *Riverside Marketing, LLC v. Signaturecard, Inc.*, 425 F.Supp.2d 523, 537 (S.D.N.Y. 2006) ("[t]o state a claim for unjust enrichment, [plaintiff] must allege that [it] conferred a benefit upon [defendant] and that [defendant] will obtain such benefit without adequately compensating plaintiff therefor") (internal quotation marks omitted).

Once again, the Complaint is devoid of factual allegations giving rise to a *prima facie* claim of unjust enrichment. Aside from merely reciting the elements of an unjust enrichment claim, there are no allegations upon which a plausible claim is articulated. *See, e.g., Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d at 344 (even under the liberal standard of Rule 12(b)(6), "bald assertions and conclusions of law will not suffice"); *Twombly*, 127 S. Ct. at 1965 (to survive a motion to dismiss, the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and a "recitation of the elements of a cause of action will not do"); *Universal Acupuncture Pain Svcs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F.Supp.2d 378, 387-388 (S.D.N.Y. 2002) (dismissing counterclaim for unjust enrichment claim where "good conscience entitle[d plaintiff] to retain the money paid for services rendered" because "while [t]he law may at times refuse to aid a wrongdoer in getting that which good conscience permits him to receive[,] it will not for that reason aid another in taking away from him that which good conscience entitles him to retain); *Gotlin v. Lederman*, 367 F.Supp.2d 349, 360 (E.D.N.Y. 2005) (dismissing unjust

enrichment claim for failure to state how equity and good conscience required restitution where "defendants rendered the service for which plaintiffs paid," and claim was reformulation of and encompassed by allegations in other causes of action in the complaint).

Consequently, Count Four should be dismissed.

## Conclusion

Based on the foregoing, the Estate of Thurgood's motion to dismiss Counts Three and Four of the Complaint should be granted in its entirety, together with such other and further relief as this Court may deem just and proper.

Dated: May 27, 2008

> HAYNES and BOONE, LLP
> *Attorneys for Defendants Francis Connolly
> and Joan Ramer, as Co-Executors of
> the Estate of Allen Thurgood*
>
> By: _____
> Kenneth J. Rubinstein (KR-1410)
> Jonathan D. Pressment (JP-1819)
> April L. Neave (AN-3899)
> 153 East 53rd Street, Suite 4900
> New York, New York 10022
> (212) 659-7300