BRYAN CAVE LLP
1290 Avenue of the Americas
New York, New York  10104
(212) 541-2000
Robert A. Wolf (RW 3419)
Andrea K. Fisher (AF 0150)
rawolf@bryancave.com
*General Counsel to Robert L. Geltzer, the Chapter 7 Trustee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --  x

In re:                              :

                                   :     **Bankruptcy Proceeding Chapter 7**

1ST ROCHDALE COOPERATIVE GROUP,   LTD. :     **Case No. 05-12086 (PCB)**

                                 :

                  Debtor          :

-- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --  x

ROBERT L. GELTZER, as Chapter 7 Trustee for   :

1ST ROCHDALE COOPERATIVE GROUP, LTD.,   :

                                 :

                Plaintiff,      :

                                 :

     v.                                :

                                 :

GARY ALTMAN, RHODA BROWN, "JOHN DOE :
1" AS EXECUTOR OR ADMINISTRATOR OF   :
THE ESTATE OF GEORGE CRETHAN, SAUL  :
MILDWORM, JACK RASKIN, DAVID SMITH,  :     **O7 CV 7852 (DC)**
"JOHN DOE 2" AS EXECUTOR OR          :
ADMINISTRATOR OF THE ESTATE OF ALLEN :
THURGOOD, EDWARD YAKER, GREGORY   :
WORTHAM and DAVID L. JOHNSON,      :

                                 :

                Defendants.     :

                                 :

                                 :

-- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --  X

**PLAINTIFF-TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION**
**OF DEFENDANTS FRANCIS CONNOLLY AND JOAN RAMER, AS CO-EXECUTORS**
**OF THE ESTATE OF ALLEN THURGOOD, TO DISMISS**
**<u>COUNTS THREE AND FOUR OF THE COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .........................................................................1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND .............................................3

    A.    The Background of the Debtor ............................................................3

    B.    Financing from National Cooperative Service Corporation  Leads 1st Rochdale into Insolvency...........................................................5

    C.    The Bonus Payments to Thurgood...........................................................6

    D.    The Former Directors' Motion to Dismiss.............................................7

ARGUMENT

POINT I    COUNTS THREE AND FOUR OF THE TRUSTEE'S COMPLAINT STATE VALID CLAIMS FOR RELIEF AND THEREFORE THE THURGOOD ESTATE HAS FAILED TO MEET THE STRICT CRITERIA NECESSARY TO WARRANT A DISMISSAL OF THOSE CLAIMS UNDER RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE .............................................................8

POINT II    THE TRUSTEE HAS SUFFICIENTLY PLED A CLAIM FOR CONSTRUCTIVELY FRAUDULENT CONVEYANCE REGARDING THURGOOD'S RECEIPT OF THE BONUS PAYMENTS PURSUANT TO § 544(b)(1) OF THE BANKRUPTCY CODE AND §§ 273, 274, 275 AND 278 OF THE NEW YORK DEBTOR CREDITOR LAW .........................11

POINT III    THE TRUSTEE HAS SUFFICIENTLY PLED THE REQUISITE ELEMENTS OF AN UNJUST ENRICHMENT CLAIM....................................21

CONCLUSION.........................................................................................24

C046038/0189460/1486130.9

# TABLE OF AUTHORITIES

## FEDERAL CASES

PAGE(S)

A. Brod, Inc. v. SK&I Co., L.L.C., 998 F. Supp. 314 (S.D.N.Y. 1998)........................................21

Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338 (2d Cir. 2006)...............................22

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) ....................................................................10

Brass v. American Film Techs., Inc., 987 F.2d 142 (2d Cir. 1993).................................................9

Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296 (2d Cir. 2004) .............................21

Carnivale Bag Co. v. Slide-Rite Mfg. Corp., 395 F. Supp. 287 (S.D.N.Y. 1975).........................9

In re Checkmate Stereo & Elecs., Ltd.,
    9 B.R. 585 (Bankr. E.D.N.Y. 1982), aff'd, 21 B.R. 402 (E.D.N.Y. 1982) .............................13

Conley v. Gibson, 355 U.S. 41 (1957)......................................................................................9, 16

Contempri Homes, Inc. v. Ameritik Real Estate & Dev. Corp.,
    No. 88 Civ. 8408 (KMW), 1989 WL 153030 (S.D.N.Y. Dec. 11, 1989)...............................17

Counihan v. Allstate Ins. Co., 194 F.3d 357 (2d Cir. 1999)....................................................21, 22

Crazy Eddie, Inc. v. Antar, (In re Crazy Eddie, Inc.),
    No. 89B11313-11457 (TLB), 1992 Bankr. LEXIS 2018
    (Bankr. S.D.N.Y. Dec. 17, 1992)...............................................................................................8

In re Crazy Eddie Secs. Litig., 802 F. Supp. 804 (E.D.N.Y. 1992).............................................20

Dubai Islamic Bank v. Citibank, N.A., 126 F. Supp. 2d 659, 669 (S.D.N.Y. 2000) ....................22

Dunbar v. Commissioner of Internal Revenue, 119 F.2d 367 (7th Cir. 1941) .............................17

In re Everfresh Beverages, Inc., 238 B.R. 558 (Bankr. S.D.N.Y. 1999) ................................10, 23

Gotlin v. Lederman, 367 F. Supp. 2d 349 (E.D.N.Y. 2005)..........................................................23

Holahan v. Henderson, 277 F. Supp. 890 (W.D. La. 1967),
    aff'd, 394 F.2d 177 (5th Cir. 1968) ..........................................................................................13

In re Centennial Textiles, Inc., 220 B.R. 165, 172 (Bankr. S.D.N.Y. 1998) ...............................13

C046038/0189460/1486130.9

Le Cafe Creme, Ltd. v. Le Roux (In re Le Cafe Creme, Ltd.),
    244 B.R. 221, 241 (Bankr. S.D.N.Y. 2000) .............................................................13

Geltzer v. Artists Mktg. Corp. (In re Cassandra Group),
    338 B.R. 583, 589(Bankr. S.D.N.Y. 2006)..............................................................21

Geltzer v. Crossroads Tabernacle (In re Rivera),
    214 B.R. 101 (Bankr. S.D.N.Y. 1997).......................................................................9

Glidepath Holding B.V. v. Spherion Corp.,
    No. 94 Civ. 9745 (KMK), 2007 U.S. Dist. LEXIS 54889 (S.D.N.Y. July 25, 2007)..............22

Leslie Fay Cos. v. Corporate Prop. Assocs. 3 (In re Leslie Fay Cos.),
    166 B.R. 802 (Bankr. S.D.N.Y. 1994).......................................................................9

Lippe v. Bairnco, 230 B.R. 906 (S.D.N.Y. 1999).........................................................20

Lippe v. Bairnco, 249 F. Supp. 2d 357 (S.D.N.Y. 2003)................................................20

Mills v. Everest Reinsurance Co., 410 F. Supp. 243 (S.D.N.Y. 2006)..........................10

Myers v. United States, 162 F. Supp. 913 (N.D.N.Y. 1958) ..........................................9

Nisselson v. Drew Ind. (In re White Metal Rolling & Stamping Corp.),
    222 B.R. 417 (Bankr. S.D.N.Y. 1998)......................................................................9

Patane v. Clark, 508 F.3d 106 (2d Cir. 2007) .............................................................10

Raine v. Lorimar Products, Inc., et al., 71 B.R. 450 (S.D.N.Y. 1987) .......................9, 13

Reed Int'l Trading Corp. v. Donau Bank AG, 866 F. Supp. 750 (S.D.N.Y. 1994) .......21

In re Sharp International Corp., 403 F.3d 43 (2d Cir. 2005) ........................................11

Steinmetz v. Toyota Motor Credit Corp., 963 F. Supp. 1294 (E.D.N.Y. 1997) ...........21

Thomson Kernaghan & Co. v. Global Intellicom, Inc.,
    No. 99 Civ. 3005 (DLC), 99 Civ. 3015  2000 WL. 640653
    (S.D.N.Y. May 17, 2000)......................................................................................16

In re Twin Pines Fuel, Corp., Case No. 05-12088 (PCB)...............................................3

Universal Acupuncture Pain Services, P.C. v. State Farm Mutual
    Automobile Insurance Co., 196 F. Supp. 2d 378 (S.D.N.Y. 2002) ..........................21

Walker Distrib. Co. v. Lucky Lager Brewing Co., 323 F.2d 1 (9th Cir. 1963)...............9

C046038/0189460/1486130.9

## STATE CASES

AG Capital Funding Partners, L.P. v. State St.,
   5 N.Y.3d 582, 808 N.Y.S.2d 573 (2005) ................................................................9

## FEDERAL STATUTES

11 U.S.C. § 101 et seq (2004) ....................................................................................1

11 U.S.C. § 101(32)(A) (2004) ................................................................................15

11 U.S.C. § 544(b) (2004) ..........................................................................................1

11 U.S.C. § 544(b)(1) (2004) ...................................................................................11

Fed. R. Civ. P. 8(a) ...............................................................................................8, 10

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 8

## STATE STATUTES

N.Y. Debt. & Cred. § 271 (2001) ............................................................................15

N.Y. Debt. & Cred. § 272 (2001) ............................................................................11

N.Y. Debt. & Cred. § 273 (2001) ..........................................................1, 11, 12, 15

N.Y. Debt. & Cred. § 274 (2001) ..................................................1, 11, 12, 17, 18

N.Y. Debt. & Cred. § 275 (2001) ......................................................1, 11, 12, 17

N.Y. Debt. & Cred. § 278 (2001) ..............................................................1, 11, 19

N.Y. Debt. & Cred. § 278(1)(a) (2001) ..................................................................19

**PRELIMINARY STATEMENT**

Plaintiff Robert L. Geltzer, the Chapter 7 Trustee (the "Trustee" or "Plaintiff") of the above-captioned debtor, 1st Rochdale Cooperative Group, Ltd. ("1st Rochdale" or the "Debtor"), by his General Counsel, Bryan Cave LLP, hereby submits this Memorandum of Law in opposition to the motion (the "Dismissal Motion") of Defendants Francis Connolly and Joan Ramer, as co-executors of the Estate of Allen Thurgood (collectively, the "Thurgood Estate"), seeking an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), dismissing Counts Three and Four of the Trustee's complaint (the "Complaint") in this adversary proceeding (the "Adversary"). Those Counts assert, respectively, a claim for avoidance and recovery of constructively fraudulent conveyances pursuant to Section 544(b) under Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Sections 273, 274, 275 and 278 of the New York Debtor and Creditor Law ("DCL"), and for unjust enrichment under the common law of the State of New York, with respect to bonus/incentive payments (the "Bonus Payments") paid by 1st Rochdale to Allen Thurgood ("Thurgood"), the Chairman and Chief Executive Officer ("CEO") of 1st Rochdale.

As set forth in the opening paragraph of the Complaint, the Trustee's claims asserted therein, including Counts Three and Four, are supported by information that has been obtained from books and records of the Debtor which the Trustee has been able to procure thus far, without the benefit of any discovery in this Adversary yet being taken of any of the named defendants, or of any third parties.

As alleged in the Complaint, Thurgood received the Bonus Payments over a period of time when 1st Rochdale was already severely undercapitalized and insolvent, its assets far exceeding its liabilities, and while even after its major source of financing was being cut off.

1

Thurgood received the Bonus Payments, which aggregated in excess of $261,000.00, including one payment of $125,000.00, while at the same time he was directing the diversion of millions of dollars from 1st Rochdale's more viable line of business to an ill-conceived, ill-fated, speculative plan to build a new power plant facility in the Bronx (the "Power Plant Project"), as a result of which 1st Rochdale was sent into deeper insolvency.

Moreover, as further discussed in the Argument Section of this brief, infra, this Court's prior dismissal of Count Two of the Complaint, which alleged that all former directors of 1st Rochdale had breached their fiduciary duties to 1st Rochdale, by awarding the Bonus Payments to Thurgood and two other officers, has no controlling relevance to this Dismissal Motion. In dismissing that Count as against certain of the former directors, this Court found that there was no allegation therein of "fraud, bad faith, self-dealing, lack of due care, or lack of reasonable diligence" on the part of those moving parties so as to make the former director's decisions to award the bonuses actionable as breaches of fiduciary duty. In contrast, neither Count Three nor Count Four require a showing of actual fraud, bad faith, self-dealing or the like that were found absent concerning Count Two.

The key allegations in the Complaint that serve as the factual predicates for the Trustee's claims against the Thurgood Estate, set forth in Counts Three and Four – – which allegations, pursuant to the case law cited in Point I, infra, must be accepted as true in the context of the subject Dismissal Motion- - are set forth below.

2

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.    The Background of the Debtor

The Debtor, 1st Rochdale, was a New York corporation with a principal place of business located at 465 Grand Street, New York, New York 10002.  (Complaint ¶ 3.)[1]  It was formed as a general cooperative corporation on or about August 27, 1997, under the laws of the State of New York.  (Complaint ¶ 29.)  At the time of 1st Rochdale's incorporation, and continuing until the filing of 1st Rochdale's bankruptcy petition more than seven (7) years later in March, 2005, Thurgood served as 1st Rochdale's CEO and Vice President and was Chairman of 1st Rochdale's Board of Directors.  (Complaint ¶ 12.)

1st Rochdale was essentially set up to purchase sources of energy and sell that energy to its members, which were for the most part cooperative housing companies and condominiums.  In addition, 1st Rochdale would purchase and resell phone, cable, satellite broadcast, internet, home security and/or medical alert services and/or any and all other similar communications services.  (Complaint ¶ 32.)

After its formation, 1st Rochdale formed seven (7) wholly-owned subsidiaries, namely Twin Pines Fuels, LLC ("TPF LLC"), Twin Pines Fuels Corp. ("Twin Pines")[2], Gotham Power Development, LLC ("GPD"), Gotham Power Corporation, Gotham Power Company

---

[1] A copy of the Complaint has been annexed to the Thurgood Estate's Dismissal Motion papers as Exhibit A.

[2]     Twin Pines has itself been a debtor in bankruptcy since March 31, 2005, in a Chapter 7 case pending in the Bankruptcy Court of this District under the case caption, In re Twin Pines Fuel, Corp., Case No. 05-12088(PCB).  The Trustee is also the Chapter 7 Trustee of Twin Pines.

C046038/0189460/1486130.9

LLC, Gotham Power Zerega, LLC and Apple Juice Power, LLC.[3] (Complaint ¶ 33.)  TPF LLC was formed primarily to engage in the fuel oil distribution business.  (Complaint ¶ 35.)  Twin Pines was formed primarily to own real property located at 1066 Zerega Avenue, Bronx, New York (the "Zerega Avenue Property").  (Complaint ¶ 36.)  GPD, Gotham Power Corporation, Gotham Power Company LLC, Gotham Power Zerega, LLC and Apple Juice Power, LLC were formed primarily for the aforementioned Power Plant Project.  (Complaint ¶ 37.)

On March 31, 2005 (the "Petition Date"), 1st Rochdale filed a voluntary Chapter 7 petition (the "Petition") under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  (Complaint ¶27.)  The Trustee was appointed interim trustee on or about March 23, 2005 pursuant to Section 701 of the Bankruptcy Code, subsequently became permanent Trustee pursuant to Section 702(d) of the Bankruptcy Code and by operation of law, and now is qualified and acting as Trustee.  (Complaint ¶ 28.)

---

[3]     Upon information and belief, other than Twin Pines, none of the other subsidiaries of 1st Rochdale have filed for bankruptcy.

C046038/0189460/1486130.9

**B.     Financing from National Cooperative Service Corporation Leads 1st Rochdale into Insolvency**

Commencing in the beginning of 1999, 1st Rochdale and its wholly owned subsidiaries obtained multi-million dollars in loans and credit support from National Cooperative Service Corporation ("NCSC").  NCSC was a privately funded, member-owned cooperative that provided electrical cooperatives with specialized financing services.  (Complaint ¶ 41.)  Through direct loans and revolving lines of credit, which were both cross-guaranteed and cross-collateralized in favor of NCSC by 1st Rochdale, 1st Rochdale and its subsidiaries TPF LLC and Twin Pines were indebted to NCSC by the year 2000 in an amount exceeding $23 million. (Complaint ¶¶ 43-46.)

At some point in 2000, NCSC stopped extending new credit to 1st Rochdale and its wholly-owned subsidiaries.  (Complaint ¶ 47.)  During the period following the time that NCSC stopped extending credit, 1st Rochdale requested new lines of credit from NCSC on several occasions, under different formats and plans, but it appears that every request was denied.  (Complaint ¶ 48.)

As also alleged in the Complaint, during the period January 1999 through the Petition Date, 1st Rochdale suffered losses in excess of $15 million, exclusive of the additional losses suffered by its wholly-owned subsidiaries.  (Complaint ¶ 115.)  The minutes of the board meetings of 1st Rochdale indicate that Thurgood was well aware of the Company's dire financial state.  (Complaint ¶ 116.)  Even after early 2000, when NCSC withdrew its financial support to 1st Rochdale, at a time when 1st Rochdale was indebted to NCSC in an amount totaling over $23,000,000 in loans, 1st Rochdale incurred millions of dollars of legal and professional fees for the proposed Power Plant Project, which project never came to fruition. (Complaint ¶¶ 43-45, ¶ 118.)

C046038/0189460/1486130.9

C.    **The Bonus Payments to Thurgood**

During the period commencing April 1, 1999 through March 31, 2004, during which time 1st Rochdale was continually in substantial debt to the NCSC and experiencing dire financial straits and in deepening insolvency, Thurgood received Bonus Payments in an amount totaling $261,442.00, as set forth in the following chart. (Complaint ¶¶ 123-126).

| Date | Amount |
|---|---|
| 4/01/1999-3/31/2000 | $25,000.00 |
| 4/01/2000-3/31/2001 | $125,000.00 |
| 4/01/2002-3/31/2003 | $62,459.00 |
| 4/01/2003-3/31/2004 | $48,983.00 |
| **TOTAL** | **$261,442.00** |

Notwithstanding his obvious awareness, in his capacity of Chairman and CEO of 1st Rochdale, that the Company was in dire financial straits, Thurgood nevertheless received Bonus Payments from 1st Rochdale for four of the five fiscal years that pre-dated 1st Rochdale's bankruptcy filing.  These Bonus Payments were in addition to Thurgood's regular salary and other benefits.  (Complaint ¶¶ 121-137.)

The Trustee has not seen, nor is he aware, of any minutes of 1st Rochdale Board meetings setting forth a basis for, or for that matter, making any mention whatsoever of any justification for, the receipt by Thurgood, a major insider of 1st Rochdale, of these substantial Bonus Payments, at a time when 1st Rochdale was woefully insolvent, as its liabilities exceeded its assets (Complaint ¶ 23), the Company was unable to pay its obligations as they became due (Complaint ¶ 24), and it was grossly undercapitalized for the business in which it was engaged (Complaint at ¶ 25.)  Thurgood still received these Bonus Payments even while the Debtor's

6

financing from NCSC had been cut off and the financial resources of 1st Rochdale were being

directed toward the speculative Power Plant Project, leaving 1st Rochdale without adequate

financial resources, and causing 1st Rochdale and its subsidiaries to incur multi-million dollar

losses, which in turn drove 1st Rochdale deeper into insolvency and ultimately caused 1st

Rochdale's bankruptcy filing.  (Complaint ¶ 120.)

Thus, as will be further discussed in the Argument Section of this brief, <u>infra</u>, the

Trustee has alleged more than sufficient facts to support his claim that the Bonus Payments made

by 1st Rochdale to Thurgood constituted constructively fraudulent conveyances, and that

Thurgood was unjustly enriched thereby.  (Complaint ¶¶ 123-126.)

### D.    <u>The Former Directors' Motion to Dismiss</u>.

On or about October 16, 2007, Defendants Gary Altman (Altman"), Rhoda Brown

("Brown"), The Estate of George Crethan ("Crethan"), Saul Mildworm ("Mildworm"), Jack

Raskin ("Raskin"), David Smith ("Smith") and Edward Yaker ("Yaker") (collectively, the

"Former Directors") made a motion seeking an order, pursuant to FRCP 12(b)(6) and Rule

7012(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), dismissing

Counts One and Two of the Trustee's Complaint in the Adversary, which asserted breaches of

fiduciary duty on the part of the Former Directors.  On January 17, 2008, in a memorandum

decision (the "January 17th Decision"), this Court denied the Former Directors' motion with

respect to Count One of the Complaint, which asserted claims for breach of fiduciary duty with

respect to the allegedly grossly negligent manner in which the Former Directors operated 1st

Rochdale, and granted the motion with respect to Count Two of the Complaint, which asserted a

claim for breach of fiduciary duty with respect to the Former Directors' authorization of bonus

payments to Thurgood, Gregory Wortham and David Johnson.

C046038/0189460/1486130.9

In light of the January 17th Decision dismissing Count Two, the Trustee has discontinued Count Two as against the Thurgood Estate, but the Thurgood Estate has not made a motion to dismiss Count One, which remains pending against the Thurgood Estate, as well as against the Former Directors. Discovery has been noticed by the Trustee, but has not yet been concluded with respect to any of the Counts remaining against the Thurgood Estate, including those that are the subject of the instant Dismissal Motion.

## ARGUMENT

## POINT I

**COUNTS THREE AND FOUR OF THE TRUSTEE'S COMPLAINT STATE VALID CLAIMS FOR RELIEF AND THEREFORE THE THURGOOD ESTATE HAS FAILED TO MEET THE STRICT CRITERIA NECESSARY TO WARRANT A DISMISSAL OF THOSE CLAIMS UNDER RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

FRCP 8(a), made applicable to this adversary proceeding by Bankruptcy Rule 7008, provides that "a pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . ."

FRCP 12(b) provides, in relevant part, as follows:

(b) . . . Every defense, in law or fact, to a claim for relief in any pleading whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in a responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion . . . (6) to dismiss failure of the pleading to state a claim upon which relief can be granted . . .

A motion under FRCP 12(b)(6) tests the legal sufficiency of a complaint to ensure that it meets with the requirements of FRCP 8(a), which requires a short and plain statement that the pleader is entitled to relief. See Crazy Eddie, Inc. v. Antar, (In re Crazy Eddie, Inc.), No. 89B11313–11457 (TLB), 1992 Bankr. LEXIS 2018, at *10 (Bankr. S.D.N.Y. Dec. 17, 1992). A motion to dismiss a complaint must be denied unless it appears beyond doubt that the plaintiff

C046038/0189460/1486130.9

can prove no set of facts in support of his claim which would entitle him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When reviewing a motion to dismiss, the court must take all well plead factual allegations as true, and such allegations must be viewed in a light most favorable to the plaintiff. See Geltzer v. Crossroads Tabernacle (In re Rivera), 214 B.R. 101, 104 (Bankr. S.D.N.Y. 1997). Accordingly, doubt as to a party's ability to prove his case is not a sufficient reason to dismiss his complaint for failure to state a claim upon which relief can be granted. See Raine v. Lorimar Prods., Inc., et al., 71 B.R. 450, 453 (S.D.N.Y. 1987) (citing Walker Distrib. Co. v. Lucky Lager Brewing Co., 323 F.2d 1, 4 (9th Cir. 1963); Carnivale Bag Co. v. Slide-Rite Mfg. Corp., 395 F. Supp. 287, 291 (S.D.N.Y. 1975); Myers v. United States, 162 F. Supp. 913, 914 (N.D.N.Y. 1958)).  Further, any deficiencies in the complaint may be corrected by supplemental pleadings and any other evidence. See AG Capital Funding Partners, L.P. v. State St., 5 N.Y.3d 582, 808 N.Y.S.2d 573 (2005).  Moreover, "in addition to the complaint itself, the court may consider the contents of any documents attached to the complaint or incorporated by reference, matters as to which it can take judicial notice, and documents in the non-moving party's possession or which it knew of or relied on in connection with its complaint."  Nisselson v. Drew Ind. (In re White Metal Rolling and Stamping Corp.), 222 B.R. 417, 423 (Bankr. S.D.N.Y. 1998); Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Leslie Fay Cos. v. Corporate Property Assocs. 3 (In re Leslie Fay Cos.), 166 B.R. 802, 807 (Bankr. S.D.N.Y. 1994)

Additionally, as the Trustee's claim in Count Three is based on constructive fraud, not intentional fraud, and thus it is not subject to the heightened pleading requirement of FRCP 9(b), the Trustee, pursuant to FRCP 8(a), need only set forth a …"Short and plain

9

statement of the claim showing that the pleader is entitled to relief…"  FRCP 8(a).  <u>Mills v. Everest Reinsurance Co.</u>, 410 F. Supp. 2d 243, 254 (S.D.N.Y. 2006).

Moreover, where, as in this case, the Trustee has been appointed subsequent to the occurrence of the events relevant to his/her Complaint, and accordingly, he/she does not have firsthand knowledge of those events and has not yet had the opportunity to take discovery of the opposing parties and of third parties, the Trustee should be afforded even more leeway in his/her pleadings, <u>cf.</u>, <u>In re Everfresh Beverages, Inc</u>., 238 B.R. 558 (Bankr. S.D.N.Y. 1999).

In any event, in the instant case, the allegations contained in the Trustee's Complaint are more than sufficient to sustain Counts Three and Four against the Thurgood Estate. They set forth "enough facts to state a claim for relief that is plausible on its face." <u>Patane v. Clark</u>, 508 F.3d 106, 111-112 (2d Cir. 2007) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007)).  As is further detailed below, those two Count's asserted against the Thurgood Estate are supported in the Complaint by significant factual detail that more than adequately sets forth viable claims for constructively fraudulent transfers and for unjust enrichment.

C046038/0189460/1486130.9

## POINT II

## THE TRUSTEE HAS SUFFICIENTLY PLED A CLAIM FOR CONSTRUCTIVELY FRAUDULENT CONVEYANCE REGARDING THURGOOD'S RECEIPT OF THE BONUS PAYMENTS PURSUANT TO § 544(b)(1) OF THE BANKRUPTCY CODE AND §§ 273, 274, 275 AND 278 OF THE NEW YORK DEBTOR CREDITOR LAW

The Trustee's Complaint sets forth more than sufficient factual detail to support the viability of his claim, embodied in Count Three, that 1st Rochdale's conveyances of the Bonus Payments to Thurgood constituted constructively fraudulent transfers which the Trustee may avoid pursuant to Section 544(b)(1) of the Bankruptcy Code and Sections 273, 274, 275 and 278 of the New York Debtor and Creditor Law ("DCL").

Section 544(b)(1) of the Bankruptcy Code states as follows:

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable under section 502(e) of this title.

The pertinent provisions of the New York DCL, in particular Sections 273, 274 and 275 thereof, provide the applicable law pursuant to which the Trustee may avoid the subject transfers to Thurgood in accordance with the above-cited Section 544(b)(1) of the Bankruptcy Code.

As stated by the Second Circuit, DCL §§ 273, 274 and 275 provide that "a conveyance by a debtor is deemed constructively fraudulent if it is made without fair consideration,' and if one of the following conditions is met (i) the transferor is insolvent or will be rendered insolvent by the transfer in question [§ 273] . . . (iii) the transferor is engaged or is about to engage in a business or transaction for which its remaining property constitutes unreasonably small capital [§ 274]; or (iv) the transferor believes that it will incur debts beyond

11

its ability to pay [§ 275]." In re Sharp Int'l Corp., 403 F.3d 43, 53 (2d Cir. 2005). Therefore, as long as the Trustee has set forth facts sufficient to make a claim for a constructively fraudulent transfer under just one of the alternate set of conditions contained, respectively, in DCL §§ 273, 274 and 275, the Dismissal Motion must be denied as to Count Three. In fact, as set forth below, the Complaint alleges facts to support the viability of the Trustee's Count Three claim with respect to each provision of DCL §§ 273, 274 and 275.

Significantly, nowhere in its Dismissal Motion papers does the Thurgood Estate dispute that Thurgood did in fact receive the Bonus Payments from 1st Rochdale. In asserting in his Complaint that these Bonus Payments were made without fair consideration, the Trustee was relying upon the fact that that any pre-discovery documents that he was able to obtain, such as minutes of Board meetings of 1st Rochdale, or any Board resolutions or the like, were devoid of any stated justification for Thurgood's receipt of these substantial payments, on top of his regular salary, over a period of time during which the company of which he was Chairman and CEO was in a substantially adverse financial condition. Therefore, at this pre-discovery stage of this Adversary, the Trustee's allegation that the Bonus Payments made by 1st Rochdale to Thurgood were made without fair consideration must be accepted as true. See Point I, supra.

Moreover, the Trustee contends that he has set forth sufficient facts to indicate that the receipt of the Bonus Payments by Thurgood, an insider of 1st Rochdale were per se violative of the good faith and fair consideration requirements of Section 272 of the DCL.

DCL § 272 provides, in pertinent part, that fair consideration is given for property or an obligation:

> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

C046038/0189460/1486130.9

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

The Thurgood Estate does not dispute that Thurgood received the Bonus Payments, but instead attempts to prove the facts of its position at this preliminary juncture of the case by contending, in conclusory fashion, that such payments were made in good faith. In the context of a motion to dismiss, it is not the job of the Court to determine whether or not either party can prove its case. See Raine v. Lorimar Prods., Inc., et al., 71 B.R. 450, 453 (S.D.N.Y. 1987).

What the Thurgood Estate has failed to recognize is that good faith may be lacking because of a transferee's knowledge of a transferor's unfavorable financial condition at the time of the transfer or because of a transferee's position as an insider with control over the corporation's finances. See, In re Checkmate Stereo & Elecs., Ltd., 9 B.R. 585, 617 (Bankr. E.D.N.Y. 1982), aff'd, 21 B.R. 402 (E.D.N.Y. 1982). Where assets are conveyed to an insider by an insolvent corporation, good faith will be lacking unless the "transaction carries the earmarks of an arm's-length bargain." Holahan v. Henderson, 277 F. Supp. 890 (W.D. La. 1967), aff'd, 394 F.2d 177 (5th Cir. 1968). Moreover, "transfers made by an insolvent corporation to an officer, director, or major shareholder of that corporation are per se violative of the good faith requirement of DCL § 272 and the fact that the transfer might have been made for a fair equivalent is irrelevant". In re Checkmate, 9 B.R. at 617; In re Centennial Textiles, Inc., 220 B.R. 165, 172 (Bankr. S.D.N.Y. 1998); Le Cafe Creme, Ltd. v. Le Roux (In re Le Cafe Creme, Ltd.), 244 B.R. 221, 241 (Bankr. S.D.N.Y. 2000).

The Trustee submits that, pursuant to the above-cited case law, the alleged - - indisputable facts that the Bonus Payments were made by 1st Rochdale to the company's

13

principal insider -- its Chairman and CEO Thurgood-- over a period of time when Thurgood had

to have been fully aware of the company's dire financial condition, per se prohibits any possible

finding of fair consideration or good faith with respect to these Payments.  Alternatively, even

assuming arguendo that the facts alleged do not per se preclude such a finding, at the very least

they sufficiently set forth a viable basis for the claim that there was an absence of fair

consideration here, thereby satisfying that required pleading element germane to Sections 273,

274 and 275 of the DCL.

          In further support of the proposition that the Bonus Payments were made in good

faith, the Thurgood Estate refers to this Court's determination in its decision with respect to the

Former Director's Dismissal Motion that the Complaint lacked any allegations to establish

"fraud, bad faith or self-dealing" with respect to Count Two of the Complaint.  However, the

Thurgood Estate's reliance on this Court's January 17th Decision with respect to a determination

of "fair consideration" is completely misplaced.  Count Two of the Complaint alleged that the

pertinent defendants, all former directors of 1st Rochdale, had breached their fiduciary duties to

1st Rochdale by awarding bonuses to Thurgood and two other officers.  In dismissing that Count

as against the moving defendants, this Court found that there was no allegation therein of "fraud,

bad faith, self-dealing, lack of due care, or lack of reasonable diligence" on the part of the

moving parties so as to make the former director's decisions to award the bonuses actionable as

breaches of fiduciary duty.  In contrast, neither Count Three, alleging that the Thurgood Bonuses

paid to Thurgood constituted constructively fraudulent conveyances, or Count Four, alleging that

Thurgood was unjustly enriched thereby, require a showing of actual fraud, bad faith, self-

dealing or the like that were found absent concerning Count Two.  Rather, as to the

constructively fraudulent conveyance claim in Count Three, it suffices to show, under the

pertinent statutory provisions, that there were transfers by 1st Rochdale to Thurgood, for which Thurgood failed to provide adequate consideration, at a time or times when 1st Rochdale was insolvent, or had unreasonably small capital, or when it intended to incur or believed it would incur debts beyond its ability to pay same as they matured, without regard to actual intent.  See, Sections 273, 274 and 275 of the DCL.

In addition to the element of lack of fair consideration, Section 273[4] of the DCL, requires that the transferor (here, 1st Rochdale) have been insolvent at the time of the subject transfers, or that the transferor was rendered insolvent by such transfers.  The Trustee respectfully submits that his Complaint more than adequately sets forth a detailed set of facts to support the allegation that at the times of the Bonus Payments 1st Rochdale was insolvent under the established definitions of insolvency made applicable here pursuant to Section 271 of the DCL[5] and Section 101(32) of the Bankruptcy Code[6], namely that 1st Rochdale's liabilities exceeded it assets.

---

[4] Section 273 of the DCL sets forth that:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

[5] Section 271 of the DCL sets forth the definition of insolvency as:

(1) A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

[6] Section 101(32) of the Bankruptcy Code sets forth the definition of insolvency as:

(A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of---…

The Complaint sets forth a number of allegations supporting the contention that 1st Rochdale's liabilities exceeded it assets over the period of time that Thurgood received the Bonus Payments.  Moreover, nowhere in their Dismissal Motion does the Thurgood Estate dispute 1st Rochdale's insolvency during the relevant time that it paid the Bonus Payments..  As alleged in the Complaint:

- Commencing in 1999, NCSC provided multi-million dollars of credit to 1st Rochdale and its wholly owned subsidiaries in the form of Direct Loans and revolving lines of credit.  (Complaint ¶ 42.)

- Continuing into 2000, NCSC continued to provide financing to 1st Rochdale, in an amount which increased to $23 million in that year. (Complaint ¶¶ 43-45.)

- Despite the fact that the 1st Rochdale remained in business, it continued to lose money over the entirety of its business life.  (Complaint ¶ 115.)

The Thurgood Estate refers to the alleged fact that 1st Rochdale generated cash flow in the fiscal year 2002/2003 to meet expenses.  The fact that 1st Rochdale may have had enough cash to meet its expenses in that single fiscal year is not an indication that it was solvent. As alleged in the Complaint, during the entirety of the time period since 1999 through the Petition Date, including 2003-2003, 1st Rochdale's liabilities exceeded its assets, in that it had no assets that came close in value to the $23 million-plus of loan indebtedness that it had to NCSC.

A claim can be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his/her claim that would entitle him/her to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Trustee's allegations regarding insolvency meet this standard. See Thomson Kernaghan & Co. v. Global Intellicom, Inc., No. 99 Civ 3005 (DLC), 99 Civ. 3015 (DLC), 2000 WL 640653, at *13 (S.D.N.Y. May 17, 2000) (accepting plaintiff's explicit allegations concerning insolvency even though "allegations which would support the argument that [the defendant] was insolvent at the time . . . are implicit at best" because the court

must "tak[e] the allegations in the light most favorable to the plaintiff"); <u>Contempri Homes, Inc.</u> <u>v. Ameritik Real Estate & Dev. Corp.</u>, No. 88 Civ. 8408 (KMW), 1989 WL 153030, at \*1-2 (S.D.N.Y. Dec. 11, 1989) (accepting allegation of fraudulent asset transfers as satisfying requirement to plead insolvency even though plaintiff in that case, unlike the Trustee here, did not explicitly allege insolvency and no other facts relating to that allegation were set forth).

In his Complaint, the Trustee has set forth sufficient facts alleging that 1st Rochdale's liabilities, including the almost $23 million dollars in loan indebtedness owed to NCSC, significantly exceeded its assets, to buttress his position that 1st Rochdale was in fact insolvent for the period commencing in 1999 through the Petition Date in 2005.  The Trustee is entitled to the favorable inferences that the 1st Rochdale's unhealthy financial condition continued until it went into bankruptcy. <u>See</u> <u>Dunbar v. Commissioner of Internal Revenue</u>, 119 F.2d 367, 370 (7th Cir. 1941) ("[A] condition of insolvency shown to exist at a particular time will be presumed to continue in the absence of a showing to the contrary.")

Therefore, based on the foregoing, the Trustee has adequately pled that 1st Rochdale was insolvent at the times relevant to Count Three of his Complaint.

Furthermore, the Complaint more than adequately pleads the requisite financial condition requirements of Sections 274 and 275 of the DCL.[7]  As set forth above, during the

---

[7]    Section 274 of the DCL sets forth that:

> Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction or without regard to his actual intent.

Section 275 of the DCL sets forth that :

(…continued)

C046038/0189460/1486130.9

period commencing in 1999, 1st Rochdale was already in a position where it was in the process of having little to no capital to operate its businesses, as it continued to spend millions upon millions of dollars in its attempt to develop the ill-fated Power Plant Project. In fact, 1st Rochdale continued to expend significant amounts of money even after NCSC had stopped extending further loans to 1st Rochdale and its subsidiaries. During that time, 1st Rochdale did not have any other internal or external source of financing with an investor willing to provide the capital necessary to further develop the Power Plant Project. (Complaint ¶ 75-77.) Ultimately, because 1st Rochdale not only lacked the necessary capital to develop the Power Plant Project, but to run its existing businesses, it was forced to file for bankruptcy. Thus, the Trustee's Complaint contains sufficient allegations to indicate that at the time of the Bonus Payments were made to Thurgood, 1st Rochdale had "unreasonably small capital." DCL §274.

Similarly, the array of facts alleged by the Trustee as to 1st Rochdale's distressed financial condition satisfy the pleading requirement with respect to Section 275 of the DCL, namely, that at the time of the Bonus Payments, 1st Rochdale had reason to believe that it was incurring debts (including the $23 million in loan indebtedness) beyond its ability to pay same as they matured.

As set forth above, section 544(b)(1) of the Bankruptcy Code enables the Trustee to utilize the provisions of the DCL to avoid the Bonus Payments to Thurgood, as long as the

---

(…continued)

> Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

C046038/0189460/1486130.9

Trustee can show that the transfer could have been avoided by an unsecured creditor of the Debtor.

Having alleged sufficient facts to establish a cognizable claim under each of Sections 273, 274 and 275 of the DCL that the Bonus Payments were constructively fraudulent conveyances, the Trustee need only further show that there was a creditor who existed who could avoid the transfers pursuant to DCL § 278[8].

Counsel for the Thurgood Estate sets forth the argument in footnote 3 of the Dismissal Motion that the Trustee has failed to assert any of the requisite elements of § 278 of the DCL. Such allegation is completely erroneous, as the Complaint is replete with numerous allegations that at the time of the Bonus Payments, 1st Rochdale was indebted to NCSC, among other creditors. As set forth in the Complaint, at some point in 2000, NCSC stopped extending new credit to 1st Rochdale and its wholly-owned subsidiaries and at that point, 1st Rochdale had outstanding loan indebtedness to NCSC in excess of $23 million. (Complaint ¶¶ 43-45, 47.) Therefore, there is such a creditor and the Trustee has set forth sufficient factual allegations to satisfy the pleading requirements of DCL § 278 as well.

---

[8] Section 278(1)(a) of the DCL provides in pertinent part that:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim is matured, may, as against any person, except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>
> (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim,
>
> (b) Disregard the conveyance and attach or levy execution upon the property conveyed.

C046038/0189460/1486130.9

In support of it contention that Count Three of the Trustee's Complaint is insufficiently pled, the Dismissal Motion refers to a plethora of cases which are distinguishable from the case at bar.  The Thurgood Estate's reliance on <u>Lippe v. Bairnco</u>, 249 F. Supp. 2d 357 (S.D.N.Y. 2003) ("<u>Lippe 1</u>") is completely misplaced.  In <u>Lippe 1</u>, the Court was faced with a motion for summary judgment, which carries a completely different standard from a motion to dismiss.  Likewise, in <u>Lippe v. Bairnco</u>, 230 B.R. 906 (S.D.N.Y. 1999) ("<u>Lippe 2</u>"), the plaintiffs pled claims for both constructively fraudulent transfers and intentionally fraudulent transfers together in one claim.  Specifically, Section 276 of the DCL, which requires a showing of intentional fraud, is governed by the heightened pleading requirement of rule 9(b) of the FRCP. Sections 273, 274 and 275 of the DCL, the constructively fraudulent transfer statutory provisions, do not require such a showing.  Unlike <u>Lippe 2</u>, the Trustee has not alleged intentional fraud and has set forth sufficient facts to support his claim under Sections 273, 274 and 275 of the DCL.  In <u>In re Crazy Eddie Secs. Litig.</u>, <u>Supra</u>.  also cited by the Thurgood Estate, is similarly misplaced.  There, the Debtor brought a fraudulent conveyance claim against Peat Marwick, its former accounting firm, alleging that Peat Marwick performed its services negligently.  The Court dismissed the fraudulent conveyance claim, finding that the claim was essentially a claim for malpractice.

For the foregoing reasons, there is no basis to dismiss Count Three of the Trustee's Complaint.  At this pre-discovery stage of this Adversary, the Trustee's allegations that the Bonus Payments made by 1st Rochdale to Thurgood were constructively fraudulent pursuant to Sections 273, 274 and 275 of the DCL must be accepted as true, and more than suffices to withstand the instant Dismissal Motion.

C046038/0189460/1486130.9

## POINT III

### THE TRUSTEE HAS SUFFICIENTLY PLED THE REQUISITE ELEMENTS OF AN UNJUST ENRICHMENT CLAIM

As is true respecting a claim for Constructively fraudulent transfers, a showing of actual fraudulent intent or bad faith is not necessary to state a cognizable claim for unjust enrichment under New York law.  As stated by the Second Circuit in Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004).  On "a claim for unjust enrichment, a plaintiff must show that the. defendant was enriched, that such enrichment was at plaintiffs expense, and that the circumstances were such that in equity and good conscience the defendant should return the money or property to plaintiff." Steinmetz v. Toyota Motor Credit Corp., 963 F. Supp. 1294, 1307 (E.D.N.Y. 1997) (quoting Reed Int'l Trading Corp. v. Donau Bank AG, 866 F. Supp. 750, 757 (S.D.N.Y. 1994)).Geltzer v. Artists Mktg. Corp. (In re Cassandra Group), 338 B.R. 583, 589(Bankr. S.D.N.Y. 2006)

Unjust enrichment results when a person retains a benefit where, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain that benefit. Counihan v. Allstate Ins. Co., 194 F.3d 357, 361 (2d Cir. 1999); Unjust enrichment is a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties. A. Brod, Inc. v. SK&I Co., L.L.C., 998 F. Supp. 314, 328 (S.D.N.Y. 1998).

As set forth in the Trustee's Complaint, Thurgood's receipt of over $261,000.00 in Bonus Payments, including one bonus payment of $125,000.00, all made to Thurgood during a period of time in which 1st Rochdale was woefully insolvent, satisfies the pleading requirement to set forth a claim for unjust enrichment in Count Four.

C046038/0189460/1486130.9

With respect to the first and second prongs of an unjust enrichment claim, set forth in the above-quoted point of the Briarpatch case, the Trustee has clearly shown that Thurgood's receipt of the substantial Bonus Payments benefited him at the expense of 1st Rochdale.

With respect the third prong, the Trustee has sufficiently alleged in the Complaint that equity and good conscience militate against permitting the Thurgood Estate to retain what plaintiff is seeking to recover.  As set forth in the Complaint, at all times that Thurgood received the Bonus Payments, Thurgood served as the Chairman and CEO of 1st Rochdale, and in such capacity, was fully aware of the dire financial conditions of the company.  Considering Thurgood's knowledge of the foregoing, and the duty he owed to 1st Rochdale as its Chief Director and Officer, the Trustee submits that that it would be inequitable for the Thurgood Estate to retain the benefit of the Bonus Payments.  Counihan, 194 F.3d at 361.  Moreover, an interpretation of the "equity and good conscience" element as applied to these facts is not an issue for this motion.  Glidepath Holding B.V. v. Spherion Corp., 2007 U.S. Dist. LEXIS 54889 (S.D.N.Y. July 25, 2007).  The issue before the Court is whether Plaintiffs have pled a set of facts that states a plausible claim.  All New York law requires at this stage is that a plaintiff plead that the defendant was enriched, that the enrichment came at the plaintiff's expense, and that the enrichment was unjust.  See,  Dubai Islamic Bank v. Citibank, N.A., 126 F. Supp. 2d 659, 669 (S.D.N.Y. 2000).(rejecting motion to dismiss where plaintiff had adequately pled basis for unjust enrichment claim).

In support of its contention that the Trustee has failed to allege a prima facie claim for unjust enrichment, the Thurgood Estate cites to a variety of cases which do not have any facts analogous to the case at bar.  See, Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338

22

(2d Cir. 2006) (Plaintiff did not set forth facts sufficient to show that fees charged by fund advisor were "disproportionately excessive" and contrary to its fiduciary duty as defined in the Investment Company Act of 1940); Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co., 196 F. Supp. 2d 378 (S.D.N.Y. 2002) (Defendant, an insurance company, counterclaimed for unjust enrichment with respect to receipt of no fault benefits. The court dismissed the counterclaim, as defendant's insureds received the acupuncture services rendered by plaintiff, even though plaintiff may not have been entitled to such benefit. The court determined that good conscience entitles [plaintiff] to retain money paid for services rendered); Gotlin v. Lederman, 367 F. Supp. 2d 349 (E.D.N.Y. 2005) (Plaintiff alleged that defendants, who were hospitals and doctors, were unjustly enriched by plaintiff's payments for cancer treatment which ultimately proved ineffective. Court dismissed claim as court determined that defendants adequately rendered services for which they were paid. In addition, plaintiff's claims for unjust enrichment were merely a reformulation of their medical malpractice claim).

The cases cited by the Thurgood Estate are distinguishable, as such cases indicate clearly that the unjust enrichment claims would not be sustained where there is a clear showing that beneficial services were adequately rendered. Moreover, in each of the aforementioned cases, at issue was the question of the quality of the services, not the actual rendering of service by the defendants. As set forth above, at this preliminary stage of the Adversary, there are no facts in an evidentiary record to indicate that Thurgood's receipt of the Bonus Payments were based on particular services rendered by Thurgood sufficient to overcome the Trustee's factual allegations that it would be inequitable for the Thurgood Estate to retain the benefit of the Bonus Payments paid to Thurgood, the CEO and Chairman of 1st Rochdale, at a time that 1st Rochdale was woefully insolvent and under the burden of $23 million in debt to NCSC.

C046038/0189460/1486130.9

Moreover, as set forth above, the Trustee should be afforded leeway in his pleadings where he has not had the opportunity to take discovery.  cf., In re Everfresh Beverages, Inc., Supra.

Therefore, Count Four adequately pleads a viable claim for unjust enrichment against the Thurgood Estate.

### CONCLUSION

For the reasons set forth above, the Trustee respectfully submits that this Court should deny the Thurgood Estate's Dismissal Motion in all respects.

Dated: New York, New York
June 10, 2008

BRYAN CAVE LLP
*Counsel to Robert L. Geltzer, the Chapter 7 Trustee*


By: /s/Robert A. Wolf
     Robert A. Wolf (RW-3419)
     Andrea K. Fisher (AF 0150)
1290 Avenue of the Americas
New York, New York  10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-4630

C046038/0189460/1486130.9